1  RITA W. SIAMAS (State Bar No. 232396)
   rsiamas@mwe.com
2  ELLIOT SILVERMAN (State Bar No. 222235)
   esilverman@mwe.com
3  McDERMOTT WILL & EMERY LLP
   18191 Von Karman Avenue
4  Suite 500
   Irvine, CA  92612-7108
5  Telephone:  949.851.0633
   Facsimile:   949.851.9348
6
7  JOHN J. DABNEY (Pro Hac Vice pending)
   jdabney@mwe.com
8  McDERMOTT WILL & EMERY LLP
   600 Thirteenth Street, N.W.
9  Washington, D.C.  20005-3096
   Telephone:  202.756.8000
   Facsimile:   202.756.8087
10
   Attorneys for Plaintiff
11 HARDY LIFE, LLC

12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                 WESTERN DIVISION

16 HARDY LIFE, LLC, a California          CASE NO.  CV08 03524 PA (CTx)
   limited liability company,
17                                         **PLAINTIFF'S MEMORANDUM OF**
                  Plaintiff,               **POINTS AND AUTHORITIES IN**
18                                         **SUPPORT OF ITS MOTION FOR**
          v.                               **PRELIMINARY INJUNCTION**
19                                         **PURSUANT TO FEDERAL RULE**
   NERVOUS TATTOO, INC., a                 **OF CIVIL PROCEDURE 65(a)**
20 California corporation; CHRISTIAN
   AUDIGIER, INC., a California            [Courtroom of the Honorable Percy
21 corporation; SHOP CRYSTAL ROCK,         Anderson]
   a California business entity;
22 BACKSTAGE WEB, INC., a                  Date:     July 7, 2008
   California Corporation; SHOP ON         Time:     1:30 p.m.
23 STAGE, Inc., a California Corporation;  Place:    Courtroom 15
   CHRISTIAN AUDIGIER, a California
24 resident, and DOES 1-10, inclusive,     [Plaintiff's Notice of Motion and Motion
                                           for Preliminary Injunction Pursuant to
25                                         Federal Rule of Civil Procedure 65(a);
                  Defendants.              Declaration of Donald Edward Hardy;
26                                         Declaration of Steven Hoel; and
                                           Proposed Order submitted concurrently
27                                         herewith]

28

PLAINTIFF'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR                                    CV08 03524 PA (CTx)
PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..................................2

        A.      Plaintiff Hardy Life .........................................................................2
        B.      Defendants .......................................................................................3
        C.      Plaintiff's Business Relationship with Defendants Audigier and
                NT ....................................................................................................3
                1.      The 2004 License Agreement ..................................................3
                2.      The 2005 Amended Agreement .................................................4
        D.      Defendants' Wrongful Acts Giving Rise of Plaintiff's Claims ..........4
                1.      Defendants' Infringement of Plaintiff's Registered
                        Artwork .................................................................................4
        E.      Defendants' Infringement of Plaintiff's Marks ...............................5
                1.      Defendants' Unauthorized Tagline ..........................................5
                2.      Defendants' Unauthorized Products and Sublicensees ............5
                3.      Plaintiff's Cease and Desist Demand to Defendants ..............6

III.    LEGAL STANDARD .............................................................................6

IV.     ARGUMENT........................................................................................7

        A.      Plaintiff Has a Substantial Likelihood of Success on Its Claims..........7
                1.      Defendants Are Liable for Copyright Infringement...................7
                2.      Defendants Are Liable For Trademark Counterfeiting ............13
                3.      Defendants Are Liable For Trademark Infringement .............14
        B.      Defendants' Conduct Irreparably Injures Plaintiff........................19
        C.      The Balance of Hardships Weights Heavily in Favor of Plaintiff ....20
        D.      Issuing a Preliminary Injunction Serves the Public Interest..............21
        E.      There is No Need For a Bond...........................................................21

V.      CONCLUSION ....................................................................................22

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir 1979)......................................................15, 16, 19

*AT&T Corp. v. Vision One Sec. System*,
   1995 WL 476251  1995 U.S. Dist. LEXIS 11279 (S.D. Cal. 1995).......21

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
   486 F.3d 629 (9th Cir. Cal. 2007) ........................................................20

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*,
   944 F.2d 1446 (9th Cir. 1991)..............................................................17

*In re Apparel Ventures, Inc.*,
   229 U.S.P.Q. 225 (TTAB 1986)...........................................................17

*Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co.*,
   576 F. Supp. 1055 (E.D.N.Y. 1983).....................................................16

*Burger King v. Hall*,
   770 F. Supp. 633 (S.D. Fla. 1991)........................................................18

*Burger King v. Majeed*,
   805 F. Supp. 994 (S.D. Fla. 1992)........................................................18

*Cadence Design Systems v. Avant! Corp.*,
   125 F.3d 824 (9th Cir. 1997)................................................................20

*Central Ben. Mutual Insurance Co. v. Blue Cross and Blue Shield Association*,
   711 F. Supp. 1423 (S.D.Oh. 1989).......................................................16

*Century 21 Real Estate Corp. v. Sandlin*,
   846 F.2d 1175 (9th Cir. 1988)................................................................7

*Church of Scientology International v. The Elmira Mission of the Church of Scientology*,
   794 F.2d 38 (2d Cir. 1986)..............................................................13, 15

*Dreamwerks Prod. Group, Inc.*,
   42 F.3d at 1129-30...............................................................................15

*Dreamwerks Prod. Group, Inc. v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998)..............................................................15

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992)..............................................................17

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Electropix Inc. v. Liberty Livewire Corp.*,
    178 F. Supp. 2d 1125 (C.D. Cal. 2001) ...................................17

4

5

*Elvis Presley Enterprises v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003) ...................................................7

6

7

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
    314 F.2d 149 (9th Cir. 1963) .................................................19

8

*Gable-Leigh, Inc. v. North America Miss.*,
    2001 WL. 521695  2001 U.S. Dist. LEXIS 25614 (C.D. Cal. 2001) ..8, 21

9

10

*Glow Industrial v. Lopez*,
    273 F. Supp. 2d 1095 (C.D. Cal. 2003) ...........................15, 18

11

*Glow Industries*,
    273 F. Supp. at 1119 .............................................................17

12

13

*GoTo.Com, Inc., v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) .........................................15, 16

14

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
    286 F. Supp. 2d 284 (S.D.N.Y. 2003) .....................................14

15

16

*Gucci America, Inc. v. Pieta*,
    2006 WL. 4725706  2006 U.S. Dist. LEXIS 96701 (C.D.Cal.
    2006) ......................................................................................16

17

*Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk*,
    938 F. Supp. 612 (C.D. Cal. 1996) .........................................15

18

19

*Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*,
    886 F.2d 1173 (9th Cir.1989) .................................................19

20

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) ..................................................21

21

22

*LGS Architects, Inc. v. Concordia Homes*,
    434 F.3d 1150 (9th Cir. 2006) ................................................19

23

24

*Levi Strauss & Co. v. Shilon*,
    1996 U.S. Dist. LEXIS 22706 (C.D. Cal. 1996), aff'd, 121 F.3d
    1309 (9th Cir. 1997) ...............................................................13

25

26

*M2 Software, Inc. v. Madacy Entertainment*,
    421 F.3d 1073 (9th Cir. 2005) ................................................19

27

*Mayweathers v. Newland*,
    258 F.3d 930 (9th Cir. 2001) ....................................................7

28

McDermott Will & Emery LLP
Attorneys At Law
Irvine

**TABLE OF AUTHORITIES**
(continued)

Page

*McGregor-Diniger, Inc. v. Drizzle, Inc.,*
   599 F.2d 1126 (2d Cir. 1979)................................................................18

*Metcalf v. Bocho,*
   294 F.3d 1069 (9th Cir. 2002)................................................................7

*Miller ex rel. NLRB v. California Pac. Medical Ctr.,*
   19 F.3d 449 (9th Cir. 1994)................................................................7

*Nestle USA v. Heart to Heart Publ. Co.,*
   1997 U.S. Dist. LEXIS 21334 (C.D. Cal. 1997)....................................16

*Nutri/System, Inc. v. Con-Stan Industries, Inc.,*
   809 F.2d 601 (9th Cir.1987)................................................................19

*Paisa, Inc. v. N & G Automobile,*
   928 F. Supp. 1009 (C.D. Cal. 1996).......................................................21

*Paul Frank Industrial v. Sunich,*
   502 F. Supp. 2d 1094 (C.D. Cal. 2007)................................................15

*Pepsico, Inc. v. Cal. Sec. Cans,*
   2002 U.S. Dist. LEXIS 22404 (C.D. Cal. 2002)....................................20

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   487 F.3d 701 (9th Cir. 2007).................................................................6

*Phillip Morris USA Inc. v. Shalabi,*
   352 F. Supp. 2d 1067 (C.D. Cal. 2004)...........................................14, 20

*Roth Greeting Cards v. United Card Co.,*
   429 F.2d 1106 (9th Cir. 1970)................................................................8

*Saks & Co. v. TFM Industrial, Inc.,*
   5 U.S.P.Q. 2d 1762 (TTAB 1987)........................................................17

*Shaw v. Lindheim,*
   919 F.2d 1353 (9th Cir. 1990)................................................................9

*Smith v. Jackson,*
   84 F.3d 1213 (9th Cir. 1996)..............................................................8, 9

*STX, Inc. v. Bauer USA,*
   1997 WL. 337578  1997 U.S. Dist. LEXIS 16250 (N.D. Cal. 1997) ......13

*Sun Microsystems v. Microsoft Corp.,*
   999 F. Supp. 1301 (N.D. Cal. 1998)......................................................15

*Triad System Corp. v. Southeastern Express Co.,*
   64 F.3d 1330 (9th Cir. 1995)................................................................20

McDermott Will & Emery LLP
ATTORNEYS AT LAW
IRVINE

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Walczak v. EPL Prolong, Inc.*,
  198 F.3d 725 (9th Cir. 1999).................................................................21

**FEDERAL STATUTES**

15 U.S.C. § 1115....................................................................................13

15 U.S.C. § 1116(a) ................................................................................7

15 U.S.C. Section 1116(d) .....................................................................13

17 U.S.C. § 410(c) ..................................................................................8

17 U.S.C. §502(a) ...................................................................................6

Fed. R. Civ. P. 65...................................................................................21

**TREATISE**

3 J. Thomas McCarthy, *McCarthy on Trademarks &*
  *Unfair Competition* § 18.20 ..................................................................13

McDermott Will & Emery LLP
Attorneys At Law
Irvine

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **I.   INTRODUCTION**

2      Plaintiff Hardy Life, LLC ("Plaintiff") owns and licenses the artwork,

3  copyrights and trademarks of Donald Edward Hardy ("Ed Hardy"). Ed Hardy is an

4  artist with a legendary career spanning over 40 years. Ed Hardy has developed an

5  international reputation for his innovative tattoo designs, and his work has appeared

6  in numerous periodicals, books, and films throughout the United States and the

7  world.

8      Plaintiff licensed some of Plaintiff's artwork, copyrights and trademarks,

9  including the trademark ED HARDY, to Defendant Nervous Tattoo, Inc. ("NT")

10 for use on certain prescribed merchandise. The license agreement between Plaintiff

11 and NT contains provisions which require NT to submit sample advertising and

12 promotional materials, products, tags and labels to Plaintiff so that Plaintiff can

13 ensure that its intellectual property is being used in a manner that is consistent with

14 Plaintiff's quality level and specifications. The license also prohibits the use of

15 Plaintiff's intellectual property on certain types of merchandise.

16     As the popularity of Plaintiff's Ed Hardy brand grew -- gross sales in 2007

17 were in excess of $100,000,000.00 -- Defendant NT decided to exceed the limited

18 scope of the license and to use Plaintiff's intellectual property in any way that it

19 wanted, regardless of whether Plaintiff objected to such use. Thus, for example,

20 NT has refused to provide Plaintiff with any sample advertising or promotional

21 materials or products bearing Plaintiff's trademarks or artwork for Plaintiff's

22 approval, despite Plaintiff's repeated requests for such products and materials.

23 Instead, NT simply sells these unapproved goods and materials without regard to

24 Plaintiff's objections. NT has sublicensed others to sell goods under Plaintiff's

25 marks that NT is prohibited from selling. Defendants have used unlicensed

26 derivatives of Plaintiff's artwork in their own brands of clothing.

27     Defendants' conduct constitutes copyright and trademark infringement.

28 Plaintiff seeks a preliminary injunction to protect Plaintiff's artwork and the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

PLAINTIFF'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
PRELIMINARY INJUNCTION

CV08 03524 PA (CTx)

1  goodwill and reputation in Plaintiff's trademarks, and to stop the substantial

2  likelihood of consumer confusion caused by Defendants' unlawful conduct.

3  **II.   FACTUAL AND PROCEDURAL BACKGROUND**

4      **A.    Plaintiff Hardy Life**

5          Plaintiff Hardy Life is a California limited liability company formed by Ed

6  Hardy and his partners to facilitate the licensing of Mr. Donald Edward Hardy's

7  artwork, copyrights and trademarks, including the trademark ED HARDY.

8  (Declaration of Donald Edward ("Hardy Dec.") ¶ 17; Declaration of Steven Hoel

9  ("Hoel Decl.") ¶ 4). Tattooing professionally since 1967, Ed Hardy transformed the

10  tattoo medium with his innovative techniques and distinctive style.  Ed Hardy has

11  created an extensive body of artwork, including over 4,000 unique tattoo designs.

12  Ed Hardy's vibrant tattoo designs are legendary.  (Hardy Dec. ¶¶ 5-14).

13          In 2004, Ed Hardy assigned his artwork, copyrights and trademarks to

14  Plaintiff.  (Hardy Dec. ¶ 17; Hoel Dec. ¶ 4).  Plaintiff and its licensees use

15  Plaintiff's marks, artwork and copyrights for various products and services.  (*See*

16  Hardy Dec. ¶¶ 19-22; Hoel Dec. ¶¶ 6, 13-16).

17          Plaintiff owns federal trademark registrations for DON ED HARDY® (Reg.

18  No. 3,124,710), ED HARDY® (Reg. No. 3,135,603), and ED HARDY® (stylized)

19  (Reg. No. 3,141,658), for clothing, footwear, belt buckles, shoes, hats, headwear,

20  and other accessories (collectively "Plaintiff's Marks").  (Hardy Dec. ¶¶ 17-18;

21  Hoel Dec. ¶¶ 4-5, Ex. 1).  Plaintiff also owns federal copyright registrations for the

22  following pieces of artwork: (1) Three Vintage Roses with Buds; (2) Vintage Rose

23  Vine with Two Roses; (3) Ed Hardy's Devil Woman; (4) Once Wounded Twice

24  Shy – Dagger through Heart; (5) Koi Swimming in Flowers and Blue Waves; and

25  (6) Koi Swimming in Flowers and Black Waves (collectively, the "Registered

26  Artwork").  (Hardy Dec. ¶¶ 14, 17-18, Exs. 1-2; Hoel Decl. ¶ 4).[1]

27  _____

[1]     The Copyright Registrations erroneously list "Donald Edward Hardy" as the "Claimant."
28  Applications are being filed in the U.S. Copyright Office for supplementary registration of these
copyrights in order to reflect Hardy Life LLC as the "Claimant."  (Hardy Decl. ¶ 14 n.1) .

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

B.   **Defendants**

Defendant **Audigier** is an individual residing in Los Angeles, California. Audigier sells clothing, accessories, and other merchandise.  (Hoel Dec. ¶ 7.) Audigier owns at least five California business entities that carry out his business operations, which are named as defendants in this action (*id.*):

(a) Defendant **NT** designs and sells certain types of clothing and other unauthorized merchandise under Plaintiff's Marks (¶ 8);

(b) Defendant **Christian Audigier, Inc. ("CA")** designs and sells Christian Audigier brand clothing and accessories (¶ 9);

(c) Defendant **Shop Crystal Rock ("Crystal Rock")** owns the website located at *<shopcrystalrock.com>,* which sells and promotes Audigier's "Crystal Rock" brand clothing (¶ 10);

(d) Defendant **Backstage Web, Inc. ("Backstage Web")** owns the website located at *<edhardyshop.com>*, which sells unauthorized merchandise bearing Plaintiff's Marks; (¶ 11) and

(e) Defendant **Shop on Stage, Inc. ("SOS")** operates retail stores throughout the  United States (¶ 12).

C.   **Plaintiff's Business Relationship with Defendants Audigier and NT**

1.   **The 2004 License Agreement**

Plaintiff began its business relationship with Audigier and NT in 2004, when Audigier proposed to license Plaintiff's artwork, copyrights and trademarks for use in connection with the design, distribution, and sale of clothing.  (Hardy Dec. ¶ 19; Hoel Dec. ¶ 13).  In 2004, Plaintiff entered into a license agreement (the "2004 Agreement") with NT that granted NT limited rights to use some of Plaintiff's artwork, copyrights and trademarks in connection with promotion and sales of certain merchandise.  (Hardy Dec. ¶ 20; Hoel Dec. ¶ 14).  Since September 2004, Plaintiff has provided NT with more than 1,800 individual tattoo designs created by Ed Hardy (the "Ed Hardy Design Catalog").  (Hardy Dec. ¶ 21; Hoel Dec. ¶ 15).

McDermott Will & Emery LLP
Attorneys At Law
Irvine

### 2.   The 2005 Amended Agreement

On or about September 18, 2005, Plaintiff and NT entered into a "Restated and Amended License Agreement" (the "2005 Amended Agreement"). (Hardy Dec. ¶22; Hoel Dec. 16, Ex. 2).   The 2005 Amended Agreement supersedes the 2004 Agreement and governs the current business relationship between NT and Hardy Life. (Hardy Dec. ¶22; Hoel Dec. 16, Ex. 2).  The 2005 Amended Agreement provides for an initial license term of 10 years commencing on July 1, 2005, to and including June 30, 2015. *(Id.)*  The 2005 Amended Agreement requires that NT obtain Plaintiff's approval prior to using Plaintiff's Marks and Registered Artwork on products, advertising and promotional materials and tags and labels. (Hoel Dec. ¶¶ 28-29, Ex. 2; Hardy Decl. ¶ 22).  The 2005 Amended Agreement also requires NT to provide samples of goods, advertising and promotional materials, and labels and tags upon Plaintiff's request so that Plaintiff can ensure that Plaintiff's Marks and Registered Artwork are depicted properly and that the goods sold and materials distributed under Plaintiff's Marks meet Plaintiff's quality standards, specifications and directions.  *(Id)*.

### D.   Defendants' Wrongful Acts Giving Rise of Plaintiff's Claims

### 1.   Defendants' Infringement of Plaintiff's Registered Artwork

Plaintiff licensed the Registered Artwork to NT only for use on Ed Hardy brand merchandise (for which NT pays license fees) and did not license derivative works based on Plaintiff's Registered Artwork. (Hardy Dec. ¶¶ 27, 29, 32; Hoel Dec. ¶ 25).  But Defendants have used unauthorized copies of, and unauthorized derivative works based upon, Plaintiff's Registered Artwork to promote and sell Defendants' "Crystal Rock" and "Christian Audigier" clothing brands. (Hardy Dec. ¶¶ 24-32, Exs. 1, 4-7; Hoel Dec. ¶¶ 21-25, Exs.3-6).  Plaintiff objects to these uses, but Defendants continue to distribute advertising materials and sell the products bearing unapproved and unlicensed derivative works that are based on Plaintiff's Registered Artwork. (Hardy Dec. ¶¶ 24-32, Exs. 1, 4-7; Hoel Dec. ¶¶

McDermott Will & Emery LLP
Attorneys At Law
Irvine

21-25, Exs.3-6).[2]

### E.   Defendants' Infringement of Plaintiff's Marks

#### 1.   Defendants' Unauthorized Tagline

The 2005 Amended Agreement provides that, unless NT has obtained Plaintiff's prior written approval, NT may not use any artwork, advertising, or promotional materials that bear Plaintiff's Marks if such artwork, advertising or promotional materials were not designed by Plaintiff.  (Hoel Dec. ¶¶ 26-34, Exs. 2, 7).  Recently, however, Audigier and NT began using the unauthorized tagline, "Ed Hardy by Christian Audigier" (Defendants' "Unauthorized Tagline") in promotional materials that Plaintiff did not design and on the products themselves, which Plaintiff did not design.   (Hoel Dec. ¶¶ 26-34, Exs. 2, 7; Hardy Decl. ¶ 23).  Defendants never sought permission to use the Unauthorized Tagline and Plaintiff objects to the use of the Unauthorized Tagline.  (Hoel Dec. ¶¶ 26-34, Exs. 2, 7; Hardy Decl. ¶ 23).  Nevertheless, Defendants continue to use the Unauthorized Tagline.  (*Id.*)

#### 2.   Defendants' Unauthorized Products and Sublicensees

The 2005 Amended Agreement prohibits NT from designing, distributing, and selling; or entering into sublicenses for posters, lithographs, printed art, reproductions, calendars, books, greeting cards, printed paper (coated or uncoated), cardboard, ceramics, and weapons.  (Hoel Dec. ¶ 35, Ex. 2).  Nonetheless, NT has entered into unauthorized sublicenses for "cardboard" air fresheners and "printed paper" products, e.g., school supplies and stationary.  (Hoel Dec. ¶¶ 35-38, Exs. 2, 8-10).  Plaintiff objects to the sale of these products, but NT continues to sublicense and sell these prohibited products.  (*Id*)

The 2005 Amended Agreement prohibits NT from entering into sublicenses of Plaintiff's Marks for men's and women's tops or headwear without Plaintiff's

---

[2]     In fact, other than NT, none of the Defendants have ever been licensed to produce any products or materials containing Plaintiff's Registered Artwork and Plaintiff's Marks.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

prior written consent.  (Hoel Dec. ¶ 39; Ex. 2).  NT has entered into unauthorized sublicenses of Plaintiff's Marks for tops and headwear.  (Hoel. Dec. ¶¶40-43, Exs. 2, 10).  Plaintiff objects to the sale of these products bearing Plaintiff's Marks, but NT continues to sublicense the production of such products.  (*Id.*)

The 2005 Amended Agreement requires NT to furnish Plaintiff with sample labels, tags, advertising and promotional materials and products bearing Plaintiff's Marks and Registered Artwork so that Plaintiff can ensure that the products and materials comply with Plaintiff's quality standards and specifications.  (Hoel Dec. ¶ 29, Ex. 2; Hardy Decl. ¶22.) Plaintiff has repeatedly requested such samples, but NT has refused to provide any.  (Hoel Dec. ¶ ¶ 18, 29.)  Instead, NT  simply sells products and uses labels, tags, advertising materials bearing Plaintiff's Marks and Plaintiff's Registered Artwork despite the fact that Plaintiff has never approved those products and materials and objects to those products and materials.  (*Id.*)

### 3.  Plaintiff's Cease and Desist Demand to Defendants

On February 13, 2008, Hardy Life sent NT a letter demanding that NT cease use of the Unauthorized Tagline, cease infringing Plaintiff's copyrights, cease entering into prohibited sublicenses, and furnish advertising and product samples as the 2005 Amended Agreement requires.  (Hoel Dec. ¶ 33).  Per section 24 of the 2005 Amended Agreement, Hardy Life requested that NT comply with its demands within 30 days.  (*Id.*).  Despite subsequent settlement discussions, NT and Audigier refuse to stop using the Unauthorized Tagline, refuse to stop entering into unauthorized sublicenses, refuse to stop using derivates of the Registered Artwork , and refuse to provide product and advertising samples.  (*Id.* ¶ 34).

## III.  LEGAL STANDARD

Section 502(a) of the federal Copyright Act, 17 U.S.C. §502(a), expressly authorizes a court to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 713 (9th Cir. 2007).  The federal Lanham Act also

McDermott Will & Emery LLP
Attorneys At Law
Irvine

expressly permits injunctive relief to prevent the violation of any right of the owner of a federally registered trademark, and/or to prevent a violation under the federal unfair competition statute, section 1125(a) of the of the Lanham Act.  15 U.S.C. § 1116(a).  Injunctive relief is the remedy of choice for trademark and unfair competition cases, because there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-1181 (9th Cir. 1988).

In the Ninth Circuit, a "preliminary injunction should be granted if a plaintiff can show either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tilt in the plaintiff's favor*." Elvis Presley Enters.  v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003).  In assessing a motion for preliminary injunction, courts consider: (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships tips in favor of one party or the other; and in certain cases (4) whether the public interest will be advanced by granting preliminary relief.  *Mayweathers v. Newland*, 258 F.3d 930, 938 (9th Cir. 2001); *Miller ex rel. NLRB  v. California Pac. Medical Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994).

## IV.   **ARGUMENT**

### A.   **Plaintiff Has a Substantial Likelihood of Success on Its Claims**

#### 1.   **Defendants Are Liable for Copyright Infringement**

Plaintiff must prove the following to establish a  likelihood of success on its copyright infringement claim: (1) ownership of the copyrights in question; and (2) that Defendants copied its copyrighted works. *Metcalf v. Bocho*, 294 F.3d 1069, 1072 (9th Cir. 2002).

McDermott Will & Emery LLP
Attorneys At Law
Irvine

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

a.      **Plaintiff Owns Valid Copyrights for the Registered Artwork**

A copyright registration constitutes *prima facie* evidence of a copyright's validity and ownership.  *See* 17 U.S.C. § 410(c).  Plaintiff owns copyright registrations for each of the individual tattoo designs that encompass the Registered Artwork.  (Hardy Decl. ¶¶ 14, 17, Ex. 2; Hoel Decl. ¶ 4).  Thus, Plaintiff has established the ownership prong of its copyright infringement claim.  Indeed, Defendant NT admits in the 2005 Amended Agreement that "all rights to, interest in and goodwill relating to the Artwork . . . belong exclusively to [Plaintiff].  (Hoel Decl Ex. 2, Sec. 1).

b.      **Defendants Copied Plaintiff's Registered Artwork And Created Unauthorized Derivative Works Based on Plaintiff's Registered Artwork**

Defendant's copying may be proved by evidence indicating that the infringer had access to the copyrighted work and showing that the protected portions of the works are substantially similar.  *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970).

There is no dispute that Defendants had access to Plaintiff's Registered Artwork.  Since 2004, Plaintiff has provided NT with over 1,800 individual tattoo designs in the Ed Hardy Design Catalog, including Plaintiff's Registered Artwork.  Hardy Dec. ¶ 21; Hoel Dec. ¶¶ 15, 21, 23).

There also is no dispute that Defendants' Artwork is substantially similar to Plaintiff's Registered Artwork.  To determine whether works are substantially similar, the Ninth Circuit uses both an extrinsic and an intrinsic test.  *Gable-Leigh, Inc. v. North Am. Miss.*, 2001 WL 521695 *7, 2001 U.S. Dist. LEXIS 25614 *24 (C.D. Cal. 2001).  The "extrinsic" test considers whether two works share a similarity of ideas and expression based on external, objective criteria.  *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).  When a high degree of access is

shown, however, a lower standard of proof on substantial similarity is required. *Id.* In applying the "intrinsic" test, the Court examines an ordinary person's subjective impressions of the similarities between two works. *Shaw v. Lindheim,* 919 F.2d 1353, 1360-61 (9th Cir. 1990).

As shown below, many components of Defendants' infringing works are substantially similar to, and constitute derivative works based on, Plaintiff's Registered Artwork. Additional evidence of Defendants' coping is detailed in the attached declarations and exhibits. (See Hardy Dec., Exs. 1, 4-7; Hoel Dec. Exs.3-6).

### Defendants' Infringing Crystal Rock Advertisement

Defendants created and used unauthorized derivative works that are based on Plaintiff's Registered Artwork titled, ***"Three Vintage Roses with Buds,"*** and ***"Vintage Rose Vine with Two Roses,"*** in widespread commercial emails and to advertise Audigier's "Crystal Rock" clothing brand on the brand's website "Crystal Rock Shop." (Hardy Dec. ¶¶ 24-27, Exs. 1, 4-6.). Plaintiff never licensed NT or any of the Defendants to create or use derivate works based on Plaintiff's Registered Artwork, Plaintiff never approved such works and Plaintiff objects to such works.[3] (*Id.*) Nevertheless, Defendants continue to sell the unauthorized derivative works. (*Id.*) The images below compare Plaintiff's Registered Artwork with Defendants' infringing derivative works as they appear in the Crystal Rock Shop advertisement.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

---

[3]     In fact, other than Defendant NT, Plaintiff has never licensed its Registered Artwork to be used by any Defendant.

**Plaintiff's Registered Artwork**          **Defendants' Infringing Advertisement**

*"Vintage Rose Vine With Two Roses"*

          

**Plaintiff's Registered Artwork**          **Defendants' Infringing Advertisement**

*"Three Vintage Roses With Buds"*

          

**Plaintiff's Registered Artwork**          **Defendants' Infringing Advertisement**

*"Three Vintage Roses With Buds"*

          

## **Defendants' Infringing Christian Audigier Advertisement**

Defendants also have created unauthorized derivative works that are based on

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

Plaintiff's Registered Artwork titled ***"Ed Hardy's Devil Woman,"*** and ***"Once Wounded Twice Shy – Dagger Through Heart."*** Defendants have used these infringing derivative works in advertisements for Audigier's Christian Audigier clothing brand. (Hardy Dec. ¶ ¶ 28-29, Ex. 1, 7). Plaintiff never licensed any of the Defendants to create or use derivate works based on Plaintiff's Registered Artwork, Plaintiff never approved such works and Plaintiff objects to such works. (*Id.*) Nevertheless, Defendants continue to use these unauthorized derivative works. (*Id.*) The images below compare Plaintiff's Registered Artwork with Defendants' infringing derivative works.

McDermott Will & Emery LLP
Attorneys At Law
Irvine

**Plaintiff's Registered Artwork**          **Defendants' Infringing Advertisement**

 

*"Ed Hardy's Devil Woman"*

**Plaintiff's Registered Artwork**          **Defendants' Infringing Advertisement**

 

*"Once Wounded Twice Shy – Dagger Through Heart"*

**McDERMOTT WILL & EMERY LLP**
ATTORNEYS AT LAW
IRVINE

## Defendants' Infringing Christian Audigier Products

Defendants also have created unauthorized derivative works that are based on the Registered Artwork titled, ***"Koi Swimming Through Flowers and Blue Waves"*** and ***"Koi Swimming Through Flowers and Black Waves."*** Defendants use these infringing derivative works on Christian Audigier brand t-shirts, some of which are sold at the Christian Audigier website.  (Hardy Dec. ¶¶ 30-32, Exs. 1, 8). Plaintiff never licensed any of the Defendants to create or use derivate works based on Plaintiff's Registered Artwork, Plaintiff never approved such works and Plaintiff objects to such works.  (*Id.*)  Nevertheless, Defendants continue to use these unauthorized derivative works.  (*Id.*)  The images below compare Plaintiff's Registered Artwork with Defendants' infringing t-shirts that contain derivative works based on Plaintiff's Registered Artwork.

| **Plaintiff's Registered Artwork** | **Defendants' Infringing T-Shirts** |
| --- | --- |
| *"Koi Swimming in Flowers and Blue Waves"*  *"Koi Swimming in Flowers and Black Waves"* |  |

Plaintiff has a substantial likelihood of success on its copyright infringement claims.  Plaintiff's copyrights are valid – a fact essentially conceded by NT in the 2005 Amended Agreement.  Moreover, Defendants have created and used unauthorized derivative works which are clearly based on Plaintiff's Registered Artwork, even though Plaintiff did not license any of the Defendants to create such

derivative works, and objects to such derivative works.

### 2.   Defendants Are Liable For Trademark Counterfeiting

To prevail on a counterfeiting claim, Plaintiff must show that: (1) it owns a valid federal trademark registration, (2) Defendants used a "counterfeit mark," (3) "which is likely to deceive, cause mistake or confusion."  See *Levi Strauss & Co. v. Shilon*, 1996 U.S. Dist. LEXIS 22706, *9 (C.D. Cal. 1996), *aff'd*, 121 F.3d 1309 (9th Cir. 1997).  A "counterfeit mark" is "identical or substantially indistinguishable from" a registered mark for the goods covered by that registration. 15 U.S.C. Section 1116(d) §1116(d)(1)(B)(i), 1127.

### a.   Plaintiff Owns Valid Federal Trademark Registrations.

Plaintiff owns three federal registrations for the trademarks DON ED HARDY®, ED HARDY®, and ED HARDY® (stylized) (collectively, "Plaintiff's Registered Marks").  (Hoel Dec. ¶ 5, Ex. 1).  These registrations constitute *prima facie* evidence of the validity of those marks, of Plaintiff's ownership of those marks and of Plaintiff's exclusive right to use the registered marks in commerce for the goods identified in the registrations.  15 U.S.C. § 1115.  In fact, NT essentially acknowledged the validity of Plaintiff's Registered Marks and Plaintiff's rights to those marks by entering into the 2005 Amended Agreement to license those marks. (Hoel Dec. Ex. 2, Sec.1).  *See Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology,* 794 F.2d 38, 42 (2d Cir. 1986).  Because NT is Plaintiff's licensee, NT cannot challenge the validity of Plaintiff's Registered Marks.  *STX, Inc. v. Bauer USA*, 1997 WL 337578 *10, 1997 U.S. Dist. LEXIS 16250 *30-31 (N.D. Cal. 1997) ("current licensees are estopped from challenging the validity of a mark") (citing *Levine v. McDonald's Corp.*, 209 U.S.P.Q. 526, 529 (D. Ariz. 1979)); 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18.20 ("a trademark licensee is estopped from challenging the validity of the licensor's mark").

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

### b.    Defendants Use Trademarks That are Identical to Plaintiff's Registered Marks

Defendants use trademarks that are identical to Plaintiff's Registered Marks for the same goods covered in Plaintiff's federal registrations, i.e., ED HARDY® and DON ED HARDY® for, among other things, shirts and jackets.  Specifically, defendants Audigier and NT have procured unauthorized sublicenses for the design, distribution, and sale of men's and women's knit cashmere sweaters, jackets and outerwear, and polo shirts, all of which are prohibited by the 2005 Amended Agreement.  (Hoel Dec. ¶¶ 39-43, Exs. 2, 10).  In fact,  the 2005 Amended Agreement prohibits NT from entering into sublicenses for the design, distribution, and sales of,  **"[M]en and women's tops. . .  bearing the Don Ed Hardy or Ed Hardy trademarks,"** *without* obtaining Hardy Life's express written consent. (Hardy Dec. Ex. 3 at Section 14.c) (emphasis added).

### c.    There is a Likelihood of Confusion, Mistake and Deceit

Where, as here, Plaintiff's Registered Marks are placed on unauthorized goods of the type identified in Plaintiff's federal registrations, e.g., men's and women's shirts and jackets, such use will inevitably confuse consumers.  As a judge of this Court has held, "counterfeit marks are inherently confusing." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004).  Thus, courts "assume" as a matter of law that consumers will be confused by the unauthorized use of a trademark that is identical to a federal mark for the same goods covered by a federal registration for that mark.  *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]ounterfeits, by their very nature, cause confusion").

### 3.    Defendants Are Liable For Trademark Infringement

To prevail on its trademark infringement claim, Plaintiff must prove that (1) it owns valid trademarks; and (2) Defendants' use of similar marks causes a

McDermott Will & Emery LLP
Attorneys At Law
Irvine

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

likelihood of confusion.  *Paul Frank Indus.  v. Sunich*, 502 F.Supp.2d 1094, 1099 (C.D. Cal. 2007).  The test for likelihood of confusion is whether a "reasonably prudent consumer" in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.  *Glow Indus. v. Lopez,* 273 F. Supp. 2d 1095, 1116 (C.D. Cal. 2003) (citing *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)).  The Ninth Circuit considers the following factors to determine whether a likelihood of confusion exists: (1) the similarity of the parties' marks; (2) the strength of Plaintiff's marks; (3) evidence of actual confusion; (4) the relatedness of the parties' goods; (5) the degree of care likely to be exercised by purchasers; (6) Defendants' intent in selecting and using the mark; (7) the parties' marketing channels ; and (8) the likelihood of expansion into other markets.  *GoTo.Com, Inc., v. Walt Disney Co*., 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F2d 341, 348-49 (9th Cir 1979)).  Plaintiff need not prove every factor, or even a majority of them, to establish a likelihood of confusion.  *See Dreamwerks Prod. Group, Inc.,* 42 F.3d at 1129-30.

### a.     Plaintiff Owns Valid Trademark Registrations

Plaintiff's ED HARDY® and DON ED HARDY® marks are valid and federally registered, as is discussed *supra*, and thus the first element is satisfied.

### b.     NT's Unauthorized Use Of Plaintiff's Marks Causes A Likelihood Of Confusion Because NT Is Plaintiff's Licensee

Notwithstanding the *Sleekcraft* factors, courts recognize that a licensee's unauthorized use of the licensor's trademark *alone* establishes a likelihood of confusion.  *Sun Microsystems v. Microsoft Corp.,* 999 F. Supp. 1301 (N.D. Cal. 1998); *Hollywood Athletic Club Licensing Corp.  v. Ghac-Citywalk*, 938 F. Supp. 612, 614-15 (C.D. Cal. 1996) (citing *Church of Scientology Int'l.,* 794 F.2d 38).

Here, NT uses the Unauthorized Tagline, i.e., "Ed Hardy by Christian Audigier", which incorporates Plaintiff's ED HARDY® trademark.  (Hoel Dec. ¶ ¶

26-34, Ex. 7).  NT is procuring sublicenses for the manufacture of products bearing Plaintiff's Marks which products are expressly prohibited by the 2005 Amended Agreement, e.g., "cardboard" air fresheners and "printed paper" school supplies, despite Plaintiff's demand that it cease such sublicensing.  (Hoel Decl. ¶ ¶ 35-38, Exs. 8-10.)  NT is also using Plaintiff's Marks in advertising and promotional materials and on goods that Plaintiff has not approved and in fact object to.  (*E.g.,* Hoel Decl. ¶ 29.)  Thus, Plaintiff has established a likelihood of confusion based solely on NT's continued unauthorized use of Plaintiff's Marks.  *See, e.g.*, *Nestle USA v. Heart to Heart Publ. Co.*, 1997 U.S. Dist. LEXIS 21334 (C.D. Cal. 1997) (granting preliminary injunction against use of mark by licensee when licensee published cookbook contemplated in license agreement but had not complied with approval requirements of license agreement); *Central Ben.  Mutual Ins. Co. v. Blue Cross and Blue Shield Ass'n,* 711 F. Supp. 1423 (S.D.Oh. 1989) (granting preliminary injunction against use of marks by licensee outside territory);   *Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co.,* 576 F. Supp. 1055 (E.D.N.Y. 1983) (granting injunction against use of mark on unauthorized products).

**c.    The *Sleekcraft* Factors Also Establish A Likelihood of Confusion**

An analysis of the *Sleekcraft* factors also establishes that Defendants' use of Plaintiff's Marks causes a likelihood of confusion.

**(1)    Defendants' "Marks" Are Identical to Plaintiff's Marks**

"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion."  *Goto.com, Inc.,*  202 F.3d at 1206.  It is undisputed that Defendants use Plaintiff's Marks in the Unauthorized Tagline, as well as on products and advertising materials that have not been authorized by Plaintiff.  (Hoel. Dec. ¶ ¶26-43.) Many of Defendants' "marks" are not just confusingly similar, they are identical. *Gucci  America, Inc. v. Pieta*, 2006 WL

- 16 -

4725706 *5, 2006 U.S. Dist LEXIS 96701 *16 (C.D.Cal. 2006) ("The use of an identical mark on identical products is the paradigm of likelihood of confusion."). The fact that Defendants sometimes add the phrase, "by Christian Audigier" to Plaintiff's Marks to create the Unauthorized Tagline does not alter the substantial similarity between the marks. *Saks & Co. v. TFM Indus., Inc.* 5 U.S.P.Q. 2d 1762, 1764 (TTAB 1987) (FOLIO and FOLIO BY FIRE ISLANDER held confusingly similar); *In re Apparel Ventures, Inc.*, 229 U.S.P.Q. 225, 226 (TTAB 1986) (SPARKS and SPARK BY SASSAFRAS held confusingly similar). Thus, this factor weighs heavily in favor of Plaintiff.

### (2)     Plaintiff's Marks Are Strong

The "strength" of a mark is determined by a two-step process: the court first assesses the mark's distinctiveness, then determines the extent to which the mark has gained "secondary meaning" in the marketplace. *Glow Industries,* 273 F. Supp. at 1119. Secondary meaning refers to the consumer's association of the mark with a particular source or sponsor. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992).

Plaintiff's Marks are strong on account of widespread publicity, substantial sales and marketing expenditures and sales. (*See*, e.g., Hardy Dec. ¶ ¶ 5-18; Hoel Dec. ¶ ¶ 44-53). By entering into the 2005 Amended Agreement to license Plaintiff's Marks for a royalty, NT has conceded those marks are commercially strong.

### (3)     Actual Confusion

The Ninth Circuit does not require proof of actual confusion to find a likelihood of confusion. *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991). Actual confusion evidence is "rarely available at the preliminary injunction stage." *Electropix Inc. v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1132 (C.D. Cal. 2001).

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

1    Courts presume that where, as here, Defendants are using Plaintiff's

2    identical marks on unauthorized goods, that actual confusion has occurred.  *See,*

3    *e.g., Burger King v. Majeed*, 805 F. Supp. 994, 1001 (S.D. Fla. 1992); *Burger King*

4    *v. Hall*, 770 F. Supp. 633, 638 (S.D. Fla. 1991) .  Thus, this factor weighs in favor

5    of Plaintiff.

6                    **(4)     (5)     The Parties' Goods Are Related And
                                        Identical**

7

8    In analyzing relatedness of goods, the court considers whether the products

9    "would be reasonably thought by the buying public to come from the same source if

10   sold under the same mark."  *Glow Industries,* 273 F. Supp. 2d at 1120 (citing

11   *Sleekcraft,* 599 F.2d at 348 n.10).  Defendants' goods are the same types of goods

12   as those that are licensed to NT in the 2005 Amended Agreement, but do not meet

13   Plaintiff's quality standards.[4]  *See* pp. 5-6, *supra.*  Thus, this factor favors Plaintiff.

14                    **(6)     Defendants' Intent to Deceive is Clear**

15   In the Ninth Circuit, "an intent to confuse consumers is not required for

16   a finding of trademark infringement."  *Brookfield*, 174 F.3d at 1059.  Where such

17   intent is shown, however, that factor weighs heavily in favor of finding a likelihood

18   of confusion.  *See, e.g., Official Airline Guides  v. Goss*, 6 F.3d 1385, 1394 (9th Cir.

19   1993).  Additionally, when an alleged infringer knowingly adopts a mark similar to

20   another's, courts presume the public will be deceived.  *Abercrombie & Fitch Co. v.*

21   *Moose Creek, Inc.*, 486 F.3d 629 (9th Cir. 2007).

22   Here, Defendants' intent to deceive should be presumed, because Defendants

23   were aware of Plaintiff's Marks prior to using the Unauthorized Tagline and

24   placing Plaintiff's Marks on a variety of other merchandise.  (Hoel Dec. ¶ ¶ 14, 17).

25   NT entered into a license agreement wherein it recognized Plaintiff's ownership of

26   Plaintiff's Marks.  (See Hoel Decl. Ex. 2, Section 1).  The fact that Defendants not

27   _____

[4] The degree of care of consumers is irrelevant because the parties' marks and goods are identical.  *See,*
*McGregor-Diniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979) ("Where the products are

28   identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent
confusion").

PLAINTIFF'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR                      - 18 -                      CV08 03524 PA (CTx)
PRELIMINARY INJUNCTION

only knew they were using Plaintiff's trademarks, but that Defendants sought to benefit from such use, is compelling evidence of Defendants' bad faith. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F. 2d 149, 158 (9th Cir. 1963) (inference of likelihood of confusion is readily drawn when the evidence shows that another's name was deliberately adopted to obtain some advantage from the goodwill, good name, and good trade which another has built up). Defendants continue to sell unauthorized products and distribute unauthorized materials bearing Plaintiff's Marks and Plaintiff's Registered Artwork, even though Plaintiff has objected to such use, which is further evidence of bad faith. *See* pp. 5-6, *supra.*

**(7)     The Parties Use the Same Marketing Channels**

"Convergent marketing channels increase the likelihood of confusion." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1083 (9th Cir. 2005) (citing *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 606 (9th Cir.1987)). Here, the parties both use retail stores and the internet to advertise their products. (Hoel Dec. ¶ 38, Exs. 9, 12). Because the marketing channels involved are identical, this factor also weighs heavily in Plaintiff's favor.

**(8)     The Likelihood of Expansion Factor is Neutral**

This factor is neutral because the parties' products are identical.

In sum, virtually all of the *Sleekcraft* factors weigh in favor of Plaintiff. Thus, it is not only "probable" that Plaintiff will prevail on its claims for trademark infringement, it is overwhelmingly likely.

**B.     Defendants' Conduct Irreparably Injures Plaintiff**

In copyright infringement cases, "a showing of reasonable likelihood of success on the merits raises a *presumption* of irreparable harm." *LGS Architects, Inc. v. Concordia Homes,* 434 F.3d 1150, 1155-1156 (9th Cir. 2006) (emphasis added). Accordingly, Plaintiff "need only show a reasonable likelihood of success on [his] copyright infringement claims" to obtain a preliminary injunction. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1174 (9th

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

1  Cir.1989).  Because Plaintiff has demonstrated a likelihood of success on the merits

2  of its copyright infringement claim, irreparable harm is presumed.

3        Similarly, the Ninth Circuit has consistently held that irreparable harm is

4  presumed once a plaintiff shows a likelihood of success on the merits of its

5  trademark infringement or counterfeiting claims.  *See, e.g., Abercrombie & Fitch*

6  *Co. v. Moose Creek, Inc.,* 486 F.3d 629, 633 (9th Cir. Cal. 2007); *Pepsico, Inc. v.*

7  *Cal. Sec. Cans*, 2002 U.S. Dist. LEXIS 22404 (C.D. Cal. 2002) (infringement and

8  counterfeiting).  Because Plaintiff has a substantial likelihood of success on its

9  trademark infringement and counterfeiting claims, irreparable injury is presumed.

10       **C.**    **The Balance of Hardships Weights Heavily in Favor of Plaintiff**

11       Plaintiff has demonstrated a substantial likelihood of success on the merits of

12  its claims.  Plaintiff is suffering substantial irreparable injury as a matter of law.

13  Any potential harm to Defendants that may result from being preliminarily enjoined

14  from continuing to infringe is legally irrelevant. *See Triad Sys. Corp. v.*

15  *Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (defendant "cannot

16  complain of the harm that will befall it when properly forced to desist from its

17  infringing activities."); *Cadence Design Systems v. Avant! Corp.*, 125 F.3d 824, 830

18  (9th Cir. 1997) (holding that it was reversible error for a district court to even

19  consider "the fact that an injunction would be devastating to [defendant's] business"

20  because "where the only hardship that the defendant will suffer is lost profits from

21  an activity which has been shown likely to be infringing, such an argument in

22  defense merits little equitable consideration.").  An injunction will only enjoin

23  Defendants from selling products bearing Plaintiff's Marks and Registered Artwork

24  which Plaintiff objects to and has not approved, i.e., all of the merchandise that

25  bears Plaintiff's Marks and Artwork.  The injunction will also enjoin Defendants

26  from deceiving consumers into believing that Defendants' products originate from

27  or are approved by Plaintiff.  This *cannot* be construed as hardship.  *See Phillip*

28  *Morris,* 352 F. Supp. 2d at 1075 (finding no hardship where "Plaintiff is only

McDermott Will & Emery LLP
Attorneys At Law
Irvine

PLAINTIFF'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR                    - 20 -                      CV08 03524 PA (CTx)
PRELIMINARY INJUNCTION

1  seeking to enjoin illegal activity.  The injunction will not adversely affect any of

2  Defendants' legitimate business operations.").

3  ### D.    Issuing a Preliminary Injunction Serves the Public Interest

4  With respect to Plaintiff's copyright infringement claims, a preliminary

5  injunction serves the public interest because "copyrighted works must be protected

6  as an incentive for people to create new works."  *Gable Leigh, Inc.,* 2001 WL

7  521695 at *14 (granting motion for preliminary injunction).

8  As related to Plaintiff's trademark counterfeiting and infringement claims,

9  there is a "strong public interest in preventing consumer confusion and fraud."

10  *Paisa, Inc. v. N & G Auto*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996); *see also*

11  *AT&T Corp. v. Vision One Sec. Sys.*, 1995 WL 476251 *7, 1995 U.S. Dist. LEXIS

12  11279, *22 (S.D. Cal. 1995).  Here consumers cannot help but be deceived by

13  Defendants' unlawful conduct and thus the public interest weights in favor of

14  granting the injunction.

15  ### E.    There is No Need For a Bond

16  A district court has wide discretion in setting the amount of the bond for an

17  injunction.  *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999); Fed.

18  R. Civ. P. 65.  A bond need not be required when the harm to the enjoined party is

19  slight or where the movant has demonstrated a likelihood of success, or the court

20  may order a nominal bond.  *See. e.g., Jorgensen v. Cassiday*, 320 F.3d 906, 919

21  (9th Cir. 2003); *Walczak,* 198 F.3d at 733.

22  Plaintiff has demonstrated an overwhelming likelihood success on its

23  copyright infringement, trademark counterfeiting, and trademark infringement

24  claims.  The requested injunction will not prevent Defendants from conducting their

25  legitimate business operations.  Rather, the injunction will merely enjoin

26  Defendants from using Plaintiff's Marks and Registered Artwork in a manner that

27  Plaintiff does not approve of and objects to, and that deceives.  Because the

28  injunction will only enjoin Defendants' *illegal* activities, Defendants will not suffer

McDermott Will & Emery LLP
ATTORNEYS AT LAW
IRVINE

1    damages and therefore Plaintiff requests that the Court require either no bond or a

2    nominal bond.

3    **V.     CONCLUSION**

4         For the reasons set forth above, Plaintiff respectfully request that this Court

5    grant Plaintiff's Motion for Preliminary Injunction Pursuant to Federal Rule of

6    Civil Procedure 65(a).

7

8     Dated:    June 2, 2008                    Rita W. Siamas
                                                 Elliot Silverman
9                                                John J. Dabney
                                                 McDERMOTT WILL & EMERY LLP
10

11                                              By: /s/ Elliot Silverman
                                                    _____
12                                                  ELLIOT SILVERMAN

13                                              Attorneys for Plaintiff
                                                HARDY LIFE, LLC
14

15
     ORC 440479-2.080717.0011
16

17

18

19

20

21

22

23

24

25

26

27

28

MᶜDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE