RITA W. SIAMAS (State Bar No. 232396)
rsiamas@mwe.com
JOHN J. DABNEY (Admitted *Pro Hac Vice*)
jdabney@mwe.com
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: 202.756.8000
Facsimile: 202.756.8087

ELLIOT SILVERMAN (State Bar No. 222235)
esilverman@mwe.com
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue
Suite 500
Irvine, CA 92612-7108
Telephone: 949.851.0633
Facsimile: 949.851.9348

Attorneys for Plaintiff HARDY LIFE, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HARDY LIFE, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>NERVOUS TATTOO, INC., *et al.,*<br><br>          Defendants. | CASE NO. **CV08-03524 PA (CTX)**<br><br>**HARDY LIFE, LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  July 21, 2008<br>Time:  1:30pm<br>Dept.:<br><br>[filed concurrently with Plaintiff's Evidentiary Objections to Defendants' Declarations; Plaintiff's Responses to Evidentiary Objections by Defendant Christian Audigier; Plaintiff's Responses to Evidentiary objection by Defendants Nervous Tattoo, et al; Supp. Dec. of S. Hoel] |

**TABLE OF CONTENTS**

**Page**

I. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS TRADEMARK CLAIMS ................................... 1
   A. NT's Unauthorized Use of Plaintiff's Marks ....................................... 2
   B. NT's Unauthorized "Cardboard" and "Printed Paper" Products .......... 6
   C. NT's Unauthorized Sublicenses For "Tops and Headwear" ................ 6

II. PLAINTIFF WILL SUFFER IRREPARABLE INJURY WITHOUT AN INJUNCTION ................................................................................................. 8
   A. Trademark Infringement Constitutes Irreparable Injury ...................... 8
   B. Laches Does Not Bar the Entry of the Preliminary Injunction ............. 9

III. DEFENDANTS WILL NOT SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS ENTERED ............................................................... 11

IV. NO BOND SHOULD BE REQUIRED ..................................................... 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Honda Motor Co. v. Pro-Line Protoform*,
 325 F.Supp.2d 1081 (C.D. Cal. 2004) ...................................................................... 9

*Bowmar Instrument Corp. v. Continental Microsystems, Inc.*,
 497 F.Supp. 947 (S.D.N.Y. 1980) .......................................................................... 3

*Bulova Corp. v. Bulova Do Drasil Com*,
 144 F.Supp.2d 1329 (S.D. Fla. 2001) ................................................................... 11

*Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*
 88 F.Supp.2d 914 (C.D. Ill. 2000) .......................................................................... 4

*Byron Lars, Duck Ink, Inc. v. San Siro, Inc.*,
 1997 U.S.Dist. LEXIS 9398 (S.D.N.Y. 1997) ........................................................ 3

*SMC Promotions v. SMC Promotions*,
 355 F.Supp.2d 1127 (C.D. Cal. 2004) .................................................................. 10

*E-Systems, Inc. v. Monitek, Inc.*,
 720 F.2d 604 (9th Cir. 1983) ................................................................................. 11

*Earth Tech. v. Environmental Resources*,
 222 U.S.P.Q. 585 (C.D. Cal. 1983) ...................................................................... 10

*E.G. L. Gem Laboratories Ltd. v. Gem Quality Institute, Inc.*,
 90 F.Supp.2d 277 (S.D.N.Y. 2000) .................................................................... 5, 6

*General Conf. Corp. v. Seventh-Day Adventist Kinship*,
 1991 U.S.Dist. LEXIS 21915 (C.D. Cal. Oct. 8, 1991) ........................................ 10

*Goto.com, Inc. v. The Walt Disney Co.*,
 202 F.3d 1199 (9th Cir. 2000) ........................................................................ 1, 2, 7

*Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk*,
 938 F.Supp. 612 (C.D. Cal. 1996) .......................................................................... 8

*Internet Specialists West Inc. v. Ispwest*,
 2006 U.S.Dist. LEXIS 96351 (C.D. Cal. Nov. 16, 2006) ..................................... 10

*Kos Pharm., Inc. v. Andrx Corp.*,
 369 F.3d 700 (3d Cir. 2004) ................................................................................. 12

*Michaels v. Internet Entertain. Group, Inc.*,
 5 F.Supp.2d 823 (C.D. Cal. 1998) ........................................................................ 13

*National Customer Engineering v. Lockheed Martin Corp.*,
 43 U.S.P.Q.2d 1036 (C.D. Cal. 1997) .................................................................. 11

*Paisha, Inc. v. N&G Automobile, Inc.*,
 928 F.Supp. 1009 (C.D. Cal. 1996) ........................................................................ 3

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
  793 F.2d 1132 (9th Cir. 1986)...................................................................................2

*Quality Semiconductor, Inc. v. Qlogic Corp.*,
  31 U.S.P.Q.2d 1627 (N.D. Cal. 1994).................................................................9, 10

*Roots Ready Made Garments v. GAP, Inc.*,
  2008 U.S.Dist. LEXIS 9191 (N.D. Cal. Jan. 28, 2008)...........................7

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*
  816 F.2d 1191 (7th Cir. 1987)....................................................................2

*Sun Microsystems v. Microsoft Corp.*,
  999 F.Supp. 1301 (N.D. Cal. 1998)............................................................3

*UGG Holdings, Inc. v. Severn*,
  2005 U.S.Dist. LEXIS 45783 (C.D. Cal. Feb. 25, 2005) .......................11

## MISCELLANEOUS

4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*
  ("McCarthy") § 25:30..............................................................................5

4 Rudolf Callmann, *Law of Unfair Competition, Trademarks &
  Monopolies* § 22.37................................................................................9

The salient facts are not in dispute and Plaintiff's motion should be granted. Defendants admit that Plaintiff owns the famous ED HARDY trademarks and tattoo designs. Defendants admit that Plaintiff licensed those marks and designs to Defendant Nervous Tattoo, Inc. ("NT"). Defendants do not dispute that the License Agreement requires Plaintiff's approval of products bearing its marks and that NT refuses to secure that approval. Instead, NT simply sells unauthorized ED HARDY-branded products over Plaintiff's objections. Each week, NT introduces new ED HARDY-branded products featuring new designs and depicting Plaintiff's marks in new ways, none of which Plaintiff has approved and all of which Plaintiff objects to. There could not be a clearer case of trademark infringement.

Defendants' opposition rests almost entirely on the misguided notion that "the end justifies the means." Because NT generates substantial revenues from the sale of ED HARDY-branded products, NT insists it may continue to use Plaintiff's intellectual property however it pleases, regardless of the admitted restrictions in the License Agreement. According to NT, Plaintiff is powerless to stop it from: (i) mutilating Plaintiff's designs and attaching Plaintiff's marks to those designs, (ii) combining Plaintiff's marks with other marks, (iii) selling types of ED HARDY-branded products that are prohibited by the License Agreement, (iv) sublicensing Plaintiff's marks over Plaintiff's objection, and otherwise helping itself to Plaintiff's intellectual property. Plaintiff has lost all control over its marks and designs, and the public is deceived that Plaintiff approves Defendants' products. The Court should grant Plaintiff's motion to stop this ongoing irreparable harm.

## I. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS TRADEMARK CLAIMS

To obtain a preliminary injunction, Plaintiff may show (i) "a combination of 'probable success on the merits' and (ii) 'the possibility of irreparable injury.'" *Goto.com, Inc. v. The Walt Disney Co.*, 202 F.3d 1199, 1204-05 & n. 4 (9th Cir.

2000) (citation omitted). Because irreparable injury flows from trademark infringement as a matter of law, these two inquiries conflate "into the single question of whether plaintiff has shown a likelihood of success on the merits." *Id.* Because Plaintiff has a substantial likelihood of success on its trademark claims, the Court should enter the preliminary injunction on that basis alone. *Id.*[1]

### A. NT's Unauthorized Use of Plaintiff's Marks

To prevail on its trademark claims, Plaintiff must prove that NT's unauthorized use of Plaintiff's marks causes a likelihood of confusion. (P's Br. at 13-15.) Defendants admit that Plaintiff owns the ED HARDY marks and that those marks are famous and federally registered. (Ds' Opp. at 1-2, 15-16, 18.)[2] Defendants do not dispute that the License Agreement – like all trademark licenses – requires Plaintiff's approval of products that bear Plaintiff's marks. (P's Br. at 4-5; License Ag. ¶¶4-5, 9.) Defendants admit that Plaintiff did not approve – and, in fact, objects to – the products that NT is currently selling under Plaintiff's marks. (Ds' Opp. at 7-8, citing Mandell Decl. ¶13.) Indeed, virtually every week, including in the weeks following the filing of Plaintiff's motion, Defendants introduce brand new products bearing Plaintiff's marks and designs, none of which Plaintiff approves and all of which Plaintiff objects to for a myriad of reasons, including, without limitation, (a) the use of the Unauthorized Tagline, (b) the

---

[1] Plaintiff also has a substantial likelihood of success on its copyright claims. Defendants concede they have stopped using all of the infringing materials that form the basis for Plaintiff's motion as it relates to copyright infringement, except for the products depicting Plaintiff's Koi fish copyrights. (Ds' Opp. at 20-21.) Thus, the Court should enter a preliminary injunction with respect to those materials which Defendants claim they will no longer use. See, e.g., Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-36 (9th Cir. 1986). With respect to Plaintiff's infringement claim for the koi fish copyrights, Defendants argue that Plaintiff's copyrights are invalid. (Defs' Opp. at 20-21.) But Defendants licensed the koi fish copyrights and agreed to "preserve" those designs and are estopped to claim they are invalid. (License Ag. ¶20.) Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1200 (7th Cir. 1987). Thus, the Court should also enjoin Defendants' products that bear the infringing koi fish copyrights.

[2] Defendants filed two substantially identical oppositions to Plaintiff's motion – one by Christian Audigier and one by all of the other Defendants. As used herein, "D' Opp" refers to the brief filed by the Defendants other than Mr. Audigier.

1  mutilation of Plaintiff's tattoo designs on the products, and (c) the format and
2  manner in which Plaintiff's marks are being displayed. (P's Br. at 4-5, 15-16;
3  Supplemental Decl. of Steven Hoel ¶ 7-13; 15-19. Defendants' unauthorized use of
4  Plaintiff's marks causes a likelihood of confusion as a matter of law. *See, e.g.,*
5  *Paisha, Inc. v. N&G Auto., Inc.*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996)
6  (granting preliminary injunction because licensee "is engaging in the unauthorized
7  use of the [licensed] mark.").

Defendants insist that NT's unauthorized use of Plaintiff's marks does not constitute infringement. (Ds' Opp. at 11, 14-17.) According to Defendants, such use cannot cause a likelihood of confusion because NT is the only entity permitted to use those marks and thus, any and all of NT's ED HARDY-brand products are, by definition, "genuine." (*Id.*) Defendants cannot cite any law to support that proposition, which is not surprising because it is wrong and has been expressly rejected. *See, e.g., Byron Lars, Duck Ink, Inc. v. San Siro, Inc.*, 1997 U.S. Dist. LEXIS 9398 at *25(S.D.N.Y. 1997) (granting preliminary injunction because licensee sold unapproved products – "the fact that defendant did not obtain all such approvals [from licensor] prior to distribution and sale renders the unapproved garments . . . non-genuine."); *Bowmar Instrument Corp. v. Continental Microsystems, Inc.,* 497 F. Supp. 947, 955 (S.D.N.Y. 1980) (granting injunction against exclusive licensee). Instead, "[w]here a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the **continued use alone establishes a likelihood of confusion**." *Sun Microsystems v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998) (emphasis added). Under those circumstances, which are present here, a likelihood of confusion "clearly exists" that consumers will believe – erroneously – that plaintiff authorized defendants' products. *See, e.g., Paisha*, 928 F. Supp. at 1013 n.4.

Defendants also contend that their unauthorized use of the mark ED HARDY

McDermott Will & Emery LLP
Attorneys At Law
Washington

BY CHRISTIAN AUDIGIER is fair use. (Ds' Opp. at 15-16.) Although disputed, that is besides the point, because the License Agreement grants Plaintiff the right to approve all uses of its marks. (P's Br. at 4-5; License Ag. ¶¶4-5, 9.)[3] Defendants are using a **different mark**, i.e., ED HARDY BY CHRISTIAN AUDIGIER, rather than the licensed marks. (P's Br. at 5.) Plaintiff objects to NT's use of that different mark because, among other things, it causes the false belief that Christian Audigier created the ED HARDY brand and Plaintiff is concerned that its ED HARDY brand will blend into the separate CHRISTIAN AUDIGIER line of clothing owned by Defendants. (P's Br. at 15-16; Hoel Decl. ¶32; Ds' Br. at 8-9.)

Defendants concede that the ED HARDY brand may blend into Defendants' CHRISTIAN AUDIGIER brand, yet claim they have attempted to prevent that from happening as best they can. (Ds' Opp. at 8.)[4] But under the License Agreement, it is Plaintiff's right – not Defendants' – to decide the context and manner in which Plaintiff's marks are displayed. (Pl's Br. at 4-5.) Because Defendants are using an unapproved mark, infringement is established as a matter of law. *See, e.g., Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp.2d 914, 921-22 (C.D. Ill. 2000) (licensee's use of unapproved composite mark containing the licensed mark is infringement – "the license is a limited grant of authority to use the trademark in

---

[3] Defendants attempt to confine Plaintiff's trademark claims to the Unauthorized Tagline. However, Plaintiff's objections to the products being sold are not limited to the Unauthorized Tagline. (P's Br. at 4-6; Suppl. Hoel Decl. ¶ 7-9.) Most recently, including after the filing of this motion, Defendants have begun to mutilate Plaintiff's artwork and designate that mutilated artwork with Plaintiff's brand. (*Id.* ¶ 9.) Defendants have also recently started to depict the ED HARDY brand in an objectionable format. (*Id.* ¶ 9, 19.) Defendants' continued sale of these unauthorized products constitutes trademark infringement. *See* 4 McCarthy § 25:30 ("[A] licensee, who sells, under the licensed mark, goods which do not measure up to the licensor's quality standards, is liable for trademark infringement by the unauthorized use of the mark.").

[4] Defendants contend that their mark "BY CHRISTIAN AUDIGIER" is "diminutive" in size compared to Plaintiff's ED HARDY mark. (Defs' Opp. at 6, 16.) Not only is that irrelevant, it is untrue – the Unauthorized Tagline is featured prominently and repeatedly on the products. (Suppl. Hoel Decl. ¶ 19.) Additionally, NT recently filed a trademark application for "BY CHRISTIAN AUDIGIER." (*Id.* ¶ 18.)

a defined way. Another use is not authorized by the grant and is a breach."). *See generally* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* ("McCarthy") § 25:30 (4th ed. 2008) ("[T]he licensee's use of the [licensed] mark in a composite or format other than that permitted by the license constitutes an infringement.").

In *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277 (S.D.N.Y. 2000), the court faced facts substantially similar to those here. There, the defendant/licensee used defendant's own mark in combination with the licensed mark. *Id.* at 290, 294. In enjoining defendant from engaging in the unauthorized use of the licensed mark as well as its own mark, the court noted that defendant's conduct was "manifest bad faith," because defendant "recognized that the development of a commercially valuable identity and reputation for his own business, as opposed to the business he ran under the sublicense, would take quite some time. He decided to shortcut that process by associating his new [brand name] . . . with [plaintiff's mark], in a manner that in some cases falsely stated, and in other cases falsely implied, that [defendant] was the progenitor of [plaintiff] and [plaintiff's] products." *Id.* at 295-96. The court admonished that "[A] licensee is bound to know that its use and promotion of the licensed mark gives the licensee no rights in the mark; its efforts inure to the benefit of the owner. Indeed, a licensee that wishes to create rights in a mark separate from the licensed mark has an affirmative obligation to choose a mark sufficiently different from the licensed mark to avoid confusion – 'the licensee trades upon the good will of the licensor at the licensee's peril.'" *Id.* at 300. The court concluded that defendant "did not have the right to . . . intermingle [defendant's] name and marks with [plaintiff's mark] in a manner likely to confuse the public as to the source of the [parties'] products. . . . Yet [defendant] set out to do precisely that, and he succeeded. [Defendant] plainly violated . . . the Lanham Act." *Id.* at 298.

The same is true here. Defendants are using the Unauthorized Tagline to leverage off the goodwill and reputation of Plaintiff and to sell Defendants' **completely separate** clothing line called "CHRISTIAN AUDIGIER." (P's Br. at 5; Ds' Opp. at 8-9.) As in *E.G.L. Gem*, the use of the Unauthorized Tagline causes consumers to believe that Defendant Christian Audigier created the ED HARDY brand – a delusion that Mr. Audigier himself suffers from (Ds' Opp. at 15 ("Christian Audigier created the [ED HARDY] brand"). And as in *E.G.L. Gem*, the court should enjoin Defendants' unapproved use of Plaintiff's marks.

### B. NT's Unauthorized "Cardboard" and "Printed Paper" Products

The License Agreement prohibits NT from selling products made of "cardboard" or "printed paper." (P's Br. at 5, 16; License Ag. ¶2.) NT does not dispute that it has procured sublicenses for the sale of "cardboard" air fresheners and "printed paper" products, e.g., school supplies and stationary. (*Id.*) Plaintiff objects to those products, but NT continues to sell them. (*Id.*) NT's sale of those products constitutes infringement as a matter of law. *See generally* 4 McCarthy § 25:30 ("Any sales of goods or services under the mark which are outside the area of the consent granted in the license are regarded as infringements of the mark."). Defendants do not challenge Plaintiff's contention about these products.

### C. NT's Unauthorized Sublicenses For "Tops and Headwear"

The License Agreement prohibits NT from granting sublicenses for "men's and women's tops and headwear" without Plaintiff's written approval. (P's Br. at 5-6; License Ag. ¶14(c).) NT does not dispute that it has granted sublicenses for sweaters, polo shirts, jackets and motorcycle helmets without Plaintiff's written approval and that Plaintiff objects to those products. (*Id.*) However, NT refuses to stop selling those products. (*Id.*) Defendants' use of Plaintiff's marks on unauthorized, sublicensed products constitutes trademark infringement. *See*

HARDY LIFE, LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — - 6 - — CASE NO. CV08-03524 PA (CTx)

*generally* 4 McCarthy § 25:30 ("Where a license agreement requires the trademark owner/licensor's written approval to a sublicense, a sublicense which does not comply with the requirement is invalid and gives the sub-licensee no defense. **Both the licensee and the sub-licensee are liable for the infringing actions of the sub-licensee.**" (emphasis added)).

In response, Defendants contend that the phrase "tops and headwear" in the License Agreement does not actually mean what it says. (Ds' Opp. at 13, citing C. Audigier Decl. ¶5.) Defendants maintain that the term "tops" means "t-shirts," but not the "polo shirts" which Defendants are sublicensing, including a brand new line that appeared after this motion was filed. (*Id.*; Suppl. Hoel Decl. ¶3.) But the License Agreement is a fully-integrated contract and may not be modified except in a writing signed by all parties. (License Ag. ¶¶28, 34 & 36.) The terms "tops" and "headwear" are afforded their plain meanings. The *American Heritage Dictionary of American Language* defines "top" as "a garment worn on the upper half of the body, especially a sweater or knit shirt." (Suppl. Hoel Decl. ¶ 21.) "Headwear" is defined as "a hat or other covering for the head." (*Id.*) Thus, sweaters, polo shirts, jackets and motorcycle helmets are covered by the phrase "tops and headwear" in the License Agreement. Defendants' parole evidence about the alleged intent of the parties regarding the meaning of the non-ambiguous phrase "tops and headwear" is inadmissible. *See, e.g., Roots Ready Made Garments v. GAP, Inc.*, 2008 U.S. Dist. LEXIS 9191 (N.D. Cal. Jan. 28, 2008).

In sum, Plaintiff has an overwhelming likelihood of success on its trademark claims, and is entitled to a preliminary injunction. *See, e.g., Goto*, 202 F.3d at 1204-05 & n.4. Defendants appear to believe that the License Agreement is not a "license" at all, but instead an "assignment" of Plaintiff's intellectual property.[5] It

---

[5] There is no merit to Defendants' contention that preserving the "status quo ante litem" means that the Court should deny Plaintiff's motion and allow NT to continue using Plaintiff's intellectual property in any manner it wants. (Ds' Opp. at 11-12.) The "status
(continued…)

HARDY LIFE, LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — - 7 - — CASE NO. CV08-03524 PA (CTx)

is difficult to conceive of a more egregious case of trademark infringement.

## II. PLAINTIFF WILL SUFFER IRREPARABLE INJURY WITHOUT AN INJUNCTION

### A. Trademark Infringement Constitutes Irreparable Injury

Trademark infringement, by its very nature, constitutes irreparable injury as a matter of law. (P's Br. at 20.) The irreparable injury to a licensor when a licensee uses the licensed mark in an unauthorized manner is especially pronounced:

> In a licensor/licensee case, the reasons for issuing a preliminary injunction for trademark infringement are even more compelling than in the ordinary case. The licensor has a strong need to control the use of its mark both to preserve the quality of the mark and to maintain the rights to the mark, for a licensor who fails to monitor its mark risks a later determination that the mark has been abandoned. The licensor need not prove that the unauthorized licensee is damaging the licensor's reputation, but need only show that it has **lost control over its reputation,** which is the **very thing** that constitutes **irreparable harm in the licensing context.**

*Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk*, 938 F. Supp. 612, 615 (C.D. Cal. 1996) (citations and quotations omitted) (emphasis added). And as a prominent commentator on trademarks explains,

> It can hardly be overemphasized that **the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and the**

---

quo ante litem" is the status that existed prior to Defendants' unauthorized uses of Plaintiff's marks. *See, e.g., Goto*, 202 F.3d at 1210. "The interpretation of this [status quo ante litem] concept that [Defendants] advocate[] would lead to absurd situations, in which plaintiffs could never bring suit [and seek a preliminary injunction] once infringing conduct had begun." *Id.*

> **quality of the defendant's goods**. Even if the infringer's goods are presently high quality, the plaintiff can properly insist that his reputation should not be in the hands of another.

4 Rudolf Callmann, *Law of Unfair Competition, Trademarks & Monopolies* § 22.37 (4th ed. 1995) (emphasis added).

Plaintiff has lost all control over Defendants' use of Plaintiff's marks and the quality and nature of the goods being sold under those marks. (P's Br. at 4-6.) Plaintiff objects to the manner in which Defendants are using Plaintiff's intellectual property, but Defendants continue to sell the objectionable products. (*Id.*) Every week, NT introduces new products bearing Plaintiff's marks and designs none of which Plaintiff has approved and all of which Plaintiff objects to. (*See supra* p. 3.) Plaintiff is entitled to a preliminary injunction to stop this irreparable injury. *See, e.g., American Honda Motor Co. v. Pro-Line Protoform*, 325 F. Supp.2d 1081, 1085 (C.D. Cal. 2004) ("Under the Lanham Act, when a trademark owner's rights are being violated, that party is entitled to an injunction.").[6]

### B. Laches Does Not Bar the Entry of the Preliminary Injunction

Defendants contend that Plaintiff cannot suffer irreparable injury because Defendants allegedly first used the Unauthorized Tagline in August 2005, but Plaintiff did not file suit until May 2008. (Ds' Opp. at 17-19.) Defendants allegedly commenced use of the Unauthorized Tagline in August 2005 on a store front; on inside labels and hang tags of garments in April 2006; and on the outside

---

[6] Defendants argue that Plaintiff is not being irreparably injured because it does not sell a competing line of clothing and Defendants' use of Plaintiff's marks with the CHRISTIAN AUDIGIER mark will elevate Plaintiff's marks into the "fashion stratosphere." (Ds' Opp. at 2, 12.) But the fact that Plaintiff has **lost control** over the nature and quality of products sold under its marks constitutes irreparable injury as a matter of law. *See, e.g., Quality Semiconductor, Inc. v. Qlogic Corp.*, 31 U.S.P.Q.2d 1627 (N.D. Cal. 1994) (granting preliminary injunction – "the fact that plaintiffs have had the symbol of their reputation placed in the hands of another is irreparable injury. The injury is to plaintiffs' interest in having exclusive control over the symbol of their own reputation.").

of garments in August 2007. (*Id.* at 6-8.) Defendants concede that Plaintiff objected to the Unauthorized Tagline in September 2007, i.e., immediately after the Unauthorized Tagline appeared on the outside of garments. (*Id.*) Defendants' laches defense fails for multiple reasons.

First, laches obviously does not bar Plaintiff's objections to, and request for preliminary injunctive relief against, products that were first were offered for sale in August 2007 and thereafter, which comprise the vast majority of the products at issue and which contain new re-drawings of Plaintiff's designs and new depictions of Plaintiff's marks. Indeed, some products were only first offered for sale after this motion was filed. (P's Br. at 1, 4-5; Suppl. Hoel Decl. ¶ 6.) *See, e.g., General Conf. Corp. v. Seventh-Day Adventist Kinship*, 1991 U.S. Dist. LEXIS 21915 at \*\*11-12 (C.D. Cal. Oct. 8, 1991) (granting preliminary injunction despite seven year delay because of scope of infringement changed).

Moreover, there is a "strong presumption" that laches does **not** apply in a trademark infringement case under the Lanham Act if the claim is filed within the analogous state law statute of limitations. *See, e.g., Internet Specialists West Inc. v. Ispwest,* 2006 U.S. Dist. LEXIS 96351 at \*\*3-4 (C.D. Cal. Nov. 16, 2006); *SMC Promotions v. SMC Promotions*, 355 F. Supp.2d 1127, 1135 n.12 (C.D. Cal. 2004). Here the analogous statute of limitations is the four-year period in the California trademark statute. *Internet*, 2006 U.S. Dist. LEXIS at \*4. By Defendants' admission, Plaintiff filed this claim within four years of Defendants' alleged first use of the Unauthorized Tagline. (Ds' Opp. at 6-7.) Thus, there is a "strong presumption" that laches **is inapplicable.** *See, e.g.*, *Internet*, 2006 U.S. Dist. LEXIS at \*4.

Laches also fails because Plaintiff has an overwhelming likelihood of success on its trademark claims and "generally laches will not be applied when proof of infringement is clear." *Earth Tech. v. Environmental Res.*, 222 U.S.P.Q. 585 (C.D.

HARDY LIFE, LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 10 - CASE NO. CV08-03524 PA (CTx)

Cal. 1983).[7] Laches fails because it is an equitable defense and Defendants are willful infringers. *See, e.g.*, *National Customer Engineering v. Lockheed Martin Corp.*, 43 U.S.P.Q.2d 1036 (C.D. Cal. 1997); *Bulova Corp. v. Bulova Do Drasil Com*, 144 F. Supp.2d 1329, 1331(S.D. Fla. 2001) (granting preliminary injunction despite 4½ year delay because defendant used mark in bad faith). In February 2008, Plaintiff requested that NT furnish samples of all products bearing Plaintiff's marks, as required under the License Agreement, and NT – to this day – refuses to furnish any samples. (Pl's Br. at 6.) NT's abject, continued refusal to submit any of its products to Plaintiff for approval or disapproval and to instead sell such products over Plaintiff's objections can only be understood as willful trademark infringement. *Cf. UGG Holdings, Inc. v. Severn,* 2005 U.S. Dist. LEXIS 45783 at *27 (C.D. Cal. Feb. 25, 2005) (defendant's decision to continue use of mark after warning of the consequences of so doing shows bad faith).[8]

### III.  DEFENDANTS WILL NOT SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS ENTERED

As discussed above, the Court need not consider irreparable harm that would allegedly befall Defendants and should enter a preliminary injunction because Plaintiff has established an overwhelming likelihood of success on the merits of its claims and substantial irreparable injury. Nevertheless, Defendants will not suffer

---

[7] Defendants' reliance on *E-Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604 (9th Cir. 1983) is misplaced. (Ds' Opp. at 17.) There, the plaintiff waited six years to seek a preliminary injunction and did not establish a clear case of infringement, whereas here any delay was less than three years and Plaintiff has established a clear case of infringement.

[8] Defendants attempt to mislead the Court that Mr. Hardy approves of Defendants' unauthorized use of Plaintiff's marks by selectively quoting an e-mail from Mr. Hardy to Mr. Mandell of Defendants. (Ds' Opp. at 12 citing Ex. D to Mandell Decl.) Defendants quote that portion of Mr. Hardy's e-mail that states "my work is certainly being leveraged financially and popularly in ways I never dreamed of," but Defendants then blatantly omit the balance of what Mr. Hardy said in that e-mail: "**but aspects of style, and 'who is who' are what I question."** (*Id.*) (emphasis added). Thus, far from approving Defendants' unauthorized use of Plaintiff's marks, Mr. Hardy was actually **objecting** to Defendants' re-drawing of his artwork and depiction of his trademark, i.e., in a manner so that the brand is blended into the CHRISTIAN AUDIGIER brand.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

any cognizable irreparable injury if the injunction is entered.

Defendants contend that there are millions of products on the market bearing Plaintiff's marks representing $35,000,000 in merchandise and that an injunction would cripple their business. (Ds' Opp. at 19.) But NT chose to manufacture and distribute that merchandise knowing that Plaintiff objected to it. (P's Br. at 6.) NT chose to ignore Plaintiff's February 2008 written request for all product samples – so that Plaintiff could approve or disapprove products prior to manufacture – and to instead manufacture and distribute unapproved products. (*Id.*) And NT chooses to this day **not** to provide product samples to Plaintiff prior to manufacturing those products, but to instead introduce new ED HARDY-branded products on a weekly basis, despite Plaintiff's written request that NT furnish such samples and Plaintiff's objections to Defendants' products. (*Id.*) Thus, Defendants "can hardly claim to be harmed where [they] brought any and all difficulties occasioned by the issuance of the injunction upon [themselves]." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727-28 (3d Cir. 2004).

/ / /

/ / /

/ / /

## IV. NO BOND SHOULD BE REQUIRED

Plaintiff has an overwhelming likelihood of success in this case. Defendants may not sell ED HARDY-branded products that Plaintiff rejects, and Defendants are doing that. The Court should impose no bond or a minimal bond. *Michaels v. Internet Entertain. Group, Inc.,* 5 F. Supp.2d 823, 842-43 (C.D. Cal. 1998) (requiring minimal bond because of the strength of plaintiff's case).

Dated: July 14, 2008

Respectfully submitted,

John J. Dabney
Rita W. Siamas
Elliot Silverman
McDERMOTT WILL & EMERY LLP

By: /s/ John J. Dabney
John J. Dabney

Attorneys for Plaintiff HARDY LIFE, LLC.

WDC99 1591202-2.009900.0011