JAMES H. TURKEN SBN 69618
AMY L RUBINFELD SBN 145194
DICKSTEIN SHAPIRO LLP
2049 Century Park East
Suite 700
Los Angeles, California 90067
Telephone: 310.772.8300
Facsimile: 310.772.8301

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARDY LIFE, LLC, a California limited liability company,<br><br>PLAINTIFF(S)<br><br>V.<br><br>NERVOUS TATTOO, INC., a California corporation; CHRISTIAN AUDIGIER, INC., a California corporation; SHOP CRYSTAL ROCK, a California business entity; BACKSTAGE WEB, INC., a California corporation; SHOP ON STAGE, INC., a California corporation; CHRISTIAN AUDIGIER, a California resident, and DOES 1-10, inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV08 03524 PA (CTx)<br><br><br><br>SUMMONS ON COUNTERCLAIMS |

COUNTERDEFENDANT(S):
TO:DEFENDANT(S): STEVEN HOEL and DONALD EDWARD HARDY

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☐ _____ amended complaint ☒ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, James H. Turekn, Dickstein Shapiro LLP, whose address is 2049 Century Park East, Suite 700 Los Angeles, CA 90067. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **2 1 AUG 2008** _____

By: _____
Deputy Clerk

(Seal of the Court)

1173

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)]._

American LegalNet, Inc.
www.USCourtForms.com

| | |
|---|---|
| NERVOUS TATTOO, INC., a California corporation,<br><br>                                    COUNTERCLAIMANT (S)<br><br>                         V.<br><br>HARDY LIFE, LLC, a California limited liability<br>company; STEPHEN HOEL, an individual; and<br>DONALD EDWARD HARDY, an individual,<br><br>                                    COUNTERDEFENDANTS. | CASE NUMBER<br>CV08 03524 PAT (CTx)<br><br>---<br><br>**ATTACHMENT TO SUMMONS** |

Error! Unknown document property name.
American LegalNet, Inc.

JAMES H. TUREK SBN 49708
AMY L RUBINFELD  SBN 145194
DICKSTEIN SHAPIRO LLP
2049 Century Park East
Suite 700
Los Angeles, California 90067
Telephone:  310.772.8300
Facsimile:  310.772.8301

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARDY LIFE, LLC, a California limited liability company,<br><br>PLAINTIFF(S)<br><br>V.<br><br>NERVOUS TATTOO, INC., a California corporation; CHRISTIAN AUDIGIER, INC., a California corporation; SHOP CRYSTAL ROCK, a California business entity; BACKSTAGE WEB, INC., a California corporation; SHOP ON STAGE, INC., a California corporation; CHRISTIAN AUDIGIER, a California resident, and DOES 1-10, inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV08 03524 PA (CTx)<br><br><br>**SUMMONS** ON  COUNTERCLAIMS |

COUNTERDEFENDANT(S):
TO: ~~DEFENDANT(S):~~ STEVEN HOEL and DONALD EDWARD HARDY

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☐ _____ amended complaint ☒ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>James H. Turek, Dickstein Shapiro LLP</u>, whose address is <u>2049 Century Park East, Suite 700 Los Angeles, CA 90067</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __ **2 1 AUG 2008** _____

By: _Amy Aughate_____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American LegalNet, Inc.
www.USCourtForms.com

| | CASE NUMBER |
|---|---|
| NERVOUS TATTOO, INC., a California corporation,<br><br>COUNTERCLAIMANT (S)<br><br>V.<br><br>HARDY LIFE, LLC, a California limited liability<br>company; STEPHEN HOEL, an individual; and<br>DONALD EDWARD HARDY, an individual,<br><br>COUNTERDEFENDANTS. | CV08 03524 PAT (CTx)<br><br><br>**ATTACHMENT TO SUMMONS** |

Error! Unknown document property name.
American LegalNet, Inc.

1  JAMES H. TURKEN (SBN 89618)
   turkenj@dicksteinshapiro.com
2  AMY L RUBINFELD (SBN 145194)
   rubinfelda@dicksteinshapiro.com
3  JOHN L. TUELL (SBN 208808)
   tuellj@dicksteinshapiro.com
4  FAWN A. WRIGHT (SBN 246443)
   wrightf@dicksteinshapiro.com
5  DICKSTEIN SHAPIRO LLP
   2049 Century Park East, Suite 700
6  Los Angeles, CA 90067-3109
   Telephone: (310) 772-8300
7  Facsimile: (310) 772-8301
8

9  Attorneys for Defendant and Counterclaimant NERVOUS
   TATTOO, INC.and Defendants CHRISTIAN AUDIGIER,
   INC.; BACKSTAGE WEB, INC. and SHOP ON STAGE,
10 INC.

11

12                 UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15 HARDY LIFE, LLC, a California       CASE NO. CV08 03524 PA (CTx)
   limited liability company,
16                                     DEFENDANTS' ANSWER TO
           Plaintiff,                  PLAINTIFF'S FIRST AMENDED
17                                     COMPLAINT, DEMAND FOR JURY
       vs.                             TRIAL, AND NERVOUS TATTOO,
18                                     INC.'S COUNTERCLAIMS FOR:
   NERVOUS TATTOO, INC., a
19 California corporation;             1. BREACH OF CONTRACT
   CHRISTIAN AUDIGIER, INC., a         2. BREACH OF THE IMPLIED
20 California corporation; SHOP           COVENANT OF GOOD FAITH
   CRYSTAL ROCK, a California             AND FAIR DEALING
21 business entity; BACKSTAGE         3. DECLARATORY RELIEF
   WEB, INC., a California            4. FRAUDULENT
22 corporation; SHOP ON STAGE,           MISREPRESENTATIONS
   INC., a California corporation;    5. TRADE LIBEL
23 CHRISTIAN AUDIGIER, a             6. INTENTIONAL INTERFERENCE
   California resident, and DOES 1-      WITH ACTUAL AND
24 10, inclusive,                        PROSPECTIVE ECONOMIC
                                         ADVANTAGE
25         Defendants.
26

27

28

                                     1

DEFENDANTS' ANSWER, COUNTERCLAIMS AND DEMAND FOR JURY TRIAL

DOCSLA-33052v02

1
2

NERVOUS TATTOO, INC., a
California corporation,

3

    Counterclaimant,

4

    vs.

5
6
7

HARDY LIFE, LLC, a California
limited liability company;
STEPHEN HOEL, an individual;
and DONALD EDWARD
HARDY, an individual,

8

    Counterdefendants.

9
10
11
12
13
14

7. **CALIFORNIA UNFAIR
COMPETITION (CAL. BUS. &
PROF. CODE §§ 17200, *ET SEQ.***
8. **COMMON LAW UNFAIR
COMPETITION**
9. **INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

[Assigned to the Hon. Percy Anderson]

**Complaint Filed: May 29, 2008
First Amended Complaint Filed:
August 4, 2008
Trial. Date:  None Set**

Defendant and Counterclaimant Nervous Tattoo, Inc. ("Nervous Tattoo"),
and Defendants Christian Audigier, Inc. ("CAI"), Backstage Web, Inc.
("Backstage") and Shop on Stage, Inc. ("SOS") (collectively, "Defendants") hereby
answer the First Amended Complaint ("FAC") of Plaintiff Hardy Life, LLC
("Plaintiff") for: (1) Federal Copyright Infringement; (2) Federal Trademark
Infringement; (3) Federal Trademark Counterfeiting; (4) Federal Trademark
Dilution; (5) Federal Cybersquatting; (6) Federal Trademark Infringement and
Unfair Competition; (7) False and Misleading Advertising; (8) California
Trademark Dilution; (9) California Trademark Infringement, Unfair Competition,
and False and Misleading Advertising; (10) California Cybersquatting; (11)
Common Law Trademark Infringement and Unfair Competition; (12) Common
Law False and Misleading Advertising; (13) Breach of Contract: (14) Breach of
Implied Covenant and Fair Dealing; (15) Tortious Interference with Contract; (16)
Tortious Interference With Existing and Prospective Business Advantage; and (17)
Declaratory Judgment, by admitting, denying, averring, and alleging as follows:

2

## ANSWER TO JURISDICTION AND VENUE ALLEGATIONS

1.     Answering paragraph 1 of the FAC, Defendants admit that Plaintiff is asserting the claims enumerated therein, but Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

2.     Answering paragraph 2 of the FAC, Defendants deny that there is subject matter jurisdiction over the FAC, and Defendants lack sufficient knowledge and information to form a belief as to the truth of the remaining allegations contained therein, and therefore deny the remainder of the allegations in this paragraph.

3.     Answering paragraph 3 of the FAC, Defendants admit that Nervous Tattoo, CAI, Backstage and SOS conduct business in the Central District of California.   As to the remainder of the allegations in paragraph 3 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

## ANSWER TO PARTY IDENTITY ALLEGATIONS

4.     Answering paragraph 4 of the FAC, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

5.     Answering paragraph 5 of the FAC, Defendants admit that Nervous Tattoo is a California corporation with its corporate office located at 8680 Hayden Place, Culver City, California 90232.

6.     Answering paragraph 6 of the FAC, Defendants admit that CAI, Backstage Web, Inc. and Shop on Stage, Inc. are California corporations. As to the remainder of the allegations in paragraph 6 of the FAC, Defendants deny the allegations in this paragraph.

\\\

3

7. Answering paragraph 7 of the FAC, Defendants admit that defendant Christian Audigier ("Audigier") is an individual residing in Los Angeles, California.

8. Answering paragraph 8 of the FAC, Defendants deny the allegations in this paragraph.

9. Answering paragraph 9 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph. Moreover, Defendants believe that "Doe defendants" are improper in Federal Court.

## ANSWER TO FACTUAL BACKGROUND ALLEGATIONS

10. Answering paragraph 10 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

11. Answering paragraph 11 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

12. Answering paragraph 12 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

13. Answering paragraph 13 of the FAC, Defendants admit that Plaintiff has attached as Exhibit 1 purported copyright registrations and applications for works Plaintiff describes as "Ed Hardy's Devil Woman," "Koi Swimming in Flowers and Black Waves," "Koi Swimming in Flowers and Blue Waves," "Once Wounded Twice Shy – Dagger Through Heart," "Three Vintage Roses With Buds," and "Vintage Rose Vine With Two Roses," all of which are dated June 19, 2008, for works Plaintiff describes as "BATTLE," "BULLDOG," and "DEVIL WITH PITCHFORK," all of which bear the date February 15, 2006, and for works Plaintiff describes as "Don Ed Hardy's Tattoo Designs – 2004," "Don Ed Hardy's

4

Tattoo Designs – October 2005," and "Don Ed Hardy's Surf Tattoo Designs," all of which bear a signatory date of July 31, 2008. As to the remainder of the allegations in paragraph 13 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

14. Answering paragraph 14 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

15. Answering paragraph 15 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

16. Answering paragraph 16 of the FAC, Defendants admit that in August 2004, Nervous Tattoo entered into a license agreement (the "2004 Agreement") with Plaintiff. Defendants further admit that the 2004 Agreement granted Nervous Tattoo the right to sell products bearing Plaintiff's trademarks and artwork. As to the remainder of the allegations contained in paragraph 16 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

17. Answering paragraph 17 of the FAC, Defendants admit that on or about September 18, 2005, Nervous Tattoo and Plaintiff entered into a "Restated and Amended License Agreement" (the "2005 Amended Agreement") and that Exhibit 3 to the FAC appears to be a true and correct copy of the 2005 Amended Agreement. As to the remaining allegations contained in paragraph 17 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

18. Answering paragraph 18 of the FAC, Defendants deny the allegations in this paragraph.

5

19.   Answering paragraph 19 of the FAC, Defendant Nervous Tattoo admits that it uses the tagline "Ed Hardy ® By Christian Audigier" (the "Tagline"). As to the remaining allegations contained in paragraph 19 of the FAC, Defendants deny the allegations.

20.   Answering paragraph 20 of the FAC, Defendant Nervous Tattoo admits that, pursuant to the 2005 Amended Agreement, certain types of "tops" and "headwear" could not be sublicensed by Nervous Tattoo, while other certain types of "tops" and "headwear" could be sublicensed by Nervous Tattoo.   Defendant Nervous Tattoo denies that it has entered into "unauthorized sublicenses."   As to the remainder of the allegations contained in paragraph 20 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

21.   Answering paragraph 21 of the FAC, Defendant Nervous Tattoo admits that the 2005 Amended Agreement prohibits the distribution of certain "printed paper" and "cardboard" products but denies that it is distributing any products in violation of the 2005 Amended Agreement.   As to the remainder of the allegations contained in paragraph 21 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

22.   Answering paragraph 22 of the FAC, Defendants deny any "unauthorized use of Hardy Life's Trademarks" and deny the allegations in this paragraph.

23.   Answering paragraph 23 of the FAC, Defendants admit that CAI has a brand of clothing labeled "Christian Audigier" and that, at one or more outlets, the Ed Hardy line and CAI's clothing are offered for sale.   As to the remaining allegations contained in paragraph 23 of the FAC, Defendants deny the allegations.

24.   Answering paragraph 24 of the FAC, Defendants deny the allegations of this paragraph.

6

25.    Answering paragraph 25 of the FAC, Defendants deny that the 2005 Amended Agreement contains a specific provision that "prohibits Nervous Tattoo from preparing derivative works based on Hardy Life's Registered Artwork." Other than a single advertisement for the "Lovestock" fashion show, which featured Ed Hardy products, and an erroneous advertisement on the Crystal Rock website that mistakenly incorporated elements of two of Plaintiff's designs (and which was removed upon discovery), Defendants deny the allegations of this paragraph.

26.    Answering paragraph 26 of the FAC, Defendants admit that the 2005 Amended Agreement does not allow usage of Plaintiff's Artwork (as defined in the 2005 Amended Agreement) on non-Ed Hardy line products.  As to the remaining allegations contained in paragraph 26 of the FAC, Defendants deny the allegations of this paragraph.

27.    Answering paragraph 27 of the FAC, Defendants admit that one or more of them registered and/or are using some of the enumerated domain names. As to the remaining allegations contained in paragraph 27 of the FAC, Defendants deny the allegations of this paragraph.

28.    Answering paragraph 28 of the FAC, Defendants deny the allegations of this paragraph.

29.    Answering paragraph 29 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO FIRST CLAIM FOR RELIEF
## FOR COPYRIGHT INFRINGEMENT

30.    Answering paragraph 30 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 29 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

31.    Answering paragraph 31 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

7

DOCSLA-33052v02

32.   Answering paragraph 32 of the FAC, Defendants deny the allegations of this paragraph.

33.   Answering paragraph 33 of the FAC, Defendants deny the allegations of this paragraph.

34.   Answering paragraph 34 of the FAC, Defendants deny the allegations of this paragraph.

35.   Answering paragraph 35 of the FAC, Defendants deny the allegations of this paragraph.

36.   Answering paragraph 36 of the FAC, Defendants deny the allegations of this paragraph.

37.   Answering paragraph 37 of the FAC, Defendants deny the allegations of this paragraph.

38.   Answering paragraph 38 of the FAC, Defendants deny the allegations of this paragraph.

<u>**ANSWER TO SECOND CLAIM FOR RELIEF**</u>

<u>**FOR TRADEMARK INFRINGEMENT**</u>

39.   Answering paragraph 39 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 38 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

40.   Answering paragraph 40 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

41.   Answering paragraph 41 of the FAC, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained therein, and therefore deny the allegations in this paragraph.

42.   Answering paragraph 42 of the FAC, Defendants deny the allegations of this paragraph.

\\\

8

43.    Answering paragraph 43 of the FAC, Defendants deny the allegations of this paragraph.

44.    Answering paragraph 44 of the FAC, Defendants deny the allegations of this paragraph.

45.    Answering paragraph 45 of the FAC, Defendants deny the allegations of this paragraph.

46.    Answering paragraph 46 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO THIRD CLAIM FOR RELIEF

## FOR TRADEMARK COUNTERFEITING

47.    Answering paragraph 47 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 46 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

48.    Answering paragraph 48 of the FAC, Defendants deny the allegations of this paragraph.

49.    Answering paragraph 49 of the FAC, Defendants deny the allegations of this paragraph.

50.    Answering paragraph 50 of the FAC, Defendants deny the allegations of this paragraph.

51.    Answering paragraph 51 of the FAC, Defendants deny the allegations of this paragraph.

52.    Answering paragraph 52 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO FOURTH CLAIM FOR RELIEF

## FOR TRADEMARK DILUTION

53.    Answering paragraph 53 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 52 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

9

54.    Answering paragraph 54 of the FAC, Defendants deny the allegations of this paragraph.

55.    Answering paragraph 55 of the FAC, Defendants deny the allegations of this paragraph.

56.    Answering paragraph 56 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO FIFTH CLAIM FOR RELIEF
## FOR CYBERSQUATTING

57.    Answering paragraph 57 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 56 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

58.    Answering paragraph 58 of the FAC, Defendants admit that one or more Defendants may use one or more of the enumerated domain names.  As to the remaining allegations contained in paragraph 58 of the FAC, Defendants deny the allegations of this paragraph.

59.    Answering paragraph 59 of the FAC, Defendants deny the allegations of this paragraph.

60.    Answering paragraph 60 of the FAC, Defendants deny the allegations of this paragraph.

61.    Answering paragraph 61 of the FAC, Defendants deny the allegations of this paragraph.

62.    Answering paragraph 62 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO SIXTH CLAIM FOR RELIEF
## FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

63.    Answering paragraph 63 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 62 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

10

DOCSLA-33052v02

64. Answering paragraph 64 of the FAC, Defendants deny the allegations of this paragraph.

65. Answering paragraph 65 of the FAC, Defendants deny the allegations of this paragraph.

66. Answering paragraph 66 of the FAC, Defendants deny the allegations of this paragraph.

67. Answering paragraph 67 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO SEVENTH CLAIM FOR RELIEF

## FOR FALSE AND MISLEADING ADVERTISING

68. Answering paragraph 68 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 67 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

69. Answering paragraph 69 of the FAC, Defendants deny the allegations of this paragraph.

70. Answering paragraph 70 of the FAC, Defendants deny the allegations of this paragraph.

71. Answering paragraph 71 of the FAC, Defendants deny the allegations of this paragraph.

72. Answering paragraph 72 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO EIGHTH CLAIM FOR RELIEF

## FOR TRADEMARK DILUTION

73. Answering paragraph 73 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 72 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

74. Answering paragraph 74 of the FAC, Defendants deny the allegations of this paragraph.

11

DOCSLA-33052v02

75.    Answering paragraph 75 of the FAC, Defendants deny the allegations of this paragraph.

76.    Answering paragraph 76 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO NINTH CLAIM FOR RELIEF
## FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND
## FALSE AND MISLEADING ADVERTISING

77.    Answering paragraph 77 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 76 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

78.    Answering paragraph 78 of the FAC, Defendants deny the allegations of this paragraph.

79.    Answering paragraph 79 of the FAC, Defendants deny the allegations of this paragraph.

80.    Answering paragraph 80 of the FAC, Defendants deny the allegations of this paragraph.

81.    Answering paragraph 81 of the FAC, Defendants deny the allegations of this paragraph.

82.    Answering paragraph 82 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO TENTH CLAIM FOR RELIEF
## FOR CALIFORNIA CYBERSQUATTING

83.    Answering paragraph 83 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 82 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

84.    Answering paragraph 84 of the FAC, Defendants admit that one or more Defendants may use one or more of the enumerated domain names. As to the

\\\

12

1   remaining allegations contained in paragraph 84 of the FAC, Defendants deny the

2   allegations of this paragraph.

3        85.    Answering paragraph 85 of the FAC, Defendants deny the allegations

4   of this paragraph.

5        86.    Answering paragraph 86 of the FAC, Defendants deny the allegations

6   of this paragraph.

7        87.    Answering paragraph 87 of the FAC, Defendants deny the allegations

8   of this paragraph.

9        88.    Answering paragraph 88 of the FAC, Defendants deny the allegations

10   of this paragraph.

11   ### ANSWER TO ELEVENTH CLAIM FOR RELIEF

12   ### FOR COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR

13   ### COMPETITION

14        89.    Answering paragraph 89 of the FAC, Defendants incorporate the

15   statements made in paragraphs 1 through 88 above.  Except as expressly admitted

16   therein, Defendants deny the remaining allegations contained in said paragraphs.

17        90.    Answering paragraph 90 of the FAC, Defendants deny the allegations

18   of this paragraph.

19        91.    Answering paragraph 91 of the FAC, Defendants deny the allegations

20   of this paragraph.

21        92.    Answering paragraph 92 of the FAC, Defendants deny the allegations

22   of this paragraph.

23   ### ANSWER TO TWELFTH CLAIM FOR RELIEF

24   ### FOR COMMON LAW FALSE AND MISLEADING ADVERTISING

25        93.    Answering paragraph 93 of the FAC, Defendants incorporate the

26   statements made in paragraphs 1 through 92 above.  Except as expressly admitted

27   therein, Defendants deny the remaining allegations contained in said paragraphs.

28   \\\

13

94.   Answering paragraph 94 of the FAC, Defendants deny the allegations of this paragraph.

95.   Answering paragraph 95 of the FAC, Defendants deny the allegations of this paragraph.

96.   Answering paragraph 96 of the FAC, Defendants deny the allegations of this paragraph.

97.   Answering paragraph 97 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO THIRTEENTH CLAIM FOR RELIEF
## FOR BREACH OF CONTRACT

98.   Answering paragraph 98 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 97 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

99.   Answering paragraph 99 of the FAC, Defendants admit the allegations contained in this paragraph.

100.   Answering paragraph 100 of the FAC, Defendants deny the allegations of this paragraph.

101.   Answering paragraph 101 of the FAC, Defendants deny the allegations of this paragraph.

102.   Answering paragraph 102 of the FAC, Defendants deny the allegations of this paragraph.

## ANSWER TO FOURTEENTH CLAIM FOR RELIEF
## FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

103.   Answering paragraph 98 of the FAC, Defendants incorporate the statements made in paragraphs 1 through 102 above.  Except as expressly admitted therein, Defendants deny the remaining allegations contained in said paragraphs.

104.   Answering paragraph 104 of the FAC, Defendants admit the 2005 Amended Agreement contains a reciprocal implied covenant of good faith and fair

14

1   dealing requiring that the parties thereto deal fairly and in good faith with each
2   other and not do anything to frustrate the other's ability to realize the benefits of
3   said Agreement.

4       105.   Answering paragraph 105 of the FAC, Defendants deny the allegations
5   of this paragraph.

6       106.   Answering paragraph 106 of the FAC, Defendants deny the allegations
7   of this paragraph.

8       107.   Answering paragraph 107 of the FAC, Defendants deny the allegations
9   of this paragraph.

10   **ANSWER TO FIFTEENTH CLAIM FOR RELIEF**
11   **FOR TORTIOUS INTERFERENCE WITH CONTRACT**

12       108.   Answering paragraph 108 of the FAC, Defendants incorporate the
13   statements made in paragraphs 1 through 107 above.  Except as expressly admitted
14   therein, Defendants deny the remaining allegations contained in said paragraphs.

15       109.   Answering paragraph 109 of the FAC, Defendants admit the
16   allegations of this paragraph.

17       110.   Answering paragraph 110 of the FAC, Defendants deny the allegations
18   of this paragraph.

19       111.   Answering paragraph 111 of the FAC, Defendants deny the allegations
20   of this paragraph.

21       112.   Answering paragraph 112 of the FAC, Defendants deny the allegations
22   of this paragraph.

23       113.   Answering paragraph 113 of the FAC, Defendants deny the allegations
24   of this paragraph.

25       114.   Answering paragraph 114 of the FAC, Defendants deny the allegations
26   of this paragraph.

27   \\\
28   \\\

15

1

2

3

## ANSWER TO SIXTEENTH CLAIM FOR RELIEF

## FOR TORTIOUS INTERFERENCE WITH EXISTING AND

## PROSPECTIVE BUSINESS ADVANTAGE

4   115.   Answering paragraph 115 of the FAC, Defendants incorporate the

5   statements made in paragraphs 1 through 114 above.  Except as expressly admitted

6   therein, Defendants deny the remaining allegations contained in said paragraphs.

7   116.   Answering paragraph 116 of the FAC, Defendants deny the allegations

8   of this paragraph.

9   117.   Answering paragraph 117 of the FAC, Defendants deny the allegations

10   of this paragraph.

11   118.   Answering paragraph 118 of the FAC, Defendants deny the allegations

12   of this paragraph.

13   119.   Answering paragraph 119 of the FAC, Defendants deny the allegations

14   of this paragraph.

15   120.   Answering paragraph 120 of the FAC, Defendants deny the allegations

16   of this paragraph.

17

## ANSWER TO SEVENTEETH CLAIM FOR RELIEF

18

## FOR DECLARATORY RELIEF

19   121.   Answering paragraph 121 of the FAC, Defendants incorporate the

20   statements made in paragraphs 1 through 120 above.  Except as expressly admitted

21   therein, Defendants deny the remaining allegations contained in said paragraphs.

22   122.   Answering paragraph 122 of the FAC, Defendants deny the allegations

23   contained in this paragraph.

24   123.   Answering paragraph 123 of the FAC, Defendants deny the allegations

25   of this paragraph.

26   124.   Answering paragraph 124 of the FAC, Defendants deny the allegations

27   of this paragraph.

28   \\\

16

## **AFFIRMATIVE DEFENSES**

Without admitting the truth of any allegations set forth in the FAC, Defendants assert the following affirmative defenses to the FAC and the claims for relief purportedly stated therein:

### **FIRST AFFIRMATIVE DEFENSE**

### **(Failure to State a Claim)**

1.      The FAC, and the claims for relief alleged therein, fail to allege facts sufficient to state a claim upon which relief may be granted against Defendants under any theory.

### **SECOND AFFIRMATIVE DEFENSE**

### **(Lack of Standing)**

2.      Plaintiff is barred from maintaining its FAC, and the claims for relief alleged therein, because Plaintiff is not the real party in interest and therefore lacks standing to sue.

### **THIRD AFFIRMATIVE DEFENSE**

### **(Statute of Limitations)**

3.      The FAC, and the claims for relief alleged therein against Defendants, are barred by the applicable statutes of limitations.

### **FOURTH AFFIRMATIVE DEFENSE**

### **(Waiver)**

4.      Plaintiff is barred from recovering against Defendants on its FAC because it has waived whatever right it may have had to assert the claims contained in the FAC.  Plaintiff failed to take proper steps to assert those claims in a timely fashion, knowingly relinquished such claims and otherwise acted in a manner inconsistent with an intent to assert or preserve its right to assert such claims.

\\\

\\\

\\\

17

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

5.     Plaintiff is estopped from asserting its alleged claims because Plaintiff failed to take proper steps to assert in a timely fashion the claims alleged in the FAC and otherwise acted in a manner inconsistent with an intent to assert or preserve its right to assert any of the claims, all to the detriment of Defendants.

## SIXTH AFFIRMATIVE DEFENSE

### (Ratification, Consent and Acquiescence)

6.     Plaintiff is precluded from pursuing its FAC and the claims for relief alleged therein, because Plaintiff (and/or its agents) ratified, agreed to, consented to, and/or acquiesced in, the acts upon which its FAC is based.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

7.     Plaintiff is barred from maintaining its FAC and the claims for relief alleged therein because of Plaintiff's unclean hands and/or the doctrine of *in pari delicto*.

## EIGHTH AFFIRMATIVE DEFENSE

### (Fair Use)

8.     The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part by reason of Defendants' fair use of the designs, terms and images that form the bases for the allegations in the FAC.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

9.     The FAC, and the claims for relief alleged therein against Defendants, are barred by the doctrine of laches as Plaintiff unreasonably delayed in bringing this action and thereby prejudiced the rights of Defendants.

\\\

\\\

18

## TENTH AFFIRMATIVE DEFENSE

### (Non-Infringement)

10.    The FAC, and the claims for relief alleged therein against Defendants, are barred because Defendants have not infringed any valid claim of any copyrights or trademarks belonging to Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Invalidity)

11.    The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part because Plaintiff's copyrights are invalid, void and unenforceable for failure to meet one or more of the conditions and requirements of the copyright laws, including the conditions for copyrightability set forth in Title 17 of the United States Code sections 101, *et seq.*

## TWELFTH AFFIRMATIVE DEFENSE

### (Prior Use)

12.    The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part by virtue of the doctrine of Prior Use.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

13.    The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part to the extent that Plaintiff voluntarily relinquished its rights to and ownership in any of the trademarks alleged in the FAC.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (License)

14.    The FAC, and the claims for relief alleged therein against defendant Nervous Tattoo, Inc., are barred in whole or in part by the doctrine of license on the grounds that Nervous Tattoo, Inc.'s conduct was permitted, implicitly and/or explicitly, by the terms of the 2005 Amended Agreement.

\\\

19

DOCSLA-33052v02

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

15.   If Plaintiff is entitled to any relief from Defendants as a result of the facts alleged in its FAC, which Defendants deny, Plaintiff is not entitled to recover the amount of damages or other relief alleged, or any damages or other relief, due to its failure to take reasonable efforts to mitigate or minimize the damages incurred.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Uncertainty)

16.   The FAC, and the claims for relief presented therein, are vague, ambiguous and uncertain.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Willful Misconduct)

17.   Plaintiff is barred from recovery by virtue of its contributory and willful misconduct in and about the matters complained of in that the aforesaid misconduct of Plaintiff proximately caused the occurrence of the alleged acts and damages, if any, sustained thereby.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Set-Off)

18.   Any damage or loss sustained by Plaintiff was proximately caused and/or contributed to by Plaintiff's conduct, thereby precluding Plaintiff's claims entirely, reducing Plaintiff's recoverable damages, and/or entitling Defendants to a proportional set-off.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Offset)

19.   Plaintiff is not entitled to recover all or any part of the damages or other relief prayed for in the FAC because Defendants have claims for damages against Plaintiff and are legally entitled to an offset of such amounts.

\\\

20

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Bad Faith/Malicious Prosecution on the Part of Hardy Life)

20.     Plaintiff's FAC, and each claim for relief alleged therein, are barred against Defendants because it was brought in bad faith due to, and in an attempt to avoid, Plaintiff's damages owing to Defendants, as well as being motivated by Plaintiff's attempt to extort higher royalty rates than negotiated pursuant to the operative 2005 Amended Agreement.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Legitimate Business Justification)

21.     Plaintiff is not entitled to recover any damages against Defendants because Defendants' acts were justified, carried out in pursuit of their legitimate economic interests and commercially reasonable.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (*De Minimis*, Remote, Speculative or Transient Damages)

22.     Any losses or damages allegedly caused by Defendants and sustained by Plaintiff, which Defendants deny, are *de minimis*, remote, speculative, or transient and hence, not cognizable at law.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

#### (Adequate Remedy at Law)

23.     Any injury or harm allgedly caused by Defendants and sustained by Plaintiff, which Defendants deny, would be adequately compensated in an action at law for damages.  Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

#### (One Who Seeks Equity Must Do Equity)

24.     No relief may be obtained under the FAC by reason of Plaintiff's own inequitable conduct with respect to the matters alleged in the FAC.

\\\

DOCSLA-33052v02

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Superseding Cause)

25.     If Plaintiff is entitled to any relief as a result of the facts alleged in the FAC, which Defendants deny, the acts of individuals or entities other than Defendants constitute a superseding cause of any damage, loss or detriment to Plaintiff.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Plaintiff Caused Own Damage)

26.     Plaintiff's claims are barred, in whole or in part, on the grounds that the damages sustained by Plaintiff, if any, were proximately caused and contributed to by the legal fault of Plaintiff and/or Plaintiff's agents, other than Defendants, and for which Defendants were not and are not responsible.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Fault of Others)

27.     Plaintiff's claims are barred, in whole or in part, on the grounds that any and all events and happenings, if any, referred to in the allegations of the FAC were proximately caused and contributed to by the legal fault of persons and/or entities other than Defendants, for which Defendants were not and are not responsible.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Prior/Anticipatory Breach of Agreement)

28.     Plaintiff's claims against defendant Nervous Tattoo are barred in whole or in part because Plaintiff materially and anticipatorily breached the 2005 Amended Agreement.

\\\

\\\

\\\

\\\

DOCSLA-33052v02

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Performance)

29.    Defendant Nervous Tattoo has performed all obligations on its part to be performed under the 2005 Amended Agreement with Plaintiff except as prevented or excused by the conduct of Plaintiff.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Failure of Performance/Tender)

30.    Plaintiff failed to perform or tender performance of its obligations under the 2005 Amended Agreement and, accordingly, Plaintiff's claims against defendant Nervous Tattoo are barred as a matter of law.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Course of Dealing)

31.    Plaintiff's claims are barred by its course of dealing and course of conduct both prior to and aftering entering into the 2005 Amended Agreement.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Good Faith)

32.    Defendants' actions and statements complained of in Plaintiff's FAC were made in good faith, honestly and not maliciously.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Lack of Secondary Meaning)

33.    Plaintiff's FAC, and the claims for relief alleged therein, are barred in whole or in part because Plaintiff's trademarks, as alleged in the FAC, lack secondary meaning.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

34.    Any recovery of damages or other relief herein as alleged by Plaintiff would constitute an unjust enrichment of Plaintiff, and is therefore barred.

\\\

23

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Breach of the Implied Covenant)

35.   Any recovery of damages or other relief pursuant to the 2004 Agreement or 2005 Amended Agreement, as alleged by Plaintiff, is barred because Plaintiff breached the implied covenant of good faith and fair dealing.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Improper Termination of 2005 Amended Agreement)

36.   Any recovery of damages or other relief on the 2004 Agreement or 2005 Amended Agreement, as alleged by Plaintiff, is barred because Plaintiff has, after the commencement of this litigation, improperly attempted to terminate the 2005 Amended Agreement.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Lack of Subject Matter Jurisdiction

37.   This Court lacks subject matter jurisdiction to adjudicate the instant action insofar as the dispute revolves around the 2005 Amended Agreement, which contains a mandatory forum selection clause designating the Los Angeles Superior Court as the exclusive jurisdiction in the event of any dispute.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Improper Venue)

38.   The 2005 Amended Agreement contains a mandatory forum selection clause designating the Los Angeles Superior Court as the exclusive, proper venue for the within action.  This Court is, therefore, the improper venue for this case.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Fair Use Regarding Trademarks)

39.   The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part by reason of Defendants' fair use of the trademarks that form the bases for the allegations in the FAC.

\\\

24

## FORTIETH AFFIRMATIVE DEFENSE

### (Doctrine of Discharge)

40.     The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part because Defendants' essential purpose has been substantially frustrated and/or rendered impossible or impracticable through no fault of Defendants, thereby discharging Defendants from any further obligations under the 2005 Amended Agreement.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### (Parol Evidence)

41.     To the extent certain terms and/or provisions of the 2005 Amended Agreement are ambiguous, Defendants are entitled to introduce parol evidence to explain, define or otherwise determine the meaning of said provisions.

## FORTY-SECOND AFFIRMATIVE DEFENSE

### (No Substantial Similarity)

42.     The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part because Defendants' designs are not substantially similar to Plaintiff's designs.

## FORTY-THIRD AFFIRMATIVE DEFENSE

### (Independent Creation)

43.     Without conceding actual use or any similarity whatsoever, Defendants, in whole or in part, clearly, positively and without contradiction independently created certain designs at issue in this action, and Plaintiff cannot, as a matter of law, establish any infringement.

\\\
\\\
\\\
\\\

25

## FORTY-FOURTH AFFIRMATIVE DEFENSE

### (Illegal Derivative Works)

44.     The FAC, and the claims for relief alleged therein against Defendants, are barred in whole or in part to the extent Plaintiff did not originate the works at issue.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

45.     Defendants allege that they presently have insufficient knowledge and information as to whether they may have additional defenses available. Defendants, therefore, reserve their right to assert additional defenses that further discovery or investigation indicates to be appropriate.

## PRAYER

WHEREFORE, Defendants pray for judgment against Plaintiff as follows:

1.     That Plaintiff takes nothing by its First Amended Complaint;

2.     That the First Amended Complaint by Plaintiff on file herein be dismissed with prejudice;

3.     For judgment in favor of Defendants and against Plaintiff on each of the claims for relief alleged in Plaintiff's First Amended Complaint;

4.     That Defendants recover from Plaintiff their reasonable attorneys' fees as allowed by law;

5.     That Defendants recover from Plaintiff their costs of suit; and

6.     For such other, further and/or different relief as may be deemed just and proper.

DATED:  August 20, 2008          DICKSTEIN SHAPIRO LLP


By: _____
          James H. Turken
          Amy L. Rubinfeld
          John L. Tuell
     Attorneys for Defendants NERVOUS
     TATTOO, INC.; CHRISTIAN AUDIGIER,
     INC; BACKSTAGE WEB, INC; and SHOP ON
     STAGE, INC.


## DEMAND FOR JURY TRIAL

Defendants hereby demand a trial by jury.


DATED:  August 20, 2008          DICKSTEIN SHAPIRO LLP


By: _____
          James H. Turken
          Amy L. Rubinfeld
          John L. Tuell
     Attorneys for Defendants NERVOUS
     TATTOO, INC.; CHRISTIAN AUDIGIER,
     INC; BACKSTAGE WEB, INC;  and SHOP
     ON STAGE, INC.

27

DOCSLA-33052v02

## COUNTERCLAIMS

Additionally, Counterclaimant Nervous Tattoo brings these Counterclaims against Counterdefendants Hardy Life LLC ("Hardy Life"), Steven Hoel ("Hoel") and Donald Edward Hardy ("Hardy"), as follows:

## THE PARTIES

1.      Nervous Tattoo is a California corporation with its principal place of business at 8680 Hayden Place, Culver City, California 90232.

2.      Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy Life is a California limited liability company with its principal place of business at 849 South Broadway, Suite 1102, Los Angeles, California.

3.      Nervous Tattoo is informed and believes, and on that basis alleges, that Hoel is an individual residing and/or doing business in Los Angeles, California, both in his individual capacity and as a managing member of Hardy Life.

4.      Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy is an individual doing business in Los Angeles, California, both in his individual capacity and as a managing member of Hardy Life.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over Hardy Life, Hoel and Hardy, and venue is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

7.      Nervous Tattoo is the creation of world-renowned fashion designer Christian Audigier.  Mr. Audigier has been a major player in the fashion world for twenty years, bringing his unique style and charisma to such brands as Diesel, Lee, Levi's and Liberto before transforming a formerly obscure fashion label called Von Dutch into an international sensation.

\\\

28

DOCSLA-33052v02

8.      In 2004, Mr. Audigier walked into a small clothing store on Melrose Avenue called Ku and saw some t-shirts with tattoo designs on them.  Intrigued, Mr. Audigier inquired about the designs on the t-shirts and was told by an employee that they were the work of Hardy.  Nervous Tattoo is informed and believes, and on that basis alleges, that at the time Mr. Audigier discovered the t-shirts at Ku, Hardy had some recognition as a tattooist but was completely unknown in the fashion industry.  Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy was a disciple of tattoo artist Sailor Jerry and that many of Hardy's designs are derived and/or borrowed from Mr. Jerry's original designs.   Further, Nervous Tattoo is informed and believes, Hardy liberally borrowed ideas and designs for his tattoos from Japanese tattoo masters under whom he studied.  Nervous Tattoo is informed and believes, and on that basis alleges, that sales of the Ku t-shirts were virtually non-existent when Mr. Audigier discovered them in 2004.

9.      Despite the humble setting in which he discovered the Ku t-shirts, Mr. Audigier saw potential in the concept of using tattoo art on a line of upscale clothing and believed that, with his vision, expertise and marketing skills, tattoo art could be brought to the masses.   Accordingly, Mr. Audigier entered into preliminary discussions with Hardy to obtain an exclusive license to utilize Hardy's designs.  Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy Life was formed by Hardy and his business partner, Hoel.  Nervous Tattoo is informed and believes, and on that basis alleges, that Hoel was (and is) an opportunist (or, as he has referred to himself, a "royalty baby") looking to make a quick dollar off the vision and labor of others and that Hoel saw Mr. Audigier, who was and is one of the hottest designers in the fashion world, as the perfect opportunity to do just that.

10.      In September 2004, Nervous Tattoo and Hardy Life entered into a written agreement whereby Nervous Tattoo obtained the exclusive right to design,

29

manufacture, promote, sell and distribute clothing, accessories and other products bearing Hardy's artwork and trademarks around the world. Effective July 1, 2005, Nervous Tattoo and Hardy Life entered into the Restated And Amended License Agreement (the "License Agreement") that is the subject of the instant action. A true and copy of the License Agreement is attached hereto at Exhibit A and incorporated herein by reference as though fully set forth. Notably, one of the primary reasons for the amendment to the original agreement was that Nervous Tattoo caught Hardy Life attempting to enter into an unauthorized license with an undisclosed entity in Japan. A repercussion of being caught with its proverbial hands in the cookie jar was that the amended License Agreement provided for lower royalty rates flowing to Hardy Life.[1]

11.     Paragraph 1 of the License Agreement, which was executed by Hardy, states that "Licensor is the creator of certain artwork designed by Licensor for the art of tattooing [the 'Artwork'] . . . ."[2] According to Hardy Life, the "Artwork" discussed (and defined) in the License Agreement consists of more than 4,000 original tattoo designs, but Hardy Life has admitted that less than half of those designs have been provided to Nervous Tattoo. Paragraph 2 of the License Agreement provides, "Subject to the limitations set forth herein, Licensor hereby grants Licensee an exclusive license to, at its discretion, design, manufacture, promote, advertise, sell, at wholesale, retail or through the internet (including the right to operate In-Store shops), and distribute (sometimes through third parties) throughout the world products bearing such artwork and/or trademark(s) of Licensor . . . ." Paragraph 3 of the License Agreement provides that "Licensor []

\\\

---

[1] At another point during the relationship, Hardy Life not only attempted to enter, but actually entered into, a license agreement with regard to temporary tattoos in derogation of Nervous Tattoo's rights. When that license failed, Hardy Life entered into a second license agreement for the production of temporary tattoos.
[2] Apparently, Hardy draws no distinction between himself and the company he shares with Hoel.

DEFENDANTS' ANSWER, COUNTERCLAIMS AND DEMAND FOR JURY TRIAL

DOCSLA-33052v02

1    shall deliver the Artwork to Licensee in catalogued form through the use of scanned

2    images and general descriptions of each scan."

3       12.      Nervous Tattoo is informed and believes, and on that basis alleges, that

4    Hardy has acknowledged copying at least one of the pieces of "Artwork"

5    "delivered" to Nervous Tattoo pursuant to the License Agreement from a character

6    known as "Hot Stuff the Little Devil" ("Hot Stuff"), which purportedly is owned by

7    Harvey Entertainment, Inc. ("Harvey").   Indeed, Harvey has threatened litigation

8    against both Hardy Life and Nervous Tattoo over the alleged unauthorized use of

9    the Hot Stuff character.

10      13.      Paragraph 3(a) of the License Agreement provides that "It is the intent

11    of Licensor to provide additional seasonal artwork during the term of this

12    Agreement . . . . Should Licensor fail to provide additional seasonal artwork,

13    Licensee shall have the right to serve ninety (90) days written notice upon Licensor

14    to provide additional artwork or Licensee may terminate the Agreement." Since the

15    initial "delivery," however, Hardy Life has provided only a small amount of

16    additional artwork despite Nervous Tattoo's repeated requests therefor.

17      14.      The License Agreement required Nervous Tattoo to pay a guaranteed

18    minimum royalty of $450,000.00 per year to Hardy Life even if Nervous Tattoo

19    never sold a single t-shirt. Much as he did with Von Dutch, however, Mr. Audigier

20    worked his marketing magic and, in a few short years, has turned the previously

21    unknown "Ed Hardy" brand into a worldwide fashion sensation. Without question,

22    Mr. Audigier devoted extraordinary time and effort and invested all of his creative

23    energy into the development of the "Ed Hardy" brand. Everyone from hipsters,

24    moguls, musicians, assorted celebrities, and movie stars to housewives, teens and

25    tweens are wearing "Ed Hardy" apparel and accessories, making the "Ed Hardy"

26    brand one of the hottest and most valuable fashion commodities in recent memory.

27    Since 2005, Nervous Tattoo has posted gross sales of more than $165 million and

28    has paid Hardy Life more than $8 million in royalties for literally doing nothing

31

1   more than sitting back and watching Nervous Tattoo make Hardy rich and famous.
2   In the first half of 2008 alone, Hardy Life has collected nearly $3 million in
3   royalties.  Given such staggering success, it is no wonder that, in a recent interview,
4   Hardy glowingly described Mr. Audigier as a "marketing genius."

5        15.     Despite the enormous recognition and income it has enjoyed as a result
6   of its relationship with Nervous Tattoo (or, perhaps, because of it), over the past
7   two years Hardy Life has manufactured various disputes over the Parties' respective
8   rights and obligations under the License Agreement.   Indeed, Hardy Life has
9   established a pattern and practice of turning even the most mundane dispute into
10  threatened Armageddon.   In May 2007, Hardy Life went so far as to file a
11  complaint in California Superior Court (the "State Court Action") seeking to
12  rescind the License Agreement and strip Nervous Tattoo of all of its rights
13  thereunder.

14       16.     Nervous Tattoo is informed and believes, and on that basis alleges, that
15  Hardy Life's true motivation for seeking to rescind the License Agreement in the
16  State Court Action was to capitalize on the goodwill, name recognition and
17  profitability created by Nervous Tattoo, cut itself a better deal and cut Nervous
18  Tattoo out of the equation.  Nervous Tattoo further is informed and believes, and on
19  that basis alleges, that Hardy Life has failed to provide Nervous Tattoo with all of
20  the "Artwork" described in Paragraph 1 of the License Agreement (or any
21  significant amount of "additional artwork" as contemplated in Paragraph 3(a) of the
22  License Agreement) specifically because Nervous Tattoo's only recourse for that
23  failure would be to terminate the License Agreement, thus allowing Hardy to
24  capitalize on Nervous Tattoo's (including Mr. Audigier) sole, substantial and,
25  indeed, indisputable blood, sweat and tears and shop his now famous brand name to
26  the highest bidder.  In any event, only a few months later, having failed to extract
27  anything from Nervous Tattoo, having been cross-sued in a serious cross-
28  complaint, and being unhappy with the status of the State Court Action, Hardy Life

32

dismissed the State Court Complaint and Nervous Tattoo attempted to get back to business as usual.

17.     Nervous Tattoo made extraordinary efforts to rebuild the relationship with Hardy Life and attempted in good faith to address any professed concerns. For example, while Hillary Clinton was campaigning for the Democratic nomination, Hardy objected to pictures on the website showing Audigier and Hillary Clinton together because Hardy was supporting Barack Obama. Nervous Tattoo removed the pictures from the website without inquiry or debate. Hardy also complained about the way his life history was characterized on the website; Nervous Tattoo changed the narrative. Nervous Tattoo went above and beyond the bounds of good faith to attempt to accommodate Hardy's expressed concerns, not realizing that Hardy, Hoel and Hardy Life's concerns were deliberate constructs for an eventual subsequent lawsuit, the Complaint and First Amended Complaint herein.

18.     Thus, and unfortunately, "business as usual" for Hardy Life meant picking fight after fight with Nervous Tattoo and repeatedly threatening to sue Nervous Tattoo and/or terminate the License Agreement if Hardy Life's efforts at gaining additional leverage were not accommodated. On February 13, 2008, Hardy Life's counsel, Arthur Jarvis Cohen, sent a letter to Nervous Tattoo's counsel complaining about various aspects of Nervous Tattoo's performance of the License Agreement. A true and copy of Mr. Cohen's February 13, 2008 letter is attached hereto as Exhibit B and incorporated herein as though fully set forth. Most prominently, Mr. Cohen's letter complained about Nervous Tattoo's use of the tagline "by Christian Audigier" (the "Tagline") in connection with the "Ed Hardy" trademark, despite the fact that the Tagline had been featured prominently on storefronts and at fashion shows since August 2005, affixed on labels and hand tags since April 2006, and (due to the overwhelmingly positive consumer response to its use) placed on the clothes themselves since the Summer of 2007.[3]

---

[3] Notably, Hardy Life's Complaint in the State Court Action makes no mention of

33

1    19.    Although Mr. Cohen's February 13, 2008 letter purported to
2  "constitute a formal demand pursuant to paragraph 24 of the license agreement,"
3  the letter was addressed and sent solely to Nervous Tattoo's counsel rather than to
4  Nervous Tattoo at the address expressly set forth in, and indeed required by, the
5  License Agreement.  Although procedurally deficient and thus legally ineffective,
6  Mr. Cohen's "demand" letter stated, "Should there not be compliance by March 21,
7  2008, Nervous Tattoo, Inc. and Christian Audigier may leave Hardy Life, LLC no
8  alternative other than to file suit and seek an injunction and damages and whatever
9  relief may be appropriate."  On May 29, 2008, more than two months later after the
10  threatened date (and more than four months after the "demand" letter), Hardy Life
11  filed the instant action.  Nervous Tattoo is informed and believes, and on that basis
12  alleges that, in the interim, Hardy Life hurriedly applied for the previously
13  nonexistent Certificates of Registration underlying its dubious copyright claims as a
14  pretext to circumvent the forum selection clause in the License Agreement and
15  bring this action in federal court.

16    20.    Shortly after commencing this action, Hardy Life began bombarding
17  Nervous Tattoo's numerous sublicensees (as well as its attorneys and accountant)
18  with onerous document subpoenas.  Nervous Tattoo is informed and believes, and
19  on that basis alleges, that those subpoenas (and, indeed, this lawsuit) were part and
20  parcel of Hardy Life, Hoel and Hardy's design to intimidate Nervous Tattoo's
21  sublicensees and interfere with Nervous Tattoo's business relationships as a means
22  of either extorting additional (albeit undeserved) money from Nervous Tattoo or
23  irreparably damaging Nervous Tattoo's business and goodwill.  Nervous Tattoo
24  also is informed and believes, and on that basis alleges, that Hardy Life, Hoel and
25  Hardy have published statements to third parties to the effect that some or all of
26  Nervous Tattoo's goods bearing Hardy Life's artwork and trademarks are
27  unauthorized and/or counterfeit.

28  the Tagline whatsoever in any context.

34

21.     Hardy Life's original complaint (the "Complaint") and accompanying Motion for Preliminary Injunction, although couched in terms of copyright and trademark infringement, essentially asked the Court to adjudicate whether Nervous Tattoo has breached the License Agreement.   Notably, however, Hardy Life's Complaint (unlike the complaint in the State Court Action) did not seek rescission of the License Agreement.   Nervous Tattoo is informed and believes, and on that basis alleges, that when Nervous Tattoo and its co-defendants exposed many of the spurious allegations and weaknesses underlying Hardy Life's claims and request for a preliminary injunction, followed by Hardy Life's failure to obtain quickly injunctive relief, Hardy Life and Hardy decided to circumvent the judicial process. To that end, on August 4, 2008, immediately after receiving a scheduled quarterly royalty check in excess of $1.5 million, Hardy purported to terminate the License Agreement and Hardy Life filed its First Amended Complaint, wherein it now seeks a judicial declaration that its termination of the License Agreement [on August 4, 2008] was "effective and proper."  It was not.  Also, in an Order dated August 4, 2008, the Court denied Hardy Life's motion for a preliminary injunction.

## FIRST COUNTERCLAIM

### (Breach of Contract Against Hardy Life)

22.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

23.     Pursuant to the License Agreement, Nervous Tattoo agreed to pay certain royalties to Hardy Life, and Hardy Life agreed to grant Nervous Tattoo an exclusive license (with certain limited exceptions) to design, manufacture, promote, advertise, sell and distribute throughout the world products bearing Hardy Life's artwork and trademarks.

24.     Nervous Tattoo has performed fully all obligations and conditions required of it pursuant to the License Agreement, except as said performance has been waived, excused or prevented by Hardy Life.

35

25.     Hardy Life has breached the License Agreement by, among other things:  (1) purporting to license to Nervous Tattoo certain artwork not owned by Hardy Life; (2) failing and refusing to supply the entirety of the artwork called for under the License Agreement; (3) licensing to someone other than Nervous Tattoo the production of temporary tattoos; (4) purporting to terminate the License Agreement in violation of the notice provisions expressly set forth therein and in the absence of any material breach on the part of Nervous Tattoo, (5) by wrongfully purporting to terminate the License Agreement, Hardy Life jeopardizes the rights to use and register the trademarks in many countries, deprives Nervous Tattoo of the ability to take action against counterfeiters;[4] and damages Nervous Tattoo's sales of the "Ed Hardy" merchandise; and (6) attempting to interfere with Nervous Tattoo's sublicense relationships.

26.     As a direct, foreseeable and proximate result of Hardy Life's numerous breaches of the License Agreement, Nervous Tattoo has been damaged in an amount to be determined at trial, but reasonably believed to be in excess of $500,000,000.00.  Additionally, because of Hardy Life's numerous breaches of the License Agreement and wrongful instigation of the instant action, Nervous Tattoo has been forced to retain legal counsel and incur other expenses, which Nervous Tattoo also is entitled to recover pursuant to the Agreement.

## SECOND COUNTERCLAIM

### (Breach Of The Implied Covenant Of Good Faith And Fair Dealing Against Hardy Life)

27.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

28.     The License Agreement contained an implied covenant of good faith and fair dealing requiring that:  (1) Hardy Life would not to anything to frustrate

---

[4] Recently, Nervous Tattoo became aware of companies in China knocking off Nervous Tattoo's "Ed Hardy" products.   Three factories manufacturing such counterfeit goods were raided and shut down by governmental authorities.

36

Nervous Tattoo's ability to conduct business or to frustrate Nervous Tattoo's ability to realize the benefits of the License Agreement; (2) Hardy Life would deal fairly and in good faith with Nervous Tattoo; and (3) Hardy Life would promptly and fairly carry out its obligations under the License Agreement as alleged above.

29.     Hardy Life has repeatedly and materially breached the implied covenant of good faith and fair dealing by engaging in actions purposely aimed at frustrating Nervous Tattoo's ability to conduct its business and accomplish its purposes under the License Agreement including, among other things, manufacturing disputes over the parties respective rights and obligations under the License Agreement, purporting to license to Nervous Tattoo certain artwork not owned by Hardy Life, licensing items (such as temporary tattoos) that were subsumed in the exclusive licensing arrangement in favor of Nervous Tattoo, failing and refusing to supply the entirety of the artwork called for under the License Agreement, failing to supply "additional artwork" as contemplated by the License Agreement, purporting to terminate the License Agreement without justification and without proper notice, and depriving Nervous Tattoo of the ability to detect and take action against counterfeiters.

30.     As a direct, foreseeable and proximate result of Hardy Life's wrongful conduct, Nervous Tattoo has been damaged in an amount to be determined at trial, but reasonably believed to be in excess of $500,000,000.00. Additionally, because of Hardy Life's numerous breaches of the License Agreement and wrongful instigation of the instant action, Nervous Tattoo has been forced to retain legal counsel and incur other expenses, which Nervous Tattoo also is entitled to recover pursuant to the License Agreement.

## THIRD COUNTERCLAIM

### (Declaratory Relief Against Hardy Life)

31.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

37

32.     A dispute and actual controversy has arisen between Nervous Tattoo, on the one hand, and Hardy Life, on the other hand, in that Hardy Life contends that it has properly and effectively terminated the License Agreement, and Nervous Tattoo contends that Hardy Life's purported termination of the License Agreement is invalid and did not result in the actual termination of the License Agreement.  To wit, these positions are diametrically opposed.

33.     Nervous Tattoo needs and desires a judicial declaration as to whether Hardy Life's purported termination of the License Agreement is valid and legally effective.  Such a declaration is necessary, warranted and appropriate because there is a definite and concrete controversy, of sufficient immediacy, touching the legal relations of parties having adverse legal interests insofar as Hardy Life has "declared" that the License Agreement has been and is terminated, has not agreed to refrain from executing on said termination pending a trial on the merits, and has brought its own claim for declaratory relief "seeking a declaration that Hardy Life's termination of the 2005 [License] Agreement was effective and proper." Termination of the License Agreement, if wrongfully effectuated, could fatally destroy Nervous Tattoo, thereby warranting the issuance of a declaratory judgment. For the same reasons, Nervous Tattoo desires a prompt resolution of the issues herein.

## FOURTH COUNTERCLAIM

### (Fraudulent Misrepresentations Against Hardy Life, Hoel And Hardy)

34.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

35.     Nervous Tattoo is informed and believes, and on that basis alleges that, at the time the parties entered into the License Agreement, Hardy Life, Hoel and Hardy falsely represented, both orally and in writing, to Christian Audigier, the then President of Nervous Tattoo, that Hardy Life was the owner of all of the rights to the artwork licensed under the License Agreement and that Hardy Life would

38

1    abide by the terms of the License Agreement and perform all conditions, covenants

2    and promises required thereby.

3        36.      Nervous Tattoo is informed and believes, and on that basis alleges that,

4    at the time the parties entered into the License Agreement, Hardy Life, Hoel and

5    Hardy knew, for instance, that Hardy Life did not own the rights to the Hot Stuff

6    character and also knew that Hardy Life had no intention of performing all of its

7    obligations under the Agreement.

8        37.      Nervous Tattoo is informed and believes, and on that basis alleges, that

9    Hardy Life, Hoel and Hardy made the foregoing false representations with the

10   intent to induce Nervous Tattoo to enter into the License Agreement and expend

11   significant effort to build the brand so that Hardy Life could then manufacture a

12   basis to rescind the License Agreement, cut itself a better deal, and cut Nervous

13   Tattoo out of the equation.

14       38.      In reliance on Hardy Life, Hoel and Hardy's false representations,

15   Nervous Tattoo was induced to enter into the License Agreement.

16       39.      Nervous Tattoo reasonably and justifiably relied on Hardy Life, Hoel

17   and Hardy's representations.

18       40.      As a direct and proximate result of Hardy Life, Hoel and Hardy's

19   fraud, as described hereinabove, Nervous Tattoo has suffered damages, and

20   continues to suffer damages, in an amount to be proven at trial but reasonably

21   believed to be in excess of $500,000,000.00.

22       41.      Hardy Life, Hoel and Hardy's acts alleged above were willful, wanton,

23   fraudulent, malicious and oppressive and justify the award of exemplary and

24   punitive damages in an amount to be proven at trial.

## FIFTH COUNTERCLAIM

### (Trade Libel Against Hardy Life, Hoel And Hardy)

27       42.      Nervous Tattoo hereby incorporates the allegations contained in

28   paragraphs 1 through 21, inclusive, as though set forth in full.

39

43.     Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy Life, Hoel and Hardy have published statements to third parties to the effect that some or all of Nervous Tattoo's goods bearing Hardy Life's artwork and trademarks are unauthorized and/or counterfeit.

44.     Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy Life, Hoel and Hardy's statements have been reasonably understood to be statements of fact concerning Nervous Tattoo's goods.

45.     The aforementioned statements by Hardy Life, Hoel and Hardy regarding Nervous Tattoo's goods are false.

46.     Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy Life, Hoel and Hardy acted with malice in publishing the aforementioned false statements regarding Nervous Tattoo's goods.

47.     Hardy Life, Hoel and Hardy's false statements about Nervous Tattoo's goods were not privileged.

48.     As a result of Hardy Life, Hoel and Hardy's false statements regarding Nervous Tattoo's goods, Nervous Tattoo has suffered damages and continues to suffer damages, in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00.

49.     Hardy Life, Hoel and Hardy's acts alleged above were willful, wanton, fraudulent, malicious and oppressive and justify the award of exemplary and punitive damages in an amount to be proven at trial.

## SIXTH COUNTERCLAIM

### (Intentional Interference With Actual And Prospective Economic Advantage Against Hardy Life, Hoel And Hardy)

50.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

51.     As it is fully entitled to do pursuant to its exclusive rights under the License Agreement, Nervous Tattoo had and has valid and existing contracts and

40

relationships with numerous sublicensees, manufacturers, distributors and retail outlets for the design, manufacture, distribution and/or sale of products bearing Hardy Life's artwork and trademarks and is engaged in ongoing efforts to establish additional such relationships.  Hardy Life, Hoel and Hardy were and are aware of Nervous Tattoo's business relationships and that the design, manufacture, distribution and sale (both directly and through third parties) of products bearing Hardy Life's artwork and trademarks is at the heart of Nervous Tattoo's business. Despite this knowledge, Hardy Life, Hoel and Hardy knowingly and purposefully have acted in a manner designed to disrupt Nervous Tattoo's existing and future business relationships.

52.     By their wrongful conduct described herein, Hardy Life, Hoel and Hardy have interfered and, unless enjoined by the Court, will continue to interfere with Nervous Tattoo's existing and prospective business relationships.  Hardy Life, Hoel and Hardy's intentional interference with Nervous Tattoo's existing and prospective business relationships is ongoing such that it is impossible to ascertain the full extent of damages.  To date, however, Nervous Tattoo has directly and proximately suffered, and is likely to continue to suffer, substantial loss of revenue, goodwill, reputation, customer appreciation and other business, all to its damage in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00.

53.     Hardy Life, Hoel and Hardy's acts alleged above were willful, wanton, malicious and oppressive and justify the award of exemplary and punitive damages in an amount to be proven at trial.

54.     To halt the ever-mounting injury, Nervous Tattoo hereby requests that the Court issue temporary, preliminary and permanent injunctive relief, restraining Hardy Life, Hoel and Hardy from further tortiously interfering with Nervous Tattoo's existing and prospective business relationships.

\\\

41

## SEVENTH COUNTERCLAIM

### (Unfair Competition In Violation Of California Business & Professions Code §§ 17200, *et seq.* Against Hardy Life, Hoel And Hardy)

55.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

56.     Hardy Life, Hoel and Hardy's conduct as set forth hereinabove constitutes unlawful, unfair, unethical, oppressive and deceptive business practices under California Business & Professions Code §§ 17200, *et seq.*

57.     Nervous Tattoo is informed and believes, and on that basis alleges, that Hardy Life, Hoel and Hardy have engaged in the intentional, willful and malicious conduct described above in an effort to injure Nervous Tattoo's reputation in the business community, to injure Nervous Tattoo financially, and to deter Nervous Tattoo's current and potential customers, suppliers, vendors and other business associates from doing business with Nervous Tattoo.

58.     As a direct and proximate result of Hardy Life, Hoel and Hardy's unfair business practices as described hereinabove, Nervous Tattoo has lost significant business opportunities, goodwill and profits.

59.     To halt the ever-mounting injury, Nervous Tattoo hereby requests that the Court issue temporary, preliminary and permanent injunctive relief, restraining Hardy Life, Hoel and Hardy from further interfering with Nervous Tattoo's existing and prospective business relationships.

## EIGHTH COUNTERCLAIM

### (California Common Law Unfair Competition Against Hardy Life, Hoel and Hardy)

60.     Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, and paragraphs 57 through 58, inclusive, as though set forth in full.

\\\

42

61.      Hardy Life, Hoel and Hardy's conduct as set forth hereinabove constitutes common law unfair competition.

62.      As a direct and proximate result of Hardy Life, Hoel and Hardy's acts of unfair competition as described hereinabove, Nervous Tattoo has been injured in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00.

63.      Hardy Life, Hoel and Hardy's acts alleged above were willful, wanton, malicious and oppressive and justify the award of exemplary and punitive damages in an amount to be proven at trial.

64.      To halt the ever-mounting injury, Nervous Tattoo hereby requests that the Court issue temporary, preliminary and permanent injunctive relief, restraining Hardy Life, Hoel and Hardy from further interfering with Nervous Tattoo's existing and prospective business relationships.

## NINTH COUNTECLAIM

### (Injunctive Relief Against Hardy Life, Hoel And Hardy)

65.      Nervous Tattoo hereby incorporates the allegations contained in paragraphs 1 through 21, inclusive, as though set forth in full.

66.      As noted above, shortly after commencing this action, Hardy Life began bombarding Nervous Tattoo's numerous sublicensees (as well as its attorneys and accountant) with onerous document subpoenas.  Nervous Tattoo is informed and believes, and on that basis alleges, that those subpoenas (and, indeed, this lawsuit) were part and parcel of Hardy Life, Hoel and Hardy's design to intimidate Nervous Tattoo's sublicensees and interfere with Nervous Tattoo's business relationships as a means of either extorting additional money from Nervous Tattoo or irreparably damaging Nervous Tattoo's business and goodwill. Nervous Tattoo also is informed and believes, and on that basis alleges, that Hardy Life, Hoel and Hardy have published statements to third parties to the effect that

\\\

43

some or all of Nervous Tattoo's goods bearing Hardy Life's artwork and trademarks are unauthorized and/or counterfeit.

67.     As set forth above, Hardy Life's original Complaint and accompanying Motion for Preliminary Injunction, although couched in terms of copyright and trademark infringement, essentially asked the Court to adjudicate whether Nervous Tattoo has breached the License Agreement. Again, Hardy Life's Complaint (unlike the complaint in the State Court Action) did not seek rescission of the License Agreement. Nervous Tattoo is informed and believes, and on that basis alleges, that when Nervous Tattoo and its co-defendants exposed many of the spurious allegations and weaknesses underlying Hardy Life's claims and request for a preliminary injunction, followed by Hardy Life's failure to obtain quickly injunctive relief, Hardy Life and Hardy decided to circumvent the judicial process. To that end, on August 4, 2008, immediately after receiving a scheduled quarterly royalty check in excess of $1.5 million, Hardy purported to terminate the License Agreement and Hardy Life filed its First Amended Complaint, wherein it now seeks a judicial declaration that its termination of the License Agreement was "effective and proper." It was not.

68.     As stated above, Hardy Life contends that it has properly and effectively terminated the License Agreement, and Nervous Tattoo contends that Hardy Life's purported termination of the License Agreement is invalid and did not result in the actual termination of the License Agreement. To wit, these positions are diametrically opposed. Injunctive relief is necessary, warranted and appropriate because Hardy Life has "declared" that the License Agreement has been and is terminated and has not agreed to refrain from executing on said termination pending a trial on the merits. Termination of the License Agreement, if wrongfully effectuated, could fatally destroy Nervous Tattoo, thereby warranting the issuance of an injunction.

\\\

44

69.     No adequate remedy exists at law for the injuries suffered by Nervous Tattoo as set forth herein, and further harm will result to Nervous Tattoo if Hardy Life, Hoel and Hardy's wrongful acts absent injunctive relief.  If the Court does not grant injunctive relief of the type and for the purpose specified herein, Nervous Tattoo will suffer irreparable injury.  Nervous Tattoo therefore requests that the Court issue temporary, preliminary and permanent injunctive relief restraining Hardy Life, Hoel and Hardy from (1) contacting any of Nervous Tattoo's manufacturers, distributors, retailers, customers, vendors, sublicensees and/or other business associates to inform them that the License Agreement has been terminated or for any other reason; (2) entering into any licensing or similar agreements that overlap, duplicate, or in any way purport to supersede any of the exclusive rights granted to Nervous Tattoo pursuant to the License Agreement; and (3) attempting in any way to interfere with Nervous Tattoo's existing and prospective business relationships.

## **PRAYER**

WHEREFORE, Nervous Tattoo prays for judgment as follows:

**On the First Counterclaim Against Hardy Life:**

1.     For general and compensatory damages in an amount to be determined at trial but reasonably believed to be in excess of $500,000,000.00;

2.     For costs of suit, including attorneys' fees; and

3.     For such other relief as the Court deems proper.

**On the Second Counterclaim Against Hardy Life:**

1.     For general and compensatory damages in an amount to be determined at trial but reasonably believed to be in excess of $500,000,000.00;

2.     For costs of suit, including attorneys' fees; and

3.     For such other relief as the Court deems proper.

\\\

\\\

45

**On the Third Counterclaim Against Hardy Life:**

    1.    For a judicial declaration that Hardy Life's purported termination of the License Agreement is invalid and of no legal effect and that, therefore, the License Agreement still is in force.

**On the Fourth Counterclaim Against Hardy Life, Hoel and Hardy:**

    1.    For compensatory damages in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00; and

    2.    For exemplary and punitive damages in an amount to be proven at trial.

**On the Fifth Counterclaim Against Hardy Life, Hoel and Hardy:**

    1.    For compensatory damages in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00; and

    2.    For exemplary and punitive damages in an amount to be proven at trial.

**On the Sixth Counterclaim Against Hardy Life, Hoel and Hardy:**

    1.    For compensatory damages in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00;

    2.    For exemplary and punitive damages in an amount to be proven at trial; and

    3.    For temporary, preliminary and permanent injunctive relief.

**On the Seventh Counterclaim Against Hardy Life, Hoel and Hardy:**

    1.    For temporary, preliminary and permanent injunctive relief.

**On The Eighth Counterclaim Against Hardy Life, Hoel and Hardy:**

    1.    For compensatory damages in an amount to be proven at trial but reasonably believed to be in excess of $500,000,000.00;

    2.    For exemplary and punitive damages in an amount to be proven at trial; and

    3.    For temporary, preliminary and permanent injunctive relief.

46

**On The Ninth Counterclaim Against Hardy Life, Hoel and Hardy:**

    1.    For temporary, preliminary and permanent injunctive relief.

**On All Counterclaims**

    1.    For cost of suit incurred herein, including attorneys' fees; and

    2.    For such other and further relief as the Court deems just and proper.

DATED:  August 20, 2008        DICKSTEIN SHAPIRO LLP


By:  _____
       James H. Turken
       Amy L. Rubinfeld
       John L. Tuell
       Attorneys for Defendants NERVOUS
       TATTOO, INC.; CHRISTIAN AUDIGIER,
       INC; BACKSTAGE WEB, INC;  and SHOP
       ON STAGE, INC. and Counterclaimant
       NERVOUS TATTOO, INC.

## DEMAND FOR JURY TRIAL

Nervous Tattoo hereby demands a trial by jury.


DATED:  August 20, 2008        DICKSTEIN SHAPIRO LLP


By:  _____
       James H. Turken
       Amy L. Rubinfeld
       John L. Tuell
       Attorneys for Defendants NERVOUS
       TATTOO, INC.; CHRISTIAN AUDIGIER,
       INC; BACKSTAGE WEB, INC;  and SHOP
       ON STAGE, INC. and Counterclaimant
       NERVOUS TATTOO, INC.

**EXHIBIT A**

# RESTATED AND AMENDED LICENSE AGREEMENT

LICENSE AGREEMENT, effective as of July 1, 2005, by and between HARDY LIFE, LLC, a California Limited Liability Company [hereinafter "Licensor"], and NERVOUS TATTOO, INC., a California corporation [hereinafter "Licensee"], as follows:

1.     Licensor is the creator of certain artwork designed by Licensor for the art of tattooing [the "Artwork"] and is the owner of intellectual property rights in and to the names "Don Ed Hardy" and "Ed Hardy" and the right of publicity in and to those names and their images, likenesses, voices, signatures and visual representations thereof.  Licensor is the owner of the trademark "Don Ed Hardy" which trademark is understood to encompass "Ed Hardy."  To the extent necessary, Licensee shall separately trademark the name "Ed Hardy" for the licensor's benefit. "Don Ed Hardy", "Ed Hardy" and  "Hardy" shall hereinafter collectively be referred to the "Trademarks."  No ownership interest in any of the Artwork, property rights or Trademarks, whether now or hereafter existing, is being transferred herein and, other than that set forth in this Agreement, all rights to, interest in and goodwill relating to the Artwork, property rights and Trademarks belong exclusively to Licensor.

2.     Subject to the limitations set forth herein, Licensor hereby grants to Licensee an exclusive license to, at its discretion, design, manufacture, promote, advertise, sell, at wholesale, retail or through the internet (including the right to operate In-Store shops), and distribute (sometimes through third parties) throughout the world products bearing such artwork and/or trademark(s) of Licensor [hereinafter "Licensed Products"] with the express exception of those products set forth below in this paragraph which are excluded from the scope of this Agreement and from the license being granted herein:

> posters, lithographs, printed art, reproductions, calendars, books, greeting cards, printed paper (coated or uncoated), cardboard, ceramics and weapons; Except that, certain promotional use of the trademarks shall be permitted on shopping bags, napkins, ceramics as used in the operation of a café, cardboard packaging of authorized products, and any ancillary use in the exploitation of an excepted product hereunder.

3.     Licensee within One Hundred and Eighty (180) days of the effective date of this agreement, will acknowledge receipt of the Artwork from Licensor who shall deliver the Artwork to Licensee in catalogued form through the use of scanned images and general descriptions of each scan.  Such release of scanned images shall serve as a quality control review and as a grant of permission to use the specific catalogued Artwork in all product categories permitted by this Agreement; unless, certain scanned images are specifically excluded from use in specific product categories in writing.

a.     It is the intent of Licensor to provide additional seasonal artwork to Licensee during the term of this Agreement, using the same quality control protocol as above, provided, however, that Licensor shall be under no obligation to do so. Should Licensor fail to provide additional seasonal artwork, Licensee shall have the right to serve ninety (90) days written notice upon Licensor to provide additional artwork or Licensee may terminate the Agreement.

48

b.      Licensee, from time to time, may also exploit, under the terms of this agreement, artwork submitted by other tattoo artists ["Community Artwork"]. Licensor has the right to approve or disapprove such Community Artist or Community Art which approval or disapproval shall be provided by Licensor to Licensee within thirty (30) days of the submission of the identity of the proposed Community Artist or Community Artwork by Licensee. Any such Community Artwork or Community Artist shall be identified by reference first to the name of the Licensor and then the name of the Licensee. (ie, "Ed Hardy, Community Artist Collection.") Further, Licensor has the right to withdraw any prior approval granted to Licensee for good faith business reasons by providing written notice that Licensee cease the exploitation of such Community Artist or Community Artwork within ninety (90) days of delivery of such written notice to Licensee.

4.      Upon reasonable request, Licensee shall permit Licensor or its duly authorized representative the right to inspect the labels and tags on the goods offered pursuant to this Agreement.

5.      When requested, Licensee agrees to send samples of advertising and promotional materials, as well as goods and promotional and advertising materials bearing or sold under the Trademarks, and any other documents that may permit Licensor to determine whether the goods and services and trademark uses of the Trademarks meet the standards, specifications, and directions approved by Licensor.

6.      All licensed products containing Community Artwork shall be approved on a season to season basis, in advance and in writing, by Licensor provided that such approval shall be provided within Fourteen (14) days of submission, which approval shall not be unreasonably withheld. The failure of Licensor to either approve or disapprove any particular product sample for the Community Artwork within fourteen (14) days of its receipt shall be deemed to be an express approval. However, Licensor shall have no approval rights over any licensed products, which commercializes the Artwork. Upon acceptance by Licensor of the use of Community Artwork in a particular class of use, the further consent or approval of Licensor is not necessary in connection with the exploitation of that particular use.

7.      The cost of developing and producing designs, including graphics designs, for licensed products shall be borne by Licensee and Licensee shall hold Licensor harmless therefrom.

8.      Licensee shall have the right to determine its own product planning and sales and advertising policies.

9.      Any artwork, advertising and promotional materials involving a trademark of Licensor, but not designed by Licensor, shall be approved, in advance and in writing, by Licensor provided that such approval shall be provided within fourteen (14) days of submission and shall not be unreasonably withheld. The failure of Licensor to either approve or disapprove any such proposed artwork, advertising and/or promotional materials within ten days of receipt shall be deemed to be an express approval.

2

49

10.    Licensor shall retain the right to develop, sell and distribute experimental art clothing, provided, however, that Licensee shall have the right of first refusal to make and sell and distribute such clothing. Licensee may exercise this right of first refusal by giving written notice to Licensor within 30 days after receipt of a detailed description of any such experimental art clothing project from the Licensee in a written submission. The failure to give notice of the exercise of the right of first refusal within said 30 days shall be deemed to be a waiver of the right of first refusal by the licensee. It is also understood that clothing of a limited commercial character or use expressing the personal creativity of Don Ed Hardy himself of a non-classic tattoo design nature are exempted from this agreement.

11.    Licensee shall pay Licensor a royalty in accordance with the schedule set forth below. Payments shall be calculated in U.S. dollars using the exchange rate for the fifteenth (15th) day of the relevant month (or the next business day if any such day falls on a weekend or on a holiday) as set forth in the U.S. Edition of *the Wall Street Journal* and shall be wired to a bank account of Licensor to be provided.

a.    Royalties shall be paid from Net Wholesale Sales ("Net Sales") of licensed products as follows:

- 5% of the net sales up to $5 million of net sales
- 4% of the net sales in excess of $5 million up to $10 million
- 3-1/2% of the net sales in excess of $10 million up to $50 million
- 3% of the net sales in excess of $50 million

b.    Annual Net Sales shall be calculated on an annual royalty year beginning July 1 and ending June 30 of the subsequent year.

c.    The term "Net Sales" shall be defined as the gross wholesale sales of licensed products less i) refunds, allowances, markdowns, credits, promotional items and allowances actually made or allowed to customers for returned products, ii) customary trade discounts (including anticipations) afforded to and actually taken by customers against payment for licensed products and iii) sales, use or value added tax assessed on sales (only where applicable and specifically excluding any franchise, remittance, gross receipts or incomes taxes).

d.    "Net sales" shall also include wholesale sales of licensed products to an entity responsible for Internet sales.

e.    With respect to sales made by Licensee to a sub-licensee operating a retail store, royalties shall be paid in accordance with this paragraph (9) on the wholesale Net Sales by Licensee to the sub-licensee and not on the retail sales of the sub-licensee.

12.    With respect to royalties received by Licensee from sub-licensees, Licensee shall pay to Licensor a royalty equal to 2% of such sub-licensee's net sales amount on a cash basis. Should Licensee receive a sub-licensing fee in addition to a royalty payment, such sub-licensing fee shall belong solely to Licensee. The Net Sales attributable to the sale of any Community Art shall also bear royalty rate of 2% payable to the Licensor. In addition, the sales of any

3

50

Trademark Derivatives: (means a newly created label that is based on or derives out of the exploitation of "Don Ed Hardy" "Hardy" or "Ed Hardy" any combination or abbreviation thereof) shall bear a royalty rate of 2% payable to the Licensor. Private label sales made as a result of Intellectual Property and any styles used by Licensee that are copied from any Hardy design are to be reported separately and at a royalty rate of 2%.

13.   All royalties, regardless of source, shall be paid on a quarterly basis as follows:

| QUARTER | PERIOD | DUE DATE |
|---|---|---|
| 1st | January 1 through March 31 | April 30 |
| 2nd | April 1 through June 30 | July 31 |
| 3rd | July 1 through September 30 | October 31 |
| 4th | October 1 through December 31 | January 31 |

a.      Notwithstanding the royalty schedule set forth above, Licensee shall pay Licensor a **guaranteed minimum royalty** of $112,500 per quarter. Licensee shall pay Licensor on a quarterly basis as set forth above, the greater of the royalties earned or the guaranteed minimum amount. The initial quarter and final quarter of this Agreement shall be paid on a pro-rata basis.

b.      In addition to the quarterly payment of royalties, Licensee shall simultaneously and, no later than 30 days following the close of each quarter, provide royalty reports and associated documentation as required by Licensor to legal counsel for Licensor.

14.   Licensee shall have the right to procure sub-licensees and to enter into sub-license Agreements for the design, manufacture, advertising, promotion, sale and/or distribution of the licensed products provided that all such licensees shall present evidence of issuance of liability insurance to Licensor, as a named co-insured, liability insurance in the amount of $5,000,0000-Aggregate and $2,000,000 per occurrence for clothing and related products and $10,000,000-aggregate and $3,000,000 per occurrence for motorcycles and related equipment or other sporting products. Sub-license Agreements may not confer any rights upon the sub-licensee, which are greater than those rights of Licensee hereunder. Upon the execution of a sub-license Agreement, Licensee shall provide Licensor with a copy of any such Agreement.

a.      It is expressly understood that Licensee shall be solely responsible for any sub-licensing program and nothing within any sub-license Agreement or sub-licensing program shall alter the rights of Licensor hereunder including the rights to approve samples of licensed products.

b.      It is expressly understood that Licensee may not have an interest, either directly or indirectly, in any sub-license Agreement, without the express written consent of Licensor. Notwithstanding, Licensor hereby agrees that Licensee may enter into a sub-license Agreement with Nervous Tattoo SARL ("SARL"), covering the territory of Europe, , or any other hereinafter formed entity controlled by the Licensor or any of its principals, provided, however, that royalties to be paid to Licensor by Licensee thereunder shall be based on combined sales of SARL and Licensee and any of its sub licensee affiliates in accordance with the royalty rates set forth in paragraph (9) hereinabove.

4

c.     It is expressly understood that Licensee shall not have the right to sub-license, men and women's tops or headwear bearing the Don Ed Hardy or Ed Hardy trademarks without the express written consent of Licensor.

15.     Licensee shall keep accurate and complete books of account and records with respect to all transactions relating to or arising out of this license Agreement.  Such books and records shall be maintained separately from the books and records of Licensee with respect to any other business conducted by Licensee.  Licensee shall permit Licensor, or its designated agent(s), to have full access to such books and records to examine and copy, at Licensor's expense, all of such books and records as they pertain to this Agreement.  Such access shall be on a reasonable basis not to exceed one day per month.  Licensor shall have the right to such inspection during reasonable business hours without prior notice.  All of the books and records of Licensee as they pertain to this Agreement shall be retained by Licensee for a period of four years after the expiration of this Agreement or, in the event of a dispute between parties and suit is filed, two years after the entry of a final judgment.  The acceptance by Licensor of any statements, reports and/or payments from Licensee shall not constitute a waiver by Licensor of the right to question the accuracy of any of the books, records or payments by Licensee.  This right of inspection shall apply to books maintained by Licensee in Europe and in countries other than in the United States.  Licensee shall provide Licensor with the location of all such books and records in order that Licensor may make inspections hereunder.

16.     In the event that Licensor discovers a discrepancy in the books and records of Licensee and/or an underpayment by Licensee, and the Licensee is in agreement with such discrepancy, the cost of any such inspection or examination shall be borne by Licensee, and Licensee shall have 30 days from the receipt of written notice from Licensor to correct such books and records and to pay any monies due plus a 2% penalty on amounts due.  Failure to do so shall constitute a default hereunder.  In the event the Licensee does not agree with such discrepancy, the dispute shall be submitted to a retired Justice or Judge who shall arbitrate pursuant to the arbitration procedure set forth in California Code of Civil Procedure section 1280 et. seq.  and render a final, binding award over such dispute.  Discovery shall be limited to requests for production of documents. The prevailing party at arbitration shall be entitled to recover its costs and reasonable attorneys fees arising therefrom.

17.     In the event an inspection or examination of the books and records of Licensee disclose an overpayment, the amount of such overpayment shall be credited against the next future payment of royalties to Licensor.

18.     Licensee shall carry, at its sole expense, a policy of product liability insurance of not less than $2 million during the term of this license Agreement that shall remain in force and effect for a period of three years following the termination of this Agreement.  Said insurance policy shall name Licensor and the trademarks of Licensor as additional insureds.  Proof of said insurance shall be provided to licensor no later than September 30, 2005.  Failure to do so shall give Licensor the right  to declare a default hereunder.

19.     Licensee shall comply with all laws of the states  wherein they are qualified to do business where such laws materially affect the ability of the Licensee to conduct business in that

52

particular state  In the event Licensee is not in compliance with the laws of any particular state wherein it is conducting business, it shall have ninety (90) days after written notice of such breach to cure any violation of the law after notice of such violation has been provided by the local administrative or governmental agency.

20.     Licensee shall be responsible, at its expense to secure and preserve the Hardy Trademark rights in and to the Trademarks and IP rights including without limitation in the execution submission and prosecution (which shall include the filing of lawsuits to enforce such intellectual property) of any trademarks, service marks, copyrights and patent applications and similar applications for registration which Licensee may desire to submit at any time from time to time throughout the world. Licensee may submit any such application any where in the world to register the trademarks for the products or services or any other service mark, design right or invention, without the prior written approval of Licensor.

21.     Licensor shall, at its sole expense, defend and indemnify any action that is based upon a claim that any trademark of Licensor constitutes an infringement of any other existing trademark or other property right belonging to a third party and shall indemnify and hold Licensee harmless there from. Licensee shall cooperate with Licensor in any such legal proceeding.  Choice of legal counsel for the defense of such action shall be with the Licensor.

22.     Licensor shall, at its sole expense, defend any action that is based upon a claim that any copyright of Licensor or of the activities of Licensee as contemplated by this Agreement constitutes an infringement of any other existing copyright or other rights of a third party and shall indemnify and hold Licensor harmless there from. Licensee shall cooperate with Licensor in any such legal proceeding.  Choice of legal counsel for the defense of such action shall be with the Licensor.

23.     The term of this Agreement shall be ten years commencing July 1, 2005 and terminating June 30, 2015.  Provided that Licensee is not in default, Licensee shall have the right upon no less than 90 days written notice to Licensor to renew this Agreement for successive ten year terms upon the same terms and conditions.

24.     In the event of a material breach of any term or condition of this Agreement, the breaching or defaulting party shall have 30 days upon receipt of written notice to cure said default or breach.  Should the defaulting or breaching party fail to cure within said 30-day period, the injured party shall have the right to thereupon terminate this Agreement.

25.     At the termination of this Agreement and any extension period thereof or upon other termination of this Agreement, any and all rights licensed to Licensee hereunder shall immediately terminate and all such rights shall revert back to Licensor.

26.     In the event of a petition in bankruptcy of Licensee, whether voluntary or involuntary, insolvency, or an assignment of the benefits of creditors of Licensee, this Agreement shall be thereupon terminated.  Not less than forty-five (45) days prior to the expiration of this agreement or within five (5) days after the termination of licensees rights under this agreement Licensee shall furnish to Licensor a certificate listing its inventory of products on hand ("Remaining Inventory").  Licensee shall have 180 days after termination or expiration of this agreement to sell of any and all Remaining Inventory.

53

27.     This Agreement shall be construed in accordance with the laws of the State of California. In the event of any dispute between the parties hereto, the Los Angeles Superior Court shall have exclusive jurisdiction. In the event of a breach of this Agreement and suit is filed, the injured party is entitled to seek all available remedies and relief including compensatory damages, equitable relief including an injunction, punitive damages where applicable and all other appropriate pre-trial and post-trial remedies. The prevailing party shall be entitled to recover of its costs of suit and reasonable attorneys fees both at the trial level and on appeal.

28.     This Agreement may not be modified unless expressly in writing and signed by each party hereto.

29.     The waiver by either party of any term or provision of this Agreement or the waiver of any breach thereof shall not be deemed to be waiver of any other term or provision or the waiver of any breach thereof.

30.     In the event any term or provision of this Agreement is deemed unenforceable by a court of competent jurisdiction, the remaining terms and provisions shall remain in full force and effect.

31.     All notices hereunder shall be writing and shall be either personally served or served by first class mail addressed, unless subsequently indicated, as follows:

Licensor:           Hardy Life LLC
                    700 Lombard Street
                    San Francisco, California 94133
                    Attention: Don Ed Hardy, Managing Member

Licensee:           Nervous Tattoo, Inc.
                    706 North Orange Grove Ave
                    Los Angeles, California 90046
                    Attention: Christian Audigier, CEO

32.     Licensee shall not assign any of its interest in or rights to this Agreement without the express written consent of Licensor, which consent shall not be unreasonably withheld. Any such assignment without written consent shall be null and void.

33.     It is expressly understood that this Agreement does not create a partnership nor a joint venture nor any other business relationship between Licensor and Licensee other than a license Agreement.

34.     This Agreement shall supersede any prior and/or existing agreements between the parties hereto.

35.     This Agreement may be executed in counter-parts. Executed counter-parts of this agreement transmitted by facsimile shall have the same force and binding effect as that of each party's original signature.

54

36.     This Agreement contains the entire understanding of the parties with regard to the within subject matter.  No party hereto has made any representation, warranty, covenant or undertaking of any nature whatsoever, express or implied, with respect to this Agreement, other than that expressly set forth herein.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year set forth below.

DATED: _18 Sept. 2005_, 2005          HARDY LIFE, LLC
                                      [Licensor]

                                      By: _Don Ed Hardy_
                                      Don Ed Hardy, Managing Member

DATED: _9/18/2005_, 2005              NERVOUS TATTOO, INC.
                                      [Licensee]

                                      By: _____
                                      Christian Audigier, CEO

55

**EXHIBIT B**

# ARTHUR JARVIS COHEN

### Attorney at Law

Cohen, Eagan, Leonard & Parker, LLP
1235 North Harbor Boulevard
Suite 115
Fullerton, California  92832-1323

Arthur Jarvis Cohen
Marc T. Eagan
G. Thomas Leonard
Ronald G. Parker

direct telephone
(714) 578-5018

fax
(714) 578-0577

e-mail
ajcohenlaw@sbcglobal.net

February 13, 2008

James Turken, Esq.
Dickstein, Shapiro, LLP
2049 Century Park East, 7th Floor
Los Angeles, California 90067

Re:   Hardy Life LLC/Nervous Tattoo, Inc.

Dear Mr. Turken:

It is encouraging that the parties, most specifically, Steven Hoel on behalf of Hardy life, LLC and Henry Mandell on behalf of Nervous Tattoo, Inc., seem to have reached a working accord which resulted in the dismissal of the lawsuit.  Nevertheless, issues continue to arise.  One of those is "The Little Devil" of which you are familiar.  There are others.

Of paramount importance, we must address the use of the trademark tag line, "Ed Hardy by Christian Audigier."  That must stop.  Hardy Life, LLC has retained the law firm, McDermott Will & Emery, LLP, as trademark counsel.  Enclosed is an analysis done by that firm with respect to the Christian Audigier tag line.

The issue of the Christian Audigier tag line was first discovered on the Ed Hardy website.  Objections to the website have been made for about a year now.  The tag line was specifically discussed at the September 28, 2007 meeting at your office among you and I, Steven Hoel and Henry Mandell.  Notwithstanding our objections, the tag line continues to be used.  Because it is a Christian Audigier tag line, not only does it involve Nervous Tattoo, Inc., it involves Christian Audigier personally.

We understand that Christian Audigier filed a Federal Trademark application on January 14, 2008 for the mark, "By Christian Audigier."  Under the circumstances, that is most disturbing.

We have also learned that a current advertisement for Christian Audigier's "Lovestock" fashion show uses two Hardy Life, LLC designs, to wit, a double woman pin-up and a saber through a heart.  Not only does this advertisement use Hardy Life's artwork to promote products outside of the Ed Hardy brand, but Hardy Life's designs have been modified.  Hardy Life artwork may not be modified when used with the Ed Hardy brand nor to promote products outside of the Ed Hardy brand.

February 13, 2008
James Turken, Esq.
Page Two

Paragraphs 5 and 9 of the July 1, 2005 license agreement require samples of advertising, promotional materials, artwork and the like that contain the Ed Hardy trademark be submitted for approval. This has not been happening.

We also understand that Nervous Tattoo, Inc. is issuing sublicenses that do not conform with certain requirements detailed in the license agreement with Hardy Life, LLC and that sublicenses contain provisions that exceed the rights granted to Nervous Tattoo, Inc. in the license agreement.

Because of the critical nature of the Ed Hardy trademarks, I am also enclosing trademark usage guidelines that must be adhered to by Nervous Tattoo, Inc. and all sublicensees. It is our intention to provide copies of the trademark usage guidelines to all such sublicensees.

Having said the above, this letter shall constitute a formal demand pursuant to paragraph 24 of the license agreement that Nervous Tattoo, Inc. and/or Christian Audigier shall have 30 days to eliminate the use of the Christian Audigier tag line on any products, advertising, website or the like pertaining to an Ed Hardy trademark and that Nervous Tattoo, Inc. comply with all other points set forth above.

Should there not be compliance by March 21, 2008, Nervous Tattoo, Inc. and Christian Audigier may leave Hardy Life, LLC no alternative other than to file suit and seek an injunction and damages and whatever other relief may be appropriate. We regret that it has come to this. However, these are issues that cannot be ignored and must be addressed immediately. Hopefully, they are issues which will not bear upon the otherwise working relationship of the parties.

Should you and your client wish to meet, we would be willing to do so.

Very truly yours,

Arthur Jarvis Cohen,
Attorney at Law

AJC:smm
Enclosures
cc:    Hardy Life, LLC
       Rita Siamas, Esq.
       Elliott Silverman, Esq.

1    JAMES H. TURKEN (SBN 89618)
     turkenj@dicksteinshapiro.com
2    AMY L RUBINFELD (SBN 145194)
     rubinfelda@dicksteinshapiro.com
3    JOHN L. TUELL (SBN 208808)
     tuellj@dicksteinshapiro.com
4    FAWN A. WRIGHT (SBN 246443)
     wrightf@dicksteinshapiro.com
5    DICKSTEIN SHAPIRO LLP
     2049 Century Park East, Suite 700
6    Los Angeles, CA 90067-3109
     Telephone: (310) 772-8300
7    Facsimile: (310) 772-8301

8    Attorneys for Defendants NERVOUS TATTOO, INC.;
     CHRISTIAN AUDIGIER, INC.; BACKSTAGE WEB, INC.;
9    and SHOP ON STAGE, INC.

10                   UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13
     HARDY LIFE, LLC, a California        CASE NO. CV08 03524 PA (CTx)
14   limited liability company,

15          Plaintiff,                    DEFENDANT AND
                                          COUNTERCLAIMANT NERVOUS
16      vs.                               TATTOO, INC.'S CERTIFICATE OF
                                          INTERESTED PARTIES.
17   NERVOUS TATTOO, INC., a
18   California corporation;             [Assigned to the Hon. Percy Anderson]
     CHRISTIAN AUDIGIER, INC., a
19   California corporation; SHOP        First Amended Complaint Filed:
     CRYSTAL ROCK, a California          August 4, 2008
20   business entity; BACKSTAGE          Trial. Date:  None Set
     WEB, INC., a California
21   corporation; SHOP ON STAGE,
     INC., a California corporation;
22   CHRISTIAN AUDIGIER, a
     California resident, and DOES 1-
23   10, inclusive,

24          Defendants.

25

26

27

28
                                    1
                                                          DOCSLA-33067v01
     DEFENDANT AND COUNTERCLAIMANT NERVOUS TATTOO, INC.'S CERTIFICATE OF INTERESTED PARTIES

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 1 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1   NERVOUS TATTOO, INC., a
2   California corporation,

3       Counterclaimant,

4       vs.

5   HARDY LIFE, LLC, a California
    limited liability company;
6   STEPHEN HOEL, an individual;
    and DONALD EDWARD
7   HARDY, an individual,

8       Counterdefendants.

9           TO THE CLERK OF THE ABOVE-ENTITLED COURT:

10          The undersigned, counsel of record for Defendant and Counterclaimant

11  Nervous Tattoo, Inc. and Defendants Christian Audigier, Inc. Backstage Web, Inc.

12  and Shop On Stage, Inc., certifies that the following listed parties have a direct,

13  pecuniary interest in the outcome of this case.  This representation is made to

14  enable the Court to evaluate possible disqualification or recusal.

15          1.      Nervous Tattoo, Inc. (Defendant and Counterclaimant)

16          2.      Christian Audigier, Inc. (Defendant)

17          3.      Christian Audigier (Defendant)

18          4.      Backstage Web, Inc. (Defendant)

19          5.      Shop On Stage, Inc. (Defendant)

20          6.      Hardy Life, LLC (Plaintiff and Counterdefendant)

21          7.      Steven Hoel (Counterdefendant)

22          8.      Donald Edward Hardy (Counterdefendant)

23

24  DATED: August 21, 2008          DICKSTEIN SHAPIRO LLP

25                                  By:

26                                      James H. Turken
                                        Attorneys for Defendants NERVOUS
27                                  TATTOO, INC.; CHRISTIAN AUDIGIER,
                                    INC; BACKSTAGE WEB, INC;  and SHOP
28                                  ON STAGE, INC.

                                    2                         DOCSLA-33067v01

DEFENDANT AND COUNTERCLAIMANT NERVOUS TATTOO, INC.'S CERTIFICATE OF INTERESTED PARTIES

1   JAMES H. TURKEN (SBN 89618)
    turkenj@dicksteinshapiro.com
2   AMY L RUBINFELD (SBN 145194)
    rubinfeldag@dicksteinshapiro.com
3   JOHN L. TUELL (SBN 208808)
    tuellj@dicksteinshapiro.com
4   FAWN A. WRIGHT (SBN 246443)
    wrightf@dicksteinshapiro.com
5   DICKSTEIN SHAPIRO LLP
    2049 Century Park East, Suite 700
6   Los Angeles, CA 90067-3109
    Telephone: (310) 772-8300
7   Facsimile: (310) 772-8301

8   Attorneys for Defendants NERVOUS TATTOO, INC.;
    CHRISTIAN AUDIGIER, INC.; BACKSTAGE WEB, INC.;
9   and SHOP ON STAGE, INC.

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 1 2008

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

10

## UNITED STATES DISTRICT COURT

11

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13

14   HARDY LIFE, LLC, a California
    limited liability company,

15        Plaintiff,

16        vs.

17   NERVOUS TATTOO, INC., a
    California corporation;
18   CHRISTIAN AUDIGIER, INC., a
    California corporation; SHOP
19   CRYSTAL ROCK, a California
    business entity; BACKSTAGE
20   WEB, INC., a California
    corporation; SHOP ON STAGE,
21   INC., a California corporation;
    CHRISTIAN AUDIGIER, a
22   California resident, and DOES 1-
    10, inclusive,
23

24        Defendants.

25

**CASE NO. CV08 03524 PA (CTx)**

**PROOF OF SERVICE BY OVERNIGHT DELIVERY**

[Assigned to the Hon. Percy Anderson]

**First Amended Complaint Filed: August 4, 2008**
**Trial. Date: None Set**

26

27

28

DOCSLA-33086v01              1

1  NERVOUS TATTOO, INC., a
   California corporation,

2
        Counterclaimant,

3
        vs.

4
   HARDY LIFE, LLC, a California

5  limited liability company;
   STEPHEN HOEL, an individual;

6  and DONALD EDWARD
   HARDY, an individual,

7
        Counterdefendants.

8

9

10                    **PROOF OF SERVICE**

11

12  STATE OF CALIFORNIA       )
                              ) ss:
13  COUNTY OF LOS ANGELES )

14
        I am employed in the County of Los Angeles, State of California.  I am over
15  the age of eighteen years and not a party to the action.  My business address is,
    2049 Century Park East, Suite 700, Los Angeles, CA 90067-3109.

16
        On August 21, 2008, I served the document(s) on the interested parties in this
17  action as follows:

18      1.    Certificate of Interested Parties.

19      2.    Defendants' Answer To Plaintiff's First Amended Complaint,
              Demand  For  Jury  Trial,  and  Nervous  Tattoo,  Inc.'s
20            Counterclaims For:  (1) Breach of Contract; (2) Breach of the
              Implied  covenant  of  Good  Faith  and  Fair  Dealing;  (3)
21            Declaratory Relief; (4) Fraudulent Misrepresentations; (5) Trade
              Libel; (6) Intentional Interference with Actual and Prospective
22            Economic Advantage; (7) California Unfair Competition (CAL.
              BUS. & Prof. Code Section 17200 Et Seq.); (8) Common Law
23            Unfair Competition; (9) Injunctive Relief.

24      3.    Summons to Steven Hoel and Donald Edward Hardy Re Counterclaim.

25  By placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope
    addressed as follows:

26
                    **SEE ATTACHED SERVICE LIST**

27

28

    DOCSLA-33086v01                          2

1

**SERVICE LIST**

2

3   **ATTORNEYS FOR PLAINTIFF**
    **HARDY LIFE, LLC**

4   Rita W. Siamas, Esq.
    John J. Dabney, Esq.
5   McDermott Will & Emery LLP
    600 Thirteenth Street, N.W.
6   Washington, DC 20005-3096
    Telephone: 202.756.8000
7   Facsimile: 202.756.8087
    Email: rsiamas@mwe.com
8   Email: jdabney@mwe.com

9   Elliot Silverman, Esq.
    McDermott Will &Emery LLP
10  18191 Von Karman Avenue
    Suite 500
11  Irvine, CA 92612-7108
    Telephone: 949.851.0633
12  Facsimile: 949.851.9348
    Email: esilverman@mwe.com
13

14  **ATTORNEYS FOR DEFENDANT**
    **CHRISTIAN AUDIGIER**
15

16  Rebecca Calkins, Esq.
    Winston & Strawn LLP
17  333 S. Grand Avenue
    Los Angeles, CA 90071-1543
18  Telephone: 213.615.1700
    Facsimile: 213.615.1750
19  Email: rcalkins@winston.com

20  Michael S. Elkins, Esq.
    Winston & Strawn LLP
21  200 Park Avenue
    New York, NY 10166
22  Telephone: 212.294.6700
    Facsimile: 212.294-4700
23  Email: melkin@winston.com

24

25

26

27

28