RITA W. SIAMAS (State Bar No. 232396)
rsiamas@mwe.com
JOHN J. DABNEY (Admitted *Pro Hac Vice*)
jdabney@mwe.com
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: 202.756.8000
Facsimile: 202.756.8087

ELLIOT SILVERMAN (State Bar No. 222235)
esilverman@mwe.com
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Telephone: 949.851.0633
Facsimile: 949.851.9348

Attorneys for Plaintiff and Counterdefendant
HARDY LIFE, LLC and Counterdefendant DONALD
EDWARD HARDY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| HARDY LIFE, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NERVOUS TATTOO, INC., a California corporation; CHRISTIAN AUDIGIER, INC., a California corporation; CHRISTIAN AUDIGIER, a California resident, BACKSTAGE WEB, INC., a California Corporation; SHOP ON STAGE, INC., a California Corporation; and Does 1-10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV08 03524 PA (CTx)<br><br>Assigned to the Honorable Percy Anderson<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HARDY LIFE, LLC AND DONALD EDWARD HARDY TO STRIKE NERVOUS TATTOO'S SIXTH, SEVENTH, EIGHTH AND NINTH COUNTERCLAIMS**<br><br>Date: November 10, 2008<br>Time: 1:30 p.m.<br>Ctrm.: 15<br><br>First Amended Complaint filed: Aug. 4, 2008<br><br>Trial Date: June 9, 2009<br><br>[Notice of Motion and Motion and Declaration of Elliot Silverman served concurrently herewith] |

## TABLE OF CONTENTS

| | | Page(s) |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NERVOUS TATTOO'S COUNTERCLAIMS | 1 |
| III. | NERVOUS TATTOO'S SIXTH, SEVENTH AND EIGHTH COUNTERCLAIMS SHOULD BE STRICKEN | 3 |
| | A. Legal Standard | 3 |
| | B. Nervous Tattoo's Counterclaims Arise Out of Hardy Life's Exercise of Its Right to Petition | 4 |
| | C. Nervous Tattoo Cannot Establish a "Reasonable Probability" that It Will Prevail on its Counterclaims | 5 |
| |    1. Discovery Subpoenas | 7 |
| |    2. Alleged Statements About Nervous Tattoo's Goods | 9 |
| IV. | NERVOUS TATTOO'S NINTH COUNTERCLAIM MUST ALSO BE STRICKEN | 11 |
| V. | HARDY LIFE IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND COSTS | 12 |
| VI. | CONCLUSION | 13 |

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

Atlantic Recording Corp. v. Serrano,
    2007 WL. 4612921  2007 U.S. Dist. LEXIS 95203 (S.D. Cal. Dec.
    27, 2007)..................................................................................................8

Batzel v. Smith,
    333 F.3d 1018 (9th Cir. 2003).....................................................................4, 5

Bylin Heating System v. M&M Gutters, LLC,
    2008 WL. 744706  2008 U.S. Dist. LEXIS 21253 (E.D. Cal. Mar.
    18, 2008)................................................................................................10

eCash Technologies, Inc. v. Guagliardo,
    210 F. Supp. 2d 1138 (C.D. Cal. 2001), aff'd mem., 35 Fed. Appx.
    498 (9th Cir. 2002)..........................................................3, 4, 5, 6, 7, 12

Espinoza v. City of Imperial,
    2008 WL. 2397430  2008 U.S. Dist. LEXIS 45611 (S.D. Cal. June
    6, 2008)..................................................................................................12

Intel Corp. v. Intel-Logistics, Inc.,
    2006 WL. 1517510, 2006 U.S. Dist. LEXIS 34361 (S.D. Tex. May
    30, 2006)..............................................................................................8, 9

Reid-Ashman Manufacturing v. Swanson Semiconductor Serv.,
    L.L.C.,
    2007 WL. 1394427  2007 U.S. Dist. LEXIS 37665 (N.D. Cal. May
    10, 2007)................................................................................................10

Sharper Image Corp. v. Target Corp.,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006).........................................................10

Vess v. Ciba-Geigy Corp.,
    317 F.3d 1097 (9th Cir. 2003).....................................................................3, 4

### STATE CASES

Action Apartment Association,
    41 Cal. 4th at 1241, 63 Cal. Rptr.3d...............................................................6

Briggs v. Eden Council For Hope & Opportunity,
    19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471 (1999)..............................................4, 5

Contemporary Services Corp. v. Staff Pro Inc.,
    152 Cal. App. 4th 1043, 61 Cal. Rptr.3d 434 (2007)..........................................7

Feldman v. 1100 Park Lane Associates,
    160 Cal. App. 4th 1467, 74 Cal. Rptr.3d 1 (2008)....................................5, 6, 7

## TABLE OF CONTENTS
(continued)

Page

Foothill Federal Credit Union v. Superior Court,
   155 Cal. App. 4th 632, 66 Cal. Rptr. 3d 249 (2007) .................................................. 8

Jacob B. v. County of Shasta,
   40 Cal. 4th 948, 56 Cal. Rptr.3d 477 (2007) ........................................................... 6, 7

Ketchum v. Moses,
   24 Cal. 4th 1122 (2001) ............................................................................................ 12

Neville v. Chudahoff,
   160 Cal. App. 4th 1255, 73 Cal. Rptr.3d 383 (2008) ............................................. 4, 9

People ex rel. Gallegos v. Pacific Lumber Co.,
   158 Cal. App. 4th 950, 70 Cal. Rptr.3d 501 (2008) ............................................... 6, 7

Rubin v. Green,
   4 Cal. 4th 1187, 17 Cal. Rptr. 2d 828 (1993) ............................................................. 6

Rusheen v. Cohen,
   37 Cal. 4th 1048, 39 Cal. Rptr.3d 516 (2006) ..................................................... 4, 5, 7

Salma v. Capon,
   161 Cal. App. 4th 1275, 74 Cal. Rptr.3d 873 (2008) ........................................... 7, 11

Shekhter v. Financial Indemnity Co.,
   89 Cal. App. 4th 141, 106 Cal. Rptr. 2d 843 (2001) .................................................. 3

## STATUTES

Bus. & Prof. Code §17200 ................................................................................... 1, 2, 7

Cal. Civ. Code §47(b) ...................................................................................... 1, 3, 6, 8

Cal. Code Civ. Proc. §425.16 ................................................... 1, 3, 4, 5, 11, 12, 13

## I. INTRODUCTION

The Sixth, Seventh and Eighth Counterclaims[1] asserted by Defendant Nervous Tattoo, Inc. ("Nervous Tattoo") purport to sue Plaintiff Hardy Life, LLC and its principals, Donald Edward Hardy and Steven Hoel (collectively, "Hardy Life"), for intentional interference with actual and prospective economic advantage (Sixth Counterclaim, ¶¶ 50-54), violations of California Unfair Competition Law (Bus. & Prof. Code §17200) (Seventh Counterclaim, ¶¶ 55-59), and common law unfair competition (Eighth Counterclaim, ¶¶ 60-64). Each of these claims is based on little or nothing more than the allegation that, "after commencing this action, Hardy Life began bombarding Nervous Tattoo's numerous sublicensees (as well as its attorneys and accountant) with onerous document subpoenas." (Counterclaims ¶ 20). The Ninth Counterclaim, for injunctive relief (¶¶ 65 – 69) repeats this allegation as well. (Counterclaims ¶66).[2]

Hardy Life's prosecution of this case, including its service of document subpoenas on nonparty witnesses, is activity which is absolutely privileged under California's litigation privilege, California Civil Code §47(b). Nervous Tattoo's Sixth, Seventh, Eighth and Ninth Counterclaims are therefore "SLAPP suits" (Strategic Litigation Against Public Participation) and are subject to the Special Motion to Strike set forth in California Code of Civil Procedure §425.16.

## II. NERVOUS TATTOO'S COUNTERCLAIMS

Nervous Tattoo's Counterclaims allege various purported breaches by Hardy Life of the parties' 2005 Restated and Amended License Agreement (the "Amended Trademark License"). These allegations form the basis of Nervous Tattoo's First, Second and Third Counterclaims (Counterclaims ¶¶ 22-33), alleging (1) breach of

---

[1] See Defendants' Answer to Plaintiff's First Amended Complaint, Demand for Jury Trial, and Nervous Tattoo, Inc.'s Counterclaims (Doc. 89) (the "Counterclaims").

[2] Nervous Tattoo's First Counterclaim, for breach of contract, is also based in part on Hardy Life's service of document subpoenas. (Counterclaims ¶¶ 20, 22, 25.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF        - 1 -         (No. CV08 03524 PA (CTX))
MOTION TO STRIKE

contract; (2) breach of the covenant of good faith and fair dealing, and (3) seeking a declaratory judgment that Hardy Life did not properly terminate the License Agreement. Nervous Tattoo also asserts in its Fourth Counterclaim (*id.* ¶¶ 34-41) that Hardy Life and its principals fraudulently induced Nervous Tattoo into entering into the Amended Trademark License. Hardy Life (and, with respect to the Fourth Counterclaim, its principals, Donald Edward Hardy and Steven Hoel), have answered these Counterclaims and deny all of their material allegations.

Nervous Tattoo's Counterclaims assert four additional claims – the Sixth Counterclaim purports to allege intentional interference with actual and prospective economic advantage (Counterclaims ¶¶ 50-54); the Seventh Counterclaim purports to allege unfair competition in violation of California Business and Professions Code §17200 (*id.* ¶¶ 55-59); the Eighth Counterclaim purports to allege common law unfair competition (*id.* ¶¶ 60-64); and the Ninth Counterclaim purports to seek injunctive relief against Hardy Life and its principals (*id.* ¶¶ 65 – 69). (The Fifth Counterclaim, purporting to allege trade libel (*id.* ¶¶ 42-49), was voluntarily dismissed by Nervous Tattoo in a Stipulation filed with the Court on October 3, 2008 (Doc. 106)).

These Sixth, Seventh and Eighth Counterclaims allege virtually *no* facts, only bare legal conclusions. The only alleged factual support for these three claims is a single paragraph of the Counterclaims (¶20), which is incorporated by reference into each of these three counterclaims (*see* Counterclaims ¶¶ 50, 55, 60). That paragraph reads, in its entirety, as follows:

> 20. Shortly after commencing this action, Hardy Life began bombarding Nervous Tattoo's numerous sublicensees (as well as its attorneys and accountant) with onerous document subpoenas. Nervous Tattoo is informed and believes, and on that basis alleges, that those subpoenas (and, indeed, this lawsuit) were part and parcel of Hardy Life, Hoel and Hardy's design to intimidate Nervous Tattoo's sublicensees and interfere with Nervous Tattoo's business relationships as a means of either extorting additional (albeit undeserved) money from Nervous Tattoo or irreparably damaging Nervous Tattoo's business and goodwill. Nervous Tattoo also is informed and believes, and on that basis alleges, that Hardy Life, Hoel

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF       - 2 -           (No. CV08 03524 PA (CTX))
MOTION TO STRIKE

and Hardy have published statements to third parties to the effect that some or all of Nervous Tattoo's goods bearing Hardy Life's artwork and trademarks are unauthorized and/or counterfeit.

That paragraph is repeated verbatim in Nervous Tattoo's Ninth Counterclaim (Counterclaim ¶ 66).

As is set forth more fully below, because all of these alleged acts are absolutely privileged under California's litigation privilege, Cal. Civ. Code §47(b), Nervous Tattoo's Sixth, Seventh, Eighth and Ninth Counterclaims should be stricken.

### III. NERVOUS TATTOO'S SIXTH, SEVENTH AND EIGHTH COUNTERCLAIMS SHOULD BE STRICKEN

#### A. Legal Standard

California's "anti-SLAPP" statute, Cal. Code Proc. §425.16(b)(1), provides as follows:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

As the Ninth Circuit has explained, "California's anti-SLAPP statute was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citations omitted). "The Ninth Circuit has determined that the procedure set up by Section 425.16 applies to state law claims filed in federal courts." *eCash Technologies, Inc. v. Guagliardo*, 210 F. Supp.2d 1138, 1144 (C.D. Cal. 2001) (citation omitted), *aff'd mem.*, 35 Fed. Appx. 498 (9th Cir. 2002). An anti-SLAPP motion may be directed to only certain causes of action, and need not be brought against the entire pleading. *Shekhter v. Financial Indemnity Co.*, 89 Cal.App.4th 141, 150, 106 Cal. Rptr.2d 843, 849 (2001).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant must make an initial *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110 (citations omitted); *accord Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003). "The burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her ... claim." *Batzel*, 333 F.3d at 1024; *accord Vess*, 317 F.3d at 1110. (For these purposes, the term "plaintiff" includes a counterclaimant, and the term "defendant" includes a counterdefendant. Cal. Code Civ. Proc. §425.16(h)).

"The California legislature has instructed that the statute should be 'construed broadly.'" *Vess*, 317 F.3d at 1109 (quoting Cal. Code Civ. Proc §425.16(a)).

### B. Nervous Tattoo's Counterclaims Arise Out of Hardy Life's Exercise of Its Right to Petition

For the statute to apply, the cause of action must "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under United States or California Constitution in connection with a public issue." Cal. Code Civ. Proc. §425.16(b)(1). The statute defines "any act" to include "any written or oral statement or writing made in connection with an issue under consideration or review by a ... judicial body." *Id.*, §425.16(e)(2). *See eCash Technologies*, 210 F. Supp.2d at 1154; *Briggs v. Eden Council For Hope & Opportunity*, 19 Cal.4th 1106, 1113, 81 Cal.Rptr.2d 471, 475 (1999). The statutory phrase "any act" thus "includes communicative conduct such as the filing, funding and prosecution of a civil action," *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056, 39 Cal. Rptr.3d 516, 521 (2006), as well as "communications in connection with anticipated litigation," *Neville v. Chudahoff*, 160 Cal.App.4th 1255, 1263, 73 Cal. Rptr.3d 383, 389 (2008). There is no separate requirement that the litigation involve 'an issue of

public significance.'" *eCash*, 210 F.Supp.2d at 1154 (citing *Briggs*, 19 Cal.4th at 1123, 81 Cal.Rptr.2d at 482).

Here, each of the challenged counterclaims includes, as an essential allegation, the mere fact that Hardy Life served subpoenas on Nervous Tattoo's sublicensees of the ED HARDY brand. (Counterclaims ¶20). Plainly, that act is expressly authorized by the Federal Rules of Civil Procedure as a legitimate discovery tool and is directly related to Hardy Life's petitioning of the government (through the court system) for redress from the violations of its intellectual property by Nervous Tattoo. Similarly, any statements made by Hardy Life about whether Nervous Tattoo's goods are authorized would also relate to this litigation. Hardy Life has thus made a *prima facie* showing that the anti-SLAPP statute applies to Nervous Tattoo's counterclaims.

### C. Nervous Tattoo Cannot Establish a "Reasonable Probability" that It Will Prevail on its Counterclaims

Because Hardy Life has made this *prima facie* showing, the burden shifts to Nervous Tattoo "to establish a probability that [it] will prevail" on these counterclaims. *eCash Technologies, Inc. v. Guagliardo*, 210 F. Supp.2d 1138, 1154 (C.D. Cal. 2001) (quoting Cal. Code Civ. Proc. §425.16(b)), *aff'd mem.*, 35 Fed. Appx. 498 (9th Cir. 2002); *accord Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003). To meet this burden, Nervous Tattoo must show both that its counterclaims are "legally sufficient" and that they are "supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment." *Batzel*, 333 F.3d at 1024; *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056, 39 Cal. Rptr. 3d 516, 522 (2006). This burden "is akin to that of a party opposing a motion for summary judgment." *Feldman v. 1100 Park Lane Associates*, 160 Cal. App.4th 1467, 1478, 74 Cal. Rptr.3d 1, 9 (2008).

"The litigation privilege [created by Cal. Civ. Code §47(b)] is relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Id.*, 160 Cal. App.4th at 1485, 74 Cal. Rptr.3d at 15. *Accord, eCash Technologies*, 210 F. Supp.2d at 1153-54. "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin v. Green*, 4 Cal.4th 1187, 1193, 17 Cal. Rptr.2d 828, 831 (1993) (citations omitted).

"Section 47(b) protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding," *eCash Technologies*, 210 F. Supp.2d at 1152, in order "to afford litigants … the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions," *Action Apartment Ass'n*, 41 Cal.4th at 1241, 63 Cal. Rptr.3d at 406. California courts "have given the litigation privilege a broad interpretation." *Id.* It applies even to communications which "are, or are alleged to be, fraudulent, perjurious, unethical or even illegal," *People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App.4th 950, 959, 70 Cal. Rptr.3d 501, 508 (2008), and even to those made with malice, *Action Apartment Ass'n*, 41 Cal.4th at 1241, 63 Cal. Rptr.3d at 406; *Jacob B. v. County of Shasta*, 40 Cal.4th 948, 955, 56 Cal. Rptr.3d 477, 483 (2007).

"[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Action Apartment Ass'n*, 41 Cal.4th at 1241, 63 Cal. Rptr.3d at 406; *accord Jacob B.*, 40 Cal.4th at 955, 56 Cal. Rptr.3d at 482. "This privilege affords absolute immunity against tort liability arising out of such a communication, regardless of attempts by the plaintiff to 'plead around' this absolute barrier." *eCash Technologies*, 210 F. Supp.2d at 1152 (citations omitted).

The litigation privilege has been applied to bar the three tort claims asserted by Nervous Tattoo here – intentional interference with economic advantage, *e.g., Salma v. Capon*, 161 Cal. App.4th 1275, 1290, 74 Cal. Rptr.3d 873, 886 (2008); *Contemporary Services Corp. v. Staff Pro Inc.*, 152 Cal. App.4th 1043, 1060, 61 Cal. Rptr.3d 434, 449 (2007); violations of Bus. & Prof. Code §17200, *Feldman v. 1100 Park Lane Associates*, 160 Cal. App.4th 1467, 1486, 74 Cal. Rptr.3d 1, 16 (2008); *People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App.4th at 960, 70 Cal. Rptr.3d at 509; and unfair competition, *eCash Technologies*, 210 F. Supp.2d at 1152.

### 1. Discovery Subpoenas

The activity alleged in Nervous Tattoo's counterclaims – the service of discovery subpoenas – is clearly covered by the privilege. *See, e.g., Jacob B. v. County of Shasta*, 40 Cal.4th 948, 955, 56 Cal. Rptr.3d 477, 482 (2007) ("The privilege applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved."); *Rusheen v. Cohen*, 37 Cal.4th 1048, 1058, 39 Cal. Rptr.3d 516, 523 (2006) ("pleadings and process in a case" are privileged). Here, each of Nervous Tattoo's counterclaims allege that Hardy Life has committed a tort by serving document subpoenas on Nervous Tattoo's sub-licensees of the ED HARDY brand. (Counterclaims ¶20).

There is no dispute that Hardy Life's service of subpoenas (i) occurred during this judicial proceeding (indeed, Nervous Tattoo's Counterclaim expressly admits that fact (Counterclaims ¶20); (ii) that those subpoenas were served by Hardy Life, a party to this action; (iii) that those subpoenas seek discoverable information in support of Hardy Life's claims – neither Nervous Tattoo nor any

recipient of the subpoenas has moved to quash the subpoenas;[3] and; (iv) those subpoenas all seek information that relates directly to this action. *See, e.g., Atlantic Recording Corp. v. Serrano*, 2007 WL 4612921 *7, 2007 U.S. Dist. LEXIS 95203 * 20-22 (S.D. Cal. Dec. 27, 2007) (dismissing counterclaim based on plaintiff's service of a subpoena – "California has a broad litigation privilege protecting communications made in judicial proceedings . . . and in the initiation or course of any proceedings authorized by law. . . . Cal. Civ. Code § 47(b) would clearly insulate this type of communication from suit."). Indeed, because obtaining information from a subpoena is protected by the California litigation privilege, it would make no sense that the mere act of serving the subpoena itself would somehow give rise to liability. *See Foothill Fed. Credit Union v. Superior Court*, 155 Cal. App. 4th 632, 634-35, 66 Cal. Rptr. 3d 249, 251-52 (2007) (responding to a document subpoena held absolutely privileged by the litigation privilege; tort claims based on that act dismissed). *See also Intel Corp. v. Intel-Logistics, Inc.*, 2006 WL 1517510, 2006 U.S. Dist. LEXIS 34361 (S.D. Tex. May 30, 2006) (dismissing tortious interference counterclaim based on trademark plaintiff's service of subpoenas on defendant's customers, because service of subpoenas is protected under the Texas litigation privilege).

Thus, it is clear that Hardy Life's mere service of subpoenas on Nervous Tattoo's sub-licensees is absolutely protected under the California litigation privilege and that Nervous Tattoo's Sixth, Seventh and Eighth Counterclaims, which are predicated on that protected act, must be dismissed.

---

[3] Indeed, Nervous Tattoo's counsel is working with Hardy Life's counsel to secure the subpoenaed information from its sub-licensees, and is coordinating their responses to the subpoenas. (Doc. 100-3, Decl. of James Turken, Ex. A thereto, e-mail from Ms. Rubinfeld to Ms. Siamas ("I wanted to update you with respect to the status of the sublicense subpoenas. Thus far, it looks promising that I will be coordinating responses/document production to [more than 10 sublicensees]. As soon as I can get a handle on the volume of documents and items being collected about the aforementioned subs, we can talk about production dates."))

Indeed, Nervous Tattoo as much as conceded that these claims must be dismissed in its Reply in support of its motion for a preliminary injunction. (Doc. 100, Reply at 4.) There, in attempting to support its claim for preliminary injunctive relief, which would have had the effect of prohibiting Hardy Life from communicating with Nervous Tattoo's sub-licensees, distributors, etc., "for any reason," Nervous Tattoo admitted that it could not "enjoin Plaintiff from conducting legitimate discovery in this case." (*Id.*) Nervous Tattoo also conceded that it had "recently invited Plaintiff's counsel to contact directly certain third parties already subpoenaed by Plaintiff." (*Id.*) Thus, Nervous Tattoo already has conceded – in attempting to convince the Court to enter a preliminary injunction – that Hardy Life's service of document subpoenas in this case was a protected First Amendment activity and its counterclaims that are based on that activity must be dismissed.

### 2. Alleged Statements About Nervous Tattoo's Goods

To the extent that Nervous Tattoo's counterclaims are based on the alleged statements of Hardy Life to third parties that Nervous Tattoo's goods are unauthorized or counterfeit, those alleged statements are also protected and Nervous Tattoo's counterclaims must be stricken.

The litigation privilege also encompasses "statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." *Neville v. Chudahoff*, 160 Cal. App.4th 1255, 1270, 73 Cal. Rptr.3d 383, 394 (2008). In *Neville*, an employer was considering suing an ex-employee for misappropriating trade secrets, and its attorney wrote to all of the employer's customers warning them not to do business with the ex-employee. 160 Cal. App.4th at 1259-60. The California Court of Appeal held that the letter was absolutely privileged under the litigation privilege, and therefore granted an anti-SLAPP motion striking counterclaims based on the sending of that letter. *Id.* at 1270.

Moreover, the litigation privilege unequivocally applies to communications to third parties with an interest in the outcome of pending litigation, such as sub-licensees of the ED HARDY brand. *See Bylin Heating Sys. v. M&M Gutters, LLC*, 2008 WL 744706 *4, 2008 U.S. Dist. LEXIS 21253 *10-11 (E.D. Cal. Mar. 18, 2008) (*citing Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077-78 (N.D. Cal. 2006)). In *Sharper Image,* the plaintiff sued the defendant for patent and trademark infringement. The Defendant based its counterclaim for tortious interference with economic advantage on emails the plaintiff sent to third parties who had purchased the allegedly infringing products from the defendant, informing them of the lawsuit and asking them not to carry the defendant's product. *Id.* Ultimately the court held that the litigation privilege protected plaintiff's activity and barred the defendant's counterclaim for tortious interference with economic advantage. *Id.* at 1079.

As the court in *Sharper Image* explained, where a third party purchases a product that is the subject of an infringement action, a communication to that party informing it of the action has a logical relation to the action because the third party clearly has an interest in the litigation. *Id.* For example, the third party's supply of the product at issue may be interrupted if the infringement action is successful. *Reid-Ashman Mfg. v. Swanson Semiconductor Serv., L.L.C.*, 2007 WL 1394427 *11, 2007 U.S. Dist. LEXIS 37665 *34-35 (N.D. Cal. May 10, 2007). Moreover, the third party itself may face liability if the product is found to infringe. *Id.*

The same is true here. Even if Hardy Life did make the alleged statements, such statements would be protected by the litigation privilege, because they would have related directly to Hardy Life's claims in this lawsuit that all of the goods that Nervous Tattoo has produced since the filing of this action are unauthorized and counterfeit. (Doc. 84, Amended Compl. ¶¶18-24, 30-52.) The ED HARDY brand sub-licensees clearly have a substantial interest in this litigation because they will be barred from distributing any ED HARDY products if the Court determines that

Defendants have infringed Hardy Life's intellectual property and that Hardy Life's termination of the Amended Trademark License was proper. Furthermore, the sub-licensees face substantial infringement liability themselves if they have used promotional materials and products bearing Defendants' mutilations of Hardy Life's tattoo designs and ED HARDY trademarks in unapproved formats.

In summary, because the acts alleged in Nervous Tattoo's counterclaims are absolutely protected by the litigation privilege, Nervous Tattoo cannot possibly establish "a probability that [it] will prevail" on those claims, Cal. Code Civ. Proc. §425.16, and those counterclaims must therefore be stricken.

## IV. NERVOUS TATTOO'S NINTH COUNTERCLAIM MUST ALSO BE STRICKEN

Nervous Tattoo's Ninth Counterclaim (Counterclaims ¶¶65 – 69), seeking injunctive relief, also repeats verbatim the allegations about Hardy Life's service of subpoenas and supposed "statements to third parties" that form the basis for the Sixth, Seventh and Eighth Counterclaims (*Id.* ¶ 66). Thus, this Counterclaim should also be stricken.

Although the Ninth Counterclaim also contains other allegations, a SLAPP motion may be brought whenever "at least one of the underlying acts [alleged in the claim] is protected conduct", *Salma v. Capon*, 161 Cal.App.4th 1275, 1287, 74 Cal. Rptr.3d 873, 883 (2008), because a "plaintiff cannot frustrate the purpose of the anti-SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one cause of action." *Id.*, 161 Cal. App.4th at 1287-88, 74 Cal. Rptr.3d at 883-84.[4]

---

[4] Nervous Tattoo's First Counterclaim alleges, among other things, that Hardy Life interfered with Nervous Tattoo's business relations with its sublicensees by the service of document subpoenas. (Counterclaims ¶25). That portion of the First Counterclaim should also be stricken.

## V. HARDY LIFE IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND COSTS

A party prevailing on a motion to strike under California's Anti-SLAPP statue is entitled to recover its attorney's fees and costs. Cal. Code Civ. Proc. § 425.16(c); *Espinoza v. City of Imperial*, 2008 WL 2397430 *6, 2008 U.S. Dist. LEXIS 45611 *16-17 (S.D. Cal. June 6, 2008) (citing *Ketchum v. Moses*, 24 Cal.4th 1122 (2001) ("any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees")). Moreover, "the attorney's fees provision is broadly construed to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating himself or herself from a baseless lawsuit, even if the Anti-SLAPP motion is granted only as to some of a plaintiff's claims." *Id.*

The award of attorney's fees and costs is especially appropriate here because Nervous Tattoo refused to dismiss its counterclaims based on Hardy Life's service of document subpoenas, even after Nervous Tattoo admitted in its Reply brief in support of its motion for a preliminary injunction that the mere service of document subpoenas in this case is protected conduct. Accordingly, Hardy Life is entitled to recover its attorney's fees and costs. *See, e.g., eCash Technologies*, 210 F. Supp.2d at 1154-55 (granting motion to strike and inviting movants to move for attorneys' fees and costs). Hardy Life asks that the Court allow it to submit documentation of fees and costs after entry of the order.

## VI. CONCLUSION

Nervous Tattoo's Sixth, Seventh and Eighth Counterclaims are based entirely on Hardy Life's protected litigation activity, and its Ninth Counterclaim is based in large part on such activity. Each of those Counterclaims should be stricken pursuant to California Code of Civil Procedure §425.16, and the Court should award Hardy Life its reasonable attorney's fees and costs for filing this motion.

Dated: October 14, 2008          Respectfully Submitted,

Rita W. Siamas
Elliot Silverman
John J. Dabney
McDERMOTT WILL & EMERY LLP

By:   /s/ Elliot Silverman
      ELLIOT SILVERMAN

Attorneys for Plaintiff and counterdefendant HARDY LIFE, LLC and counterdefendant DONALD EDWARD HARDY

ORC 448626-1.080717.0011

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE   - 13 -   (No. CV08 03524 PA (CTX))